# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **SCOTT EASOM, ADRIAN HOWARD, and JOHN NAU, on behalf of themselves and on behalf of all others similarly situated,** | § § § § § § | |
| **Plaintiffs,** | § § § § | |
| **V.** | § § § § § | **CIVIL NO. 4:20-CV-02995-LHR** |
| **US WELL SERVICES, LLC** | § § § § | |
| **Defendant.** | § § § | |

## PLAINTIFFS' MOTION FOR RECONSIDERATION

**Table of Contents**

INTRODUCTION.................................................................................................................8

ARGUMENT......................................................................................................................9

   I.    RECONSIDERATION IS WARRANTED BECAUSE THE ORDER MISSTATES THE NOTICE REQUIREMENT, INCORRECTLY DEFINES NATURAL DISASTER, AND APPLIES THE WRONG STANDARD OF CAUSATION. ........................................................9

      A. Reconsideration Is Warranted Because The Notice Requirement In The Statute Is Ambiguous And The Order Ignores The Regulations And Legislative History. ...................10

      B. Reconsideration Is Warranted Because COVID-19 Is Not A Natural Disaster Under the WARN Act.............................................................................................................19

      C. Reconsideration Is Warranted Because The Order Applies The Wrong Standard Of Causation ............................................................................................................24

   II.   IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL.......................................................................................26

      A. PROPOSED QUESTIONS OF LAW .......................................................................27

      B. CONTROLLING QUESTIONS OF LAW.................................................................27

      C. SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION ..........................28

      D. ADVANCE THE TERMINATION OF THE LITIGATION .....................................29

CONCLUSION ................................................................................................................30

CERTIFICATE OF SERVICE...........................................................................................30

CERTIFICATE OF CONFERENCE ..................................................................................31

## Table of Authorities

### Cases

*Adams v. Director, OWCP*,
886 F.2d 818, 821 (6th Cir. 1989) .................................................................. 24

*Ahrenholz v. Board of Trustees of the University of Illinois*,
219 F.3d 674, 676 (7th Cir. 2000) ................................................................... 28

*Almendarez-Torres v. United States*,
523 U.S. 224, 234, 118 S. Ct. 1219, 1226 (1998) ....................................... 11, 12

*Aluminum Co. of America v. Central Lincoln Peoples' Util. Dist.*,
467 U.S. 380, 389-390, 81 L. Ed. 2d 301, 104 S. Ct. 2472 (1984) .................. 15

*Badgley v. Varelas*,
729 F.2d 894 (2d Cir. 1984) ............................................................................ 22

*Bellum v. PCE Constructors, Inc.*,
407 F.3d 734, 739 (5th Cir. 2005) ................................................................... 14

*Berezowsky v. Ojeda*,
652 F. App'x 249 (5th Cir. 2016) ...................................................................... 8

*Bowen v. Georgetown Univ. Hospital*,
488 U.S. 204, 212-213, 102 L. Ed. 2d 493, 109 S. Ct. 468 (1988) .................. 15

*Bragdon v. Abbott*,
524 U.S. 624, 642, 141 L. Ed. 2d 540, 118 S. Ct. 2196 (1998) ....................... 15

*Cabell v. Markham*,
148 F.2d 737 (2d Cir. 1945) ............................................................................ 19

*Calix v. Lynch*,
784 F.3d 1000, 1005 (5th Cir. 2015) ............................................................... 14

*Carver v. Foresight Energy, LP*,
3:16-cv-3013, 2016 WL 3812376, at *4 (C.D. Ill. July 12, 2016) ................... 22

*Chamber of Commerce of the United States v. United States DOL*,
885 F.3d 360, 372 (5th Cir. 2018) ................................................................... 10

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837, 842, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) ................... passim

*Clark-Dietz and Assocs.-Eng'rs v. Basic Constr. Co.,*
   702 F.2d 67, 69 (5th Cir. 1983) ................................................................... 27

*ConocoPhillips Co. v. EPA,*
   612 F.3d 822, 831 (5th Cir. 2010) ......................................................... 14, 16

*CSX Transp., Inc. v. Alabama Dept. of Revenue,*
   562 U.S. 277, 295, 131 S. Ct. 1101, 1113, 179 L. Ed. 2d 37, 53 (2011).......................... 20

*Davis v. Mich. Dep't of* Treasury,
   489 U.S. 803, 809, 109 S. Ct. 1500, 103 L. Ed. 2d 891 (1989)...................................... 10

*Deal v. United States,*
   508 U.S. 129, 132, 113 S. Ct. 1993, 124 L. Ed. 2d 44 (1993).......................................... 20

*Demahy v. Schwarz Pharma, Inc.,*
   702 F.3d 177, 182 (5th Cir. 2012) .................................................................... 8

*Doe v. KPMG, LLP,*
   398 F.3d 686, 688 (5th Cir. 2005) (citation omitted).......................................... 11

*EEOC v. Bass Pro Outdoor World, LLC,*
   No. 4:11-CV-3425, 2014 U.S. Dist. LEXIS 161053 (S.D. Tex. Nov. 17, 2014) ............. 26

*Entergy Corp. v. Riverkeeper, Inc.,*
   556 U.S. 208, 222, 129 S. Ct. 1498, 173 L. Ed. 2d 369 (2009)...................................... 14

*Envtl. Integrity Project v. United States EPA,*
   969 F.3d 529, 541 (5th Cir. 2020) ................................................................. 22

*Ford Motor Credit Co. v. Milhollin,*
   444 U.S. 555, 565, 63 L. Ed. 2d 22, 100 S. Ct. 790 (1980)............................................. 15

*Gustafson v. Alloyd Co.,*
   513 U.S. 561, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995)................................................... 20

*Guy v. Crown Equip. Corp.,*
   394 F.3d 320, 325 (5th Cir. 2004) .................................................................... 8

*Iselin v. United States,*
   270 U.S. 245, 251, 46 S. Ct. 248 (1926)............................................................. 23

*Josendis v. Wall to Wall Residence Repairs, Inc.,*
   662 F.3d 1292, 1299 (11th Cir. 2011) ............................................................. 13

4

*Kimber v. Thiokol Corp.*,

 196 F.3d 1092, 1100 (10th Cir. 1999) ............................................................... 24

*Klinghoffer v. S.N.C. Achille Lauro*,

 921 F.2d 21, 24 (2d Cir. 1990)............................................................................ 27

*Lamie v. U.S. Tr.*,

 540 U.S. 526, 538 (2004), 124 S. Ct. 1023, 157 L. Ed. 2d 1024....................... 23

*McFarlin v. Conseco Servs.*,

 381 F.3d 1251, 1258 (11th Cir. 2004) ............................................................... 28

*Meyer v. Conlon*,

 162 F.3d 1264 (10th Cir. 1998) ......................................................................... 22

*Mohawk Indus. V. Carpenter*,

 558 U.S. 100, 111 (2009)..................................................................................... 28

*Nat. Res. Def. Council v. EPA*,

 896 F.3d 459 (D.C. Cir. 2018)........................................................................... 23

*Robinson v. Shell Oil Co.*,

 519 U.S. 337, 341, 117 S. Ct. 843, 846 (1997)............................................ 13, 20

*Ryan v. Flowserve,*

 444 F. Supp. 2d 718, 722 (N.D. Tex. 2006) ......................................... 27, 28, 29

*Sides v. Macon Cnty. Greyhound Park, Inc.*,

 725 F.3d 1276, 1284 (11th Cir. 2013) ............................................................... 13

*Skidmore v. Swift & Co.,*

 323 U.S. 134, 65 S. Ct. 161 (1944)..................................................................... 15

*Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark*,

 1997 U.S. Dist. LEXIS 12243, No. 96 CIV. 2136 (RWS), 1997 WL 473566 ................. 27

*Trainmen v. Baltimore & Ohio R. Co.*,

 331 U.S. 519, 528-529.67 S. Ct. 1387 (1947) ................................................... 12

*U.S. Home Concrete & Supply, LLC*,

 132 S. Ct. 1836, 1843, 182 L. Ed. 2d 746 (2012)............................................. 14

*United Servs. Auto. Ass'n v. Perry*,

 102 F.3d 144, 146 (5th Cir. 1996) ................................................................ 13, 14

*United States Postal Serv. v. Postal Regulatory Comm'n*,

    395 U.S. App. D.C. 122, 127, 640 F.3d 1263, 1268 (2011) ........................................... 24

*United States v. Lauderdale Cnty.*,

    914 F.3d 960, 965 (5th Cir. 2019) ...................................................................... 12

*United States v. Mead Corp.*,

    533 U.S. 218, 227-28, 121 S. Ct. 2164, 2171-72 (2001) .................................................. 15

*United States v. Morton*,

    467 U.S. 822, 834, 104 S. Ct. 2769 (1984)........................................................................ 14

*United States v. Williams*,

    553 U.S. 285, 294, 128 S. Ct. 1830 (2008)........................................................................ 20

*Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler*,

    537 U.S. 371, 384, 123 S. Ct. 1017 (2003)........................................................................ 20

*Yates v. Collier*,

    868 F.3d 354, 369 (5th Cir. 2017) (citation omitted)........................................................ 22

*Yates v. United States*,

    574 U.S. 528, 537, 135 S. Ct. 1074 (2015)................................................................ 12, 20

*Zenith Radio Corp. v. United States*,

    437 U.S. 443, 450, 98 S. Ct. 2441 (1978)........................................................................ 15

**Federal Statutes**

Worker Adjustment and Retraining Notification Act ("WARN Act").................................. passim

28 U.S.C. § 1292(b) ...................................................................................................... passim

29 U.S.C. § 2102(b)(2)(B) ............................................................................................ passim

29 U.S.C. § 2102(b)(3) .................................................................................................. passim

29 U.S.C. § 2107............................................................................................................. 13, 16

29 U.S.C. § 2107(a) ............................................................................................................. 12

29 U.S.C.S. § 2102............................................................................................... 11, 13, 14

5 U.S.C. §§ 706(2)(A), (D)................................................................................................... 14

7 U.S.C. § 1508(g)(5)(A)(i); 1508(g)(5)(A)(ii); and 1508(l)........................................... 22

**Regulations**

20 C.F.R. § 639.1 .................................................................................................................. 10

20 C.F.R. § 639.1(a) ............................................................................................................... 9

20 C.F.R. § 639.9(c) ............................................................................................................. 16

20 C.F.R. § 639.9(c)(3) ........................................................................................................ 10

**Legislative History**

134 Cong Rec H 5500 ....................................................................................................... 9, 18

134 Cong Rec S 8686 ...................................................................................................... 17, 18, 25

54 FR 16042 ....................................................................................................................... 17

Interim Interpretive Rule, 53 F. Reg. 48884, 48889 (Dec. 2, 1988) .............................................. 24

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiffs respectfully move for reconsideration of the Court's February 10, 2021 Memorandum and Order (the "Order") (Docket Entry No. 33) which denied Plaintiffs' Motion for Summary Judgment because, as a matter of law, Defendant cannot utilize the natural disaster exception to the Worker Adjustment and Retraining Notification Act ("WARN Act"). Several of the issues that were decided in the Order were not previously raised by Defendants and Plaintiffs had not been given an opportunity to fully brief those matters. Specifically, there were no prior arguments raised concerning the standard of causation issue. In fact, Defendant specifically stated that their business had been *directly* impacted by COVID-19.[1] Furthermore, the issues of claim construction, *Chevron* deference, and the legislative history of the statute, were never addressed in the briefing prior to the Order.

"Under Rule 59(e), amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Berezowsky v. Ojeda*, 652 F. App'x 249 (5th Cir. 2016) (citing *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012)). "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law'" or "an obvious mistake or departure from the truth." *Berezowsky*, 652 F. App'x at 249 (citing *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). For at least three reasons, the Court should reconsider the Order and grant summary judgment in favor of Plaintiffs. In the alternative, Plaintiffs seek certification of

---

[1] Defendant stated that COVID-19 "directly precipitated the collapse of oil prices and oil demand..." (Docket Entry No. 21 at 11).

the Order for immediate appeal to the Federal Circuit under 28 U.S.C. § 1292(b), as explained below.

Reconsideration, or in the alternative, certification of an interlocutory appeal, is especially warranted here because a correct decision on Plaintiffs' Motion for Summary Judgment will not only impact the present case but also numerous present and future cases that will likely raise the same questions of law. Considerations of judicial economy weigh in favor of resolving this threshold question regarding the natural disaster exception to the WARN Act notice requirements now, before other district courts spend time and resources further litigating these types of claims.

It bears noting that the purpose of the WARN Act is to protect the working-class men and women of this country. The WARN Act "provides protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs." 20 C.F.R. § 639.1(a). As Senator Thomas Ridge of Pennsylvania noted during the floor debates concerning the bill that became the WARN Act, "Remember, we are not talking about men and women who get golden parachutes when they close the plant gate. We are talking about men and women who just get kicked out of the airplane." 134 Cong Rec H 5500. Plaintiffs are precisely the type of workers that are being "kicked out of the airplane" and who deserve the protection of this Act.

## ARGUMENT

I. **RECONSIDERATION IS WARRANTED BECAUSE THE ORDER MISSTATES THE NOTICE REQUIREMENT, INCORRECTLY DEFINES NATURAL DISASTER, AND APPLIES THE WRONG STANDARD OF CAUSATION.**

For at least three reasons, the Court should reconsider its Order and enter a summary judgment ruling in favor of Plaintiffs. First, the Order misstates the notice requirements under the Act. Specifically, the requirements related to the natural disaster exception which, pursuant to

Section 2102(b)(3) requires that "such notice as is practicable shall be given." This requirement is further illuminated in C.F.R. 20 § 639.9(c)(3), which states: "such notice as is practicable, containing as much of the information required in § 639.7 as is available in the circumstances of the disaster still must be given." Second, the Order incorrectly defines a natural disaster to include the COVID-19 pandemic. Based on the canons of statutory construction and the legislative history, there is no evidence that Congress had any intent to include this sort of event in the exceptions to the statute. Third, the Order applies the wrong standard of causation to the statute. The Order further disregards the Department of Labor regulations which interpret and clarify the Act. Those regulations clearly state the need for direct causation to claim that the affirmative defense of the natural disaster exception applies to Defendant.

> **A.     Reconsideration Is Warranted Because The Notice Requirement In The Statute Is Ambiguous And The Order Ignores The Regulations And Legislative History.**

The WARN Act was created to protect workers, their families and communities, from sudden job loss by guaranteeing notice prior to mass layoffs and plant closings. 20 C.F.R. § 639.1. The statute itself, the regulations that interpret the statute, and the Congressional intent behind the statute and its subsections, all complement one another and reach the same inevitable conclusion. As discussed below, appropriate notice under the WARN Act is required regardless of the enumerated exceptions, because to do away with the notice requirement entirely would defeat the purpose of the statute.

"[S]tatutory language cannot be construed in a vacuum. We look to the 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Chamber of Commerce of the United States v. United States DOL*, 885 F.3d 360, 372 (5th Cir. 2018) (quoting *Davis v. Mich. Dep't of* Treasury,

489 U.S. 803, 809, 109 S. Ct. 1500, 103 L. Ed. 2d 891 (1989)); *see also Doe v. KPMG*, LLP, 398

F.3d 686, 688 (5th Cir. 2005) (citation omitted) ("When interpreting a statute, we start with the

plain text, and *read all parts of the statute together* to produce a harmonious whole.") (emphasis

added).  To state that Section 2102(b)(2)(B) of the WARN Act is unambiguous because it states

"[n]o notice" is to completely disregard the other parts of the statute, their meaning, and their

purpose.

The relevant section of the statute states as follows:

(b)      **REDUCTION OF NOTIFICATION PERIOD**
(1)      An employer may order the shutdown of a single site of employment before
the conclusion of the 60-day period if as of the time that notice would have been
required the employer was actively seeking capital or business which, if obtained,
would have enabled the employer to avoid or postpone the shutdown and the
employer reasonably and in good faith believed that giving the notice required would
have precluded the employer from obtaining the needed capital or business.
(2)
          (A)      An employer may order a plant closing or mass layoff before the
conclusion of the 60-day period if the closing or mass layoff is caused by business
circumstances that were not reasonably foreseeable as of the time that notice would
have been required.
          (B)      No notice under this chapter shall be required if the plant closing or
mass layoff is due to any form of natural disaster, such as a flood, earthquake, or the
drought currently ravaging the farmlands of the United States.
(3)      An employer relying on this subsection shall give as much notice as is
practicable and at that time shall give a brief statement of the basis for reducing the
notification period.

29 U.S.C.S. § 2102.

Subsection (b)(2)(B) must be interpreted based on the entirety of the section.[2]  This means

that Subsection (b)(3) and (b)(2)(B) must be interpreted to give meaning to both.  To start, "'the

title of a statute and *the heading of a section*' are 'tools available for the resolution of a doubt'

about the meaning of a statute." *Almendarez-Torres v. United States*, 523 U.S. 224, 234, 118 S.

---

[2]   Because the Order and the cross motions for Summary Judgment were focused on the natural disaster exception
and not the faltering business exception or unforeseen business circumstance exception of the Act, this analysis of the
notice requirement will also focus primarily on that single exception.

Ct. 1219, 1226 (1998) (citing *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-529.67 S. Ct. 1387, 91 L. Ed. 1646 (1947) (emphasis added). While section headings are not controlling, they can be used as evidence when interpreting the operative text of the statute. *United States v. Lauderdale Cnty.*, 914 F.3d 960, 965 (5th Cir. 2019) (citing *Yates v. United States*, 135 S. Ct. 1074, 1083, 191 L. Ed. 2d 64 (2015) (plurality op.)). In the present situation, the title of the relevant subsection of the WARN Act is "Reduction of the Notification Period" not "Elimination of the Notification Period." If Congress had intended to make the natural disaster exception one that completely dispensed with the notice requirement, it would have been placed under a different heading.

This reading is further supported by the existence of Section (b)(3) which requires that "An employer relying on *this subsection* shall give as much notice as is practicable…" (emphasis added). Section (b)(3) applies to the entire subsection. That includes all three possible exceptions. In order to interpret the entirety of the section, subsection (b)(3) and subsection (b)(2)(B), must be analyzed simultaneously and in connection with one another. In so doing, the "[n]o notice" language in (b)(2)(B) can only be interpreted to mean "no 60-day notice." If Section (b)(2)(B) is read to do away with the notice requirement completely, then the Section (b)(3) becomes superfluous and unnecessary.

Furthermore, contrary to the Court's interpretation in the Order, Section (b)(3) does not indicate that only employers relying on the faltering business or unforeseen business circumstances exceptions shall give notice. If that were the intent of the statute, section (b)(3) could easily have been written to state: "An employer relying on subsection (1) or subsection (2)(A) of this subsection..." It was not so written because the intent of Section (b)(3) was to apply to the entirety of the subsection and each of the listed exceptions, including the natural disaster exception.

The requirement to give notice, regardless of any of the exceptions, is clear. To the extent that the Court finds there is any ambiguity or uncertainty in this reading of the statute as a whole, or that the statute is susceptible to more than one meaning, the Court must then consider other means of curing the suspected ambiguity. First, by looking to the regulations set forth by the agency tasked with enforcing the statute. So long as that interpretation is reasonable and not arbitrary, capricious, or manifestly contrary to the statute, then it must be given deference as described below. Second, by looking at the legislative intent behind the construction of the statute.

### *Chevron Deference*

Under the well-established and well-known *Chevron* deference doctrine, a Court must first consider "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, *and the broader context of the statute as a whole.*" *Sides v. Macon Cnty. Greyhound Park, Inc.*, 725 F.3d 1276, 1284 (11th Cir. 2013) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S. Ct. 843, 846, 136 L. Ed. 2d 808 (1997) (emphasis added). Where there is statutory ambiguity, we defer to the interpretation of the WARN Act by the agency charged with its implementation, the Department of Labor ("DOL"). *Id. See* 29 U.S.C. § 2107(a) (granting the DOL the ability to "prescribe such regulations as may be necessary to carry out [the WARN Act]"); *see also Chevron,* 467 U.S. at 844; *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1299 (11th Cir. 2011) (explaining the court's deference to the DOL under *Chevron* when it exercises its authority).

"A statute is ambiguous if it is susceptible of more than one accepted meaning." *United Servs. Auto. Ass'n v. Perry*, 102 F.3d 144, 146 (5th Cir. 1996). If, however, contextual clues do

not reveal a single accepted meaning, "[i]t is eminently reasonable to conclude that [a statute's] silence is meant to convey nothing more than a refusal to tie the agency's hands . . ." *Calix v. Lynch*, 784 F.3d 1000, 1005 (5th Cir. 2015) (citing *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 222, 129 S. Ct. 1498, 173 L. Ed. 2d 369 (2009)); *see also U.S. Home Concrete & Supply, LLC*, 132 S. Ct. 1836, 1843, 182 L. Ed. 2d 746 (2012).  In order to conduct this analysis, "we avail ourselves of the traditional means of statutory interpretation, which include the text itself, its history, and its purpose." *Calix,* 784 F.3d at 1005 (citing *Bellum v. PCE Constructors, Inc.*, 407 F.3d 734, 739 (5th Cir. 2005) (citation omitted)).  "[W]hen traditional methods of statutory construction fail to reveal a provision's meaning . . . we conclude that it is ambiguous." *United Servs. Auto. Ass'n*, 102 F.3d at 147.

When a statute is ambiguous, we defer to an agency's reasonable interpretation. *Chevron*, 467 U.S. at 842. "An agency's interpretation is permissible if it is reasonable. The question of reasonableness is not whether the agency's interpretation is the only possible interpretation or whether it is the most reasonable, [but] merely whether it is reasonable *vel non*." *Calix,* 84 F.3d 1007 (citing *ConocoPhillips Co. v. EPA*, 612 F.3d 822, 831 (5th Cir. 2010)).

"When Congress has "explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation," *Chevron*, 467 U.S. at 843-844, and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute. *See id.*, at 844; *United States v. Morton*, 467 U.S. 822, 834, 81 L. Ed. 2d 680, 104 S. Ct. 2769 (1984); APA, 5 U.S.C. §§ 706(2)(A), (D).  But whether or not they enjoy any express delegation of authority on a particular question, agencies charged with applying a statute necessarily make all sorts of interpretive choices, and while not all of those choices bind judges to follow them, they

certainly may influence courts facing questions the agencies have already answered. "The well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance,'" *Bragdon v. Abbott*, 524 U.S. 624, 642, 141 L. Ed. 2d 540, 118 S. Ct. 2196 (1998) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S. Ct. 161 (1944)), and "we have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer . . ." *Chevron*, *supra*, at 844 (footnote omitted); *see also Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 63 L. Ed. 2d 22, 100 S. Ct. 790 (1980); *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450, 57 L. Ed. 2d 337, 98 S. Ct. 2441 (1978). The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position. *See Skidmore, supra*, at 139-140. The approach has produced a spectrum of judicial responses, from great respect at one end*, see, e.g., Aluminum Co. of America v. Central Lincoln Peoples' Util. Dist*., 467 U.S. 380, 389-390, 81 L. Ed. 2d 301, 104 S. Ct. 2472 (1984) ("substantial deference" to administrative construction), to near indifference at the other, *see, e.g., Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 212-213, 102 L. Ed. 2d 493, 109 S. Ct. 468 (1988) (interpretation advanced for the first time in a litigation brief). Justice Jackson summed things up in *Skidmore v. Swift & Co.*: "The weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U.S. at 140; *United States v. Mead Corp*., 533 U.S. 218, 227-28, 121 S. Ct. 2164, 2171-72 (2001).

*29 U.S.C. § 2107*

In matters related to the WARN Act, Congress specifically enumerated the agency with the authority to regulate and interpret the statute.  "The Secretary of Labor shall prescribe such regulations as may be necessary to carry out this chapter.  Such regulations shall, at a minimum, include interpretative regulations describing the methods by which employers may provide for appropriate service of notice as required by this chapter."  29 U.S.C. § 2107.  Based on step two of the *Chevron* deference doctrine, the interpretation of the Department of Labor ("DOL") is controlling so long as it is reasonable. *ConocoPhillips Co. v. EPA*, 612 F.3d 822, 831 (5th Cir. 2010)

*20 C.F.R. § 639.9(c)*

The relevant regulation that offers the DOL interpretation of the notice requirements, and other aspects specific to the natural disaster exception, is 20 C.F.R. § 639.9(c) which states:

> (c)      The "natural disaster" exception in section 3(b)(2)(B) of WARN applies to plant closings and mass layoffs due to any form of a natural disaster.
>      (1) Floods, earthquakes, droughts, storms, tidal waves or tsunamis and similar effects of nature are natural disasters under this provision.
>      (2) To qualify for this exception, an employer must be able to demonstrate that its plant closing or mass layoff is a direct result of a natural disaster.
>      (3) While a disaster may preclude full or any advance notice, such notice as is practicable, containing as much of the information required in §639.7 as is available in the circumstances of the disaster still must be given, whether in advance or after the fact of an employment loss caused by a natural disaster.
>      (4) Where a plant closing or mass layoff occurs as an indirect result of a natural disaster, the exception does not apply but the "unforeseeable business circumstance" exception described in paragraph (b) of this section may be applicable.

As clearly stated in section (c)(3), notice still must be given in the event of a natural disaster.  By overlooking Section (b)(3) of the Act, the Order disregards the ambiguity in the statute, and the Court gave itself permission to disregard this regulation in its entirety.  However,

16

this regulation is a reasonable interpretation of the statute.[3]   It is owed deference under *Chevron.*
Additionally, as will be shown below, it is a clear and irrefutable interpretation of the intent of Congress that notice would still be required after a natural disaster.

### *Legislative History*

To the extent that there are questions regarding what Congress intended at the time the WARN Act was drafted, the debate on the floor of Congress can provide significant insight into those intentions.  While the Court considered some of the statements that were made during these hearings, there were other statements that were obviously overlooked or intentionally ignored.  Specifically, relevant to this motion and the WARN Act exception for natural disasters, are the following exchanges:

First, on June 28, 1988, Senator Robert "Bob" Dole of Kansas, who proposed the Amendment that led to the natural disaster exception, made the following statements regarding the natural disaster exception to the WARN Act:

> "*It is not intended to be a loophole.* Somebody has to be in that business. I guess we would have to define "directly" if we take out "or indirectly" or we could add in there "or indirectly certified by the Secretary of Labor" or someone to make certain there was *not somebody trying to avoid the impact of the general law*."

134 Cong Rec S 8686 (emphasis added).

Furthermore, the following exchange between Senator James Jeffords of Vermont and Senator William Clay, Jr. of Missouri is especially relevant to the current analysis:

> Mr. JEFFORDS. I would also like to ask the distinguished chairman of the subcommittee a question about the intent behind section 3(b)(2)(B).  This was a

---

[3]  The DOL specifically considered the issues raised in the Order and addressed them directly when creating the Federal Regulations that are cited here.  "The natural disaster exception, section 3(b)(2)(B), begins with the words "[n]o notice under this Act shall be required."  On the other hand, the final subsection of the section 3(b) of WARN, section 3(b)(3), which, by its terms applies to the entire section, to all the exceptions, requires that as much notice as practicable be given when one of the exceptions is invoked.  The Department believes that the approach that it has decided upon is the best approach in this ambiguous situation since it is consistent with the needs of workers to have information on whether their jobs will continue to exist and how long they may be without work and this is consistent with the intent of WARN to provide such information to workers."  54 FR 16042.

provision adopted in the other body which provides that notice would not be required in certain instances of natural disaster.  *My first question is whether that subsection should be read in conjunction with section 3(b)(3), which requires that an employer provide as much notice as is practicable when the exceptions in section 3(b) apply?*

Mr. CLAY. Mr. Chairman, if the gentleman will yield, *yes, it should.* If the actual cause of the plant closing or mass layoff is a natural disaster such as the current drought, the bill provides that, *while the foreseeability of that disaster may preclude providing the full 60-day notice period, the employer is still obligated to give as much notice as is practicable* up to the full 60-day period.

Mr. JEFFORDS. *That is my understanding.*  So, in other words, if on July 1 an earthquake causes an employer to immediately suffer a reduction in supply or business causing an immediate need to reduce employment, *that employer would only have to give whatever notice he could before the employment reduction.  That notice period could be as short as 1 day or 1 week.*  If, on the other hand, that July 1 earthquake has a long-term effect so that the employer won't have to reduce employment for, say, another 6 months, and that reduction is reasonably foreseeable at least 60 days in advance, that employer would still have to provide 60 days' notice, assuming all of the other conditions of the legislation are met.

Mr. CLAY. Mr. Chairman, if the gentleman will yield, *that is correct. That is certainly the intent of this legislation.*

Mr. JEFFORDS. *I would agree that that is the intent and I believe that is also what the bill clearly provides. I thank the gentleman for his explanation.*

134 Cong Rec H 5500 (emphasis added).

Note that there is no indication, or even the slightest hint, that the notice requirement would be completely eliminated.[4]  As these transcripts, the regulations put forth by the DOL, and the reading of the statute in its entirety, harmonize and make clear, notice is required by an employer

---

[4]  While we are focused here on the natural disaster exception, it cannot be overlooked that Congress considered the following when discussing the Unforeseen Business Circumstances exception: "The Conferees recognize that there may be cases in which events necessitate a plant closing or mass layoff and it is not economically feasible to require the employer to give notice and wait until the end of the notice period before effecting the plant closing or mass layoff. For example, a natural disaster may destroy a part of a plant; a principal client of the employer may *suddenly and unexpectedly terminate or repudiate a major contract*; or an employer may experience a *sudden, unexpected and dramatic change in business conditions such as price*, cost, or declines in customer orders.  In these situations, the employer is required to give notice as soon as the closing or mass layoff becomes reasonably foreseeable, but the employer is permitted to implement the proposed closing or layoff without waiting until the end of the full notice period.  134 Cong Rec S 8686 (emphasis added).

for a mass layoff.  This is so even if said employer attempts to claim the natural disaster exception applies.  Which, in the instance of COVID-19, it does not.

**B.　　Reconsideration Is Warranted Because COVID-19 Is Not A Natural Disaster Under the WARN Act**

The natural disaster exception to the WARN Act was included to allow for those extreme circumstances when Mother Nature intervenes and makes 60-day advance notice impossible.  COVID-19, is undeniably, a global issue of unprecedented proportion.  However, COVID-19 is a pandemic, not a natural disaster under the WARN Act.

In order to determine if the natural disaster exception is available to an employer, we must first decide what constitutes a natural disaster.  The natural disaster exception to the WARN Act lists several examples of what qualifies for that exception: ". . . such as a flood, earthquake, or the drought currently ravaging the farmlands of the United States."  29 U.S.C. § 2102(b)(2)(B).  The DOL, in its role as interpreter of the statute, has further clarified what events qualify as natural disasters under the WARN Act: "Floods, earthquakes, droughts, storms, tidal waves or tsunamis and *similar effects of nature* are natural disasters…." 20 C.F.R. § 629.9(c)(1) (emphasis added).

Neither of these lists includes pandemics, such as COVID-19.  In the Order, the Court looked to the dictionary to define natural disaster in order to find that COVID-19 was a natural disaster.  The Order fails to analyze the enumerated lists with canons of statutory construction that would be more decisive.  As the venerable Judge Learned Hand once wrote, "But it is one of the surest indexes of a mature and developed jurisprudence *not to make a fortress out of the dictionary*; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham*, 148 F.2d 737 (2d Cir. 1945) (emphasis added).

19

Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words.  Rather, "[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole."  *Yates v. United States*, 574 U.S. 528, 537, 135 S. Ct. 1074 (2015) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997)).  *See also Deal v. United States*, 508 U.S. 129, 132, 113 S. Ct. 1993, 124 L. Ed. 2d 44 (1993) (it is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation but must be drawn from the context in which it is used"). Ordinarily, a word's usage accords with its dictionary definition. In law as in life, however, the same words, placed in different contexts, sometimes mean different things.  *Yates v. United States*, 574 U.S. 528, 537, 135 S. Ct. 1074 (2015).

We rely on the principle of *noscitur a sociis*—a word is known by the company it keeps—to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress."  *Id* at 543 (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995)).  *See also United States v. Williams*, 553 U.S. 285, 294, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008) ("a word is given more precise content by the neighboring words with which it is associated").

A canon related to *noscitur a sociis*, *ejusdem generis*, counsels "[W]here general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Yates,* 574 U.S. at 545 (citing *Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384, 123 S. Ct. 1017, 154 L. Ed. 2d 972 (2003)

20

(internal quotation marks omitted)). *See also CSX Transp., Inc. v. Alabama Dept. of Revenue*, 562 U.S. 277, 295, 131 S. Ct. 1101, 1113, 179 L. Ed. 2d 37, 53 (2011) ("We typically use *ejusdem generis* to ensure that a general word will not render specific words meaningless.").

Looking at the examples provided in both the Act and the regulation, there are certain consistencies in the terms that simply cannot be applied to a pandemic, such as COVID-19. As noted above, both the Act and the regulation refer to floods, earthquakes, and drought.[5] The regulation elaborates further and adds "storms, tidal waves or tsunamis and *similar effects of nature*." 20 C.F.R. 639.9(c)(1) (emphasis added). All the enumerated examples are geologic or meteorologic acts of nature that have the potential to cause severe and extensive damage to physical property or geographic areas, as well as potential harm to humans or loss of life. In instances where these sorts of events take place, it makes logical sense that an employer would be given some leeway regarding when the notice must be given. The impossibility of predicting the event, or working afterwards, makes the exception reasonable. It is impossible to sow a field that is stricken by drought. It is impossible to operate a plant that has been toppled by an earthquake. It is impossible to work in a factory that flooded after a hurricane.[6] COVID-19, on the contrary, did not have any impact on Defendant's ability to perform work. COVID-19 indirectly impacted the profitability of doing that work.[7]

---

[5] The drought that is referenced in the Act as "currently ravaging the farmlands of the United States" was very specific to the drought which began in 1988 and continued into 1989.

[6] It bears mentioning that hurricanes are not listed in the WARN Act, or the regulation, but based on the examples that were provided, a hurricane, typhoon, or cyclone would be included in the definition of natural disasters because they are meteorologic in nature and have the potential to cause severe and extensive damage to physical property and geographic areas.

[7] The Order also takes issue with Plaintiffs' position that the exception is limited to events that are sudden or swift and points out that this also impacts the causal link discussed below. (Docket Entry NO. 33 at 15). Contrary to the position taken in the Order, Congress itself intended that the exception was for those situations where events were "sudden." "We have checked with Senator Dole, and his intent in offering the amendment is simply to make clear that businesses *taken by surprise* by the drought – or any natural disaster – cannot be required to give more notice than they actually had of the economic catastrophe that has befallen them." 134 Cong Rec H 5500 (emphasis added).

The Order spends no small amount of time discussing the human involvement in the spread of COVID-19.  (Docket Entry No. 33 at 12-14).  Another district court opinion from 2016 held that human intervention negated the possibility of something being a natural disaster.  *Carver v. Foresight Energy, LP*, 3:16-cv-3013, 2016 WL 3812376, at *4 (C.D. Ill. July 12, 2016).   The present Order states that "human beings were not responsible for starting or consciously spreading the virus." (Docket Entry No. 33 at 14).  This conclusion is propounded in an effort to distinguish the present case from the ruling in *Carver.*  However, to state that humans had no effect on the spread of the contagion lacks credulity.  The widespread dispersal of the pandemic is undeniably dependent upon human vectors and involvement.  How it originated may have been natural, but the spread of the virus from person-to-person is the direct result of millions of decisions made by millions of people daily.  The natural disasters listed in the Act and the regulation, can neither be initiated nor prevented by any act of man or woman.  COVID-19 however, not only involves human intervention, it requires it.

Furthermore, the complete and utter absence of any mention in the statute regarding epidemics, pandemics, outbreaks, or illnesses is telling as well.  "The principle that a matter not covered is not covered is so obvious that it seems absurd to recite it." *Envtl. Integrity Project v. United States EPA*, 969 F.3d 529, 541 (5th Cir. 2020) (citing *Yates v. Collier*, 868 F.3d 354, 369 (5th Cir. 2017) (citation omitted)).[8]  A number of cases have identified the *casus omissus pro*

---

[8]  The Order attempts to overcome this glaring absence in the WARN Act by first by referring to *Meyer v. Conlon*, 162 F.3d 1264 (10th Cir. 1998).  There, the Order notes, natural disasters include "*hail and disease.*"  This is not persuasive however for two reasons: 1) this reference is to diseases that affect plants or crops (not humans) and was considered specifically when discussing crop related insurance; and 2) unlike the WARN Act, the FCIA at issue in the *Meyer case,* specifically included the word "disease" in the statute in multiple places.  *See* 7 U.S.C. § 1508(g)(5)(A)(i); 1508(g)(5)(A)(ii); and 1508(l).  It wasn't read in to the statute out of thin air.  The Order next seeks to use the ruling in *Badgley v. Varelas*, 729 F.2d 894 (2d Cir. 1984).  The Court in that case was dealing with issues of prison overpopulation.  In its decision the Court stated "If the [Nassau County Correctional Center] were closed today because of a natural disaster such as *fire or disease*, we have little doubt that the responsible officials of New York State and Nassau County would figure out some way to confine tomorrow those arrested by the police and sentenced by the courts." (emphasis added).  There the Court was looking at the impact that "fire or disease" could

*omisso habendus est* canon, under which a statute should not be read to include matter it does not include. *See, e.g., Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004), 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (rejecting construction that "would have us read an absent word into the statute" because it "would result not in a construction of the statute, but, in effect, an enlargement of it by the court." (citing *Iselin v. United States*, 270 U.S. 245, 251, 46 S. Ct. 248, 70 L. Ed. 566, 62 Ct. Cl. 755, 1926-1 C.B. 365, T.D. 3846 (1926)).

The Order, by adding the COVID-19 pandemic to the list of natural disasters to which the exception may apply, is greatly enlarging the statute far beyond what was intended by Congress. The threat of infectious outbreaks was not alien to Congress at the time the WARN Act was drafted.[9] Consequently, the omission of infectious diseases, pandemics, or epidemics from the list of natural disasters reinforces the position that they were not intended to be included and are distinct and separate issues. There is no doubt that COVID-19 is a terrible illness that has had a dramatic impact on the world, on this country, and on countless lives. Regardless, the COVID-19 pandemic is not a natural disaster under the WARN Act.

---

have on the controlled population within a prison's walls. To claim that is equivalent to the global pandemic of COVID-19 is a tenuous stretch. Lastly, the Order looks to *Nat. Res. Def. Council v. EPA*, 896 F.3d 459 (D.C. Cir. 2018). The Order cites a section of the ruling that includes "viral epidemics" in a list of possible natural disasters. However, the Order fails to consider the very next paragraph of the ruling which concedes, "But what 'natural event' means in the Act does not depend entirely on its ordinary reading because 'the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" (citing *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007) (internal quotation marks omitted). That Court later holds, similar to what Plaintiffs pointed out here, "[t]he statutory language is far from unambiguous and is, instead, a classic example of Congress leaving a gap for EPA to fill with reasonable regulations." (citing *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs*., 545 U.S. 967, 980 (2005) ("[A]mbiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion.")).

[9] There have been numerous epidemics and outbreaks of disease throughout the history of the United States, including: Yellow fever, Cholera, Scarlet fever, Typhoid fever, H1N1 "Spanish flu", polio, H2N2 flu, and measles to name just a few. Dana Robinson and Ann Battenfield, *The Worst Outbreaks in U.S. History*, healthline, Mar. 24, 2020, https://www.healthline.com/health/worst-disease-outbreaks-history.

**C.      Reconsideration Is Warranted Because The Order Applies The Wrong Standard Of Causation**

The Order views the statute and, regardless of the ambiguous nature of the language, discounts the regulations that were written specifically to aid in the interpretation of the statute. Under the WARN Act, no 60-day notice is required "if the plant closing or mass layoff is due to any form of natural disaster…" 29 U.S.C. § 2102(b)(2)(B).  The only language here that could relate to causation is the phrase "due to."  Courts have held: "[t]he phrase "due to" is ambiguous. "The words do not speak clearly and unambiguously for themselves. The causal nexus of 'due to' has been given a broad variety of meanings in the law ranging from sole and proximate cause at one end of the spectrum to contributing cause at the other." *United States Postal Serv. v. Postal Regulatory Comm'n*, 395 U.S. App. D.C. 122, 127, 640 F.3d 1263, 1268 (2011) (citing *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1100 (10th Cir. 1999) (quoting *Adams v. Director, OWCP*, 886 F.2d 818, 821 (6th Cir. 1989)).  In other words, the phrase can mean "due in part to" as well as "due only to." *United States Postal Serv.,* 395 U.S. App. D.C. at 1268.

When there is an ambiguity in the statute, courts defer to the agency's interpretation under the familiar *Chevron* framework.  *See Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 843-45, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).  To clarify the ambiguity, the DOL regulation states: "To qualify for this exception, an employer must be able to demonstrate that its plant closing or mass layoff is a *direct result* of a natural disaster." 20 C.F.R. § 639.9(c)(2) (emphasis added).  As the Order correctly notes, before ignoring it and moving on, the DOL explained that the "direct result" regulatory requirement stemmed from the "floor debates demonstrate[ing] Congressional intent that an employment action that was a direct result would fall under this exception, while one that was caused as an indirect result of a natural disaster would not be covered."  Worker Adjustment and Retraining Notification; Interim Interpretive Rule, 53 F. Reg. 48884, 48889 (Dec. 2, 1988).

24

The Order than discusses portions of the floor debate but fails to acknowledge how the word 'directly' ended up being removed from the proposed amendment. Senator Howard Metzenbaum of Ohio had the following issue with the amendment:

> Mr. METZENBAUM - But I am frank to say that I have some difficulty with one portion of the amendment. I would like to suggest to the distinguished Senator from Kansas that we eliminate the "indirectly" because "indirectly" is such an amorphous kind of term you cannot tie it down. How far indirectly does that mean? I would say to the Senator from Kansas if we can take out the word "indirectly" the Senator from Ohio will be prepared to accept the amendment.

134 Cong Rec S 8686.

The word directly was also removed to avoid having to define it, as noted above. Given this backdrop however, the interpretation of the DOL is reasonable and is therefore entitled to deference under *Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). The Order on the other hand, tries to undo what was done by Congress by applying a "but-for" standard of causation. (Docket Entry No. 33 at 16-22). By reading the statute to include "but-for" causation, the Order is trying to put back the words directly and indirectly, which Congress expressly removed. This could lead to the exact result that Senator Metzenbaum feared when he stated "I think you could make a lot of ludicrous cases out as to what impact the drought or flood or earthquake has." 134 Cong Rec S 8686.

For example, in 2011, Japan was rocked by multiple earthquakes and a tsunami.[10] The result - oil prices soared in the U.S.[11] If, hypothetically, a similar earthquake or natural disaster abroad caused the price of oil to plummet instead, would employers in the United States then be able to claim the exception? Employers would argue that "but-for" the earthquake, prices would

---

[10] Rafferty, John P. and Pletcher, Kenneth. *Japan earthquake and tsunami of 2011,* Encyclopedia Britannica (27 Mar. 2020) https://www.britannica.com/event/Japan-earthquake-and-tsunami-of-2011.

[11] Ben Rooney, *Oil tops $110 after Japan suffers another blow*, CNN Money (Apr. 7, 2011) https://money.cnn.com/2011/04/07/markets/oil/index.htm ("Oil prices jumped above $110 a barrel, a fresh 2-1/2 year high, after Japan was hit with another major earthquake.").

not have dropped, therefore, we can layoff employees with no warning, right?  This cannot be what Congress had in mind.  But this is precisely what the Order would allow.

The DOL regulations, in accordance with the purpose of the statute and the exception, already provided an alternative means to address the potential 'indirect results' of a natural disaster.  "Where a plant closing or mass layoff occurs *as an indirect result of a natural disaster*, the exception does not apply but the "unforeseeable business circumstance" exception described in paragraph (b) of this section may be applicable."  20 C.F.R. 639.9(c)(4) (emphasis added).  Given this guidance, the natural disaster exception can be viewed as a subset of the unforeseen business circumstances exception.  Those that are "downstream" - as Congress and the Order discuss - can avail themselves of the unforeseeable business circumstance exception, assuming that they do so in accordance with the statute.  This alleviates the causation concerns raised by the Order's interpretation of the legislative history.

Plaintiffs would be remiss if they neglected to point out that the causation issue was not even brought up by Defendant in the motion that was put before the Court.  In fact, Defendant conceded that direct causation was appropriate and tried to claim that COVID-19 "directly precipitated the collapse of oil prices." (Docket Entry No. 21 at 11).

## II.    IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL

If the Court will not reconsider the Order and grant Plaintiffs' Motion for Summary Judgment, the Court should certify the Order for immediate appeal to the Federal Circuit under 28 U.S.C. § 1292(b).  Section "1292(b) allows a district court judge to certify an order for interlocutory appeal if three conditions are met: the Order 1) 'involves a controlling question of law' 2) 'as to which there is substantial ground for difference of opinion,' and 3) 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'"  *EEOC*

26

*v. Bass Pro Outdoor World, LLC*, No. 4:11-CV-3425, 2014 U.S. Dist. LEXIS 161053 (S.D. Tex. Nov. 17, 2014).

The Order satisfies the criteria for interlocutory appeal.

### A.    PROPOSED QUESTIONS OF LAW

1. Does the notice requirement of 29 U.S.C. § 2102(b)(3) apply to the WARN Act's natural disaster exception, 29 U.S.C. § 2102(b)(2)(B)?

2. Does the current COVID-19 pandemic meet the statutory and regulatory definition of a "natural disaster" that would qualify it for the natural disaster exception under 29 U.S.C. § 2102(b)(2)(B)?

3. What causal standard is required to establish that a plant closing or mass layoff is "due to any form of natural disaster" under the WARN Act's natural disaster exception, 29 U.S.C. § 2102(b)(2)(B), and can layoffs related to COVID-19 pandemic meet the standard?

### B.    CONTROLLING QUESTIONS OF LAW

The questions related to the notice requirement, the definition of natural disaster under the Warn Act, and the appropriate causation standard, are all controlling questions of law and are not factual disputes. *See Ryan v. Flowserve,* 444 F. Supp. 2d 718, 722 (N.D. Tex. 2006) (citing *Clark-Dietz and Assocs.-Eng'rs v. Basic Constr. Co.,* 702 F.2d 67, 69 (5th Cir. 1983) (holding that fact-review issues are inappropriate for § 1292 review)).

Courts have found issues to be controlling "if reversal of the district court's opinion would result in dismissal of the action." *Ryan*, F. Supp 2.d at 723 (citing *Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark*, 1997 U.S. Dist. LEXIS 12243, No. 96 CIV. 2136 (RWS), 1997 WL 473566, at *7 (S.D.N.Y. Aug. 18, 1997) (citing *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)) (other citations omitted)).  An issue of law has also been termed controlling where "the certified issue has precedential value for a large number of cases." *Id.*

27

Other Courts have held that a question of law exists where, as here, there is "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1258 (11th Cir. 2004) (citing *Ahrenholz v. Board of Trustees of the University of Illinois*, 219 F.3d 674, 676 (7th Cir. 2000)).

All three of the proposed questions of law fit this criterion and are therefore questions of law that are proper for interlocutory appeal.

### C.    SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION

The second requirement under § 1292(b) is a showing that there is substantial ground for difference of opinion regarding the questions raised.  Courts have found substantial ground for difference of opinion where:

> a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if *novel and difficult questions of first impression are presented*.

*Ryan*, F. Supp 2.d at 723-724 (Internal citations omitted) (emphasis added).  No court of appeals has yet to confront the questions proposed.  Therefore, it is a "novel question of first impression ripe for interlocutory appeal."

Additionally, the issue presented holds significant importance outside of this litigation. Other courts have held: "The preconditions for § 1292(b) review … are most likely to be satisfied when a ruling involves a new legal question or is of *special consequence*."  *Mohawk Indus. V. Carpenter*, 558 U.S. 100, 111 (2009) (emphasis added).  *See Ryan*, 444 F. Supp. 2d at 723 (stating an issue of law has also been termed controlling where "the certified issue has precedential value for a large number of cases.") (internal citations omitted).  Here there is no doubt that the answers

to the proposed questions carry great significance and will have consequences far beyond the case at bar.

To further illustrate this point, Plaintiffs direct the Court's attention to another district court which has already certified a similar case for interlocutory appeal. (Exhibit A – Defendants' Motion to Certify for Interlocutory Review and Incorporated Memorandum of Law; Exhibit B – United States District Court for the Middle District of Florida – Orlando Division: Amended Order certifying interlocutory review). In that case, the District Court correctly found in favor of the Plaintiffs and held that, based on the DOL Regulation interpreting the WARN Act, the natural disaster exception, *if* applicable to COVID-19, would require evidence of direct causation in order for the affirmative defense to be utilized. (Exhibit B at 10-12).

### D.    ADVANCE THE TERMINATION OF THE LITIGATION

Finally, certification of the Order for interlocutory appeal will undoubtedly advance this case toward its resolution. Courts have found the issue of whether an interlocutory appeal involves a controlling question of law to be "closely tied" to the requirement that the appeal will materially advance the ultimate termination of the litigation. *Ryan*, 444 F. Supp. 2d at 723 (Internal citations omitted). In sum, a controlling question of law - although not consistently defined - at the very least means a question of law the resolution of which could materially advance the ultimate termination of the litigation-thereby saving time and expense for the court and the litigants. *Id.* (Internal citations omitted).

Here, an immediate appeal would materially advance the ultimate disposition of the case before the Court. Certification of the questions proposed will avoid the potential unnecessary expenditure of resources by this and other district courts. Judicial economy would be greatly served be allowing this Order to be certified for interlocutory review.

**CONCLUSION**

For all the reasons set forth above, the Court should either reconsider its February 10, 2021 Order and grant Plaintiffs' Motion for Summary Judgment, or in the alternative, certify the Order for immediate appeal to Federal Court of Appeals in the Fifth Circuit under 28 U.S.C. § 1292(b).

Dated: February 23, 2021                    Respectfully submitted,

                                            By: /s/ Gabriel A. Assaad
                                            Gabriel A. Assaad
                                            Texas Bar No. 24076189
                                            MCDONALD WORLEY, P.C.
                                            1770 St. James Street, Suite 100
                                            Houston, TX 77056
                                            (713) 523-5500 – telephone
                                            (713) 523-5501 – facsimile
                                            gassaad@mcdonaldworley.com

                                            Galvin Kennedy
                                            KENNEDY LAW FIRM, LLP
                                            2925 Richmond Avenue, Ste. 1200
                                            Houston, TX 77098
                                            (713) 425-6445 - telephone
                                            galvin@kennedyattorney.com

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing instrument has been served on all counsel of record via e-file notification on February 23, 2021.

    David M. Korn
    Mark Fijman
    PHELPS DUNBAR LLP
    Canal Place, 365 Canal Street
    New Orleans, Louisiana 70130-6534
    Telephone: (504) 566-1311
    Email: david.korn@phelps.com
        mark.fijman@phelps.com

                                            /s/ Gabriel A. Assaad
                                            Gabriel A. Assaad

30

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with all other parties about the merits of this motion and they do not consent to the filing of this motion.

.

*/s/ Gabriel A. Assaad*

Gabriel A. Assaad
