**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **SCOTT EASOM, ADRIAN HOWARD, and JOHN NAU, on behalf of themselves and on behalf of all others similarly situated,** | § § § § § | |
| **Plaintiffs,** | § § | |
| **V.** | § § | **CIVIL ACTION NO  4:20-CV-02995** |
| | § § | |
| **U.S. WELL SERVICES, LLC** | § § | |
| **Defendant.** | § § § § § | |

---

**DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**
**ON DEFENDANT'S GOOD FAITH AFFIRMATIVE DEFENSE**

---

## **<u>TABLE OF CONTENTS</u>**

Table of Authorities .................................................................................................. ii

I.      Introduction and Summary of the Argument .................................................1

II.     Factual Background and Procedural History ..................................................1

III.    Argument .......................................................................................................2

      A.      **The Motion for Summary Judgment is Procedurally Improper and Violates the One-Way Intervention Rule** .....................................3

      B.      **The Good Faith Defense Applies Only After a Determination of Liability Under the WARN Act**...............................................5

      C.      **USWS Is Not Required to Rely on the Advice of Counsel to Invoke the Good Faith Defense**................................................5

      D.      **USWS Has Evidence of Its Good Faith, Other Than the Advice of Counsel, Such That There Is a Dispute of Fact** ...............9

      E.      **USWS Should be Allowed to Develop and Present Additional Discovery Pursuant to Rule 56(d)(1)**...................Error! Bookmark not defined.

IV.     Conclusion ....................................................................................................12

PD.40690177.2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re Art Van Furniture, LLC,*
    638 B.R. 523 (Bankr. D. Del. 2022) ....................................................................11

*Alberts v. Nash Finch Co.,*
    245 F.R.D. 399, 408 (D. Minn. 2007)...................................................................5,7

*Am. Pipe & Constr. Co. v. Utah,*
    414 U.S. 538, 547 (1974)........................................................................................3

*Easom v. US Well Servs., Inc.,*
    527 F. Supp. 3d 898 (S.D. Tex. 2021) .................................................................11

*Free v. Allstate Indem. Co.,*
    541 F. Supp. 3d 767, 771, 773 (E.D. Tex. 2021) ...................................................4

*Frymire v. Ampex Corp.,*
    61 F.3d 757, 768 (10th Cir. 1995) ....................................................................7, 10

*Katz v. Carte Blanche Corp.,*
    496 F.2d 747, 759 (3d Cir. 1974)...........................................................................3

*Law v. American Capital Strategies, Ltd.,*
    No. CIV. 3:05-0836, 2007 WL 221671, at *17 (M.D. Tenn. Jan. 26, 2007)...........6

*Lopez v. Progressive Cty. Mut. Ins. Co.,*
    No. 19-380, 2020 WL 4738952, at *3 (W.D. Tex. Aug. 14, 2020).........................4

*Oil, Chemical & Atomic Workers International Union v. American Home Production Corp.*
    790 F. Supp. 1441, 1452 (N.D. Ind. 1992) ...................................................8, 9, 12

**Federal Statutes and Rules**

Federal Rule of Civil Procedure 23 ......................................................................3, 4

Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101-2109 ...........................1

29 U.S.C. § 2104(a)(4) ..................................................................... *passim*

ii

**OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT ON
DEFENDANT'S GOOD FAITH AFFIRMATIVE DEFENSE**

**TO THE HONORABLE CHIEF JUDGE LEE H. ROSENTHAL:**

COMES NOW, DEFENDANT, US WELL SERVICES, LLC, ("USWS" or "Defendant"),
by and through its attorneys of record, and respectfully submits this Opposition to the Motion for
Partial Summary Judgment on Defendant's Good Faith Affirmative Defense (R. Doc. 78) filed by
Plaintiffs Scott Easom, Adrian Howard, and John Nau (collectively "Plaintiffs").

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

The Court should deny the motion for partial summary judgment because it is procedurally
flawed and is also premature, given that the good faith defense is resolved only *after* a finding of
liability under the WARN Act. Moreover, contrary to the Plaintiffs' assertion, USWS is not
required to rely on the advice of counsel to invoke the good faith defense and also *does have*
evidence to support its good faith defense, separate from the advice of counsel. For any, or all, of
these reasons, the Court should deny Plaintiffs' motion for partial summary judgment.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court is familiar with the facts of this case, which involves the application of the
Worker Adjustment and Retraining Notification Act (WARN Act"), 29 U.S.C. §§ 2101-2109, to
a layoff which occurred in March 2020. Plaintiffs Scott Easom, Adrian Howard, and John Nau
filed suit on behalf of themselves, and others similarly situated, alleging that they failed to receive
60-days' notice in advance of a plant closing or mass layoff, as is required by the WARN Act. *See*
R. Docs. 1 & 10. USWS filed responsive pleadings and raised the affirmative defense of good
faith, which is codified in 29 U.S.C. § 2104(a)(4). *See* R. Doc. 20 at p. 3. The good faith provision
of the WARN Act provides:

> If an employer which has violated this chapter proves to the satisfaction of the court
> that the act or omission that violated this chapter was in good faith and that the

employer had reasonable grounds for believing that the act or omission was not a violation of this chapter the court may, in its discretion, reduce the amount of the liability or penalty provided for in this section.

During the deposition of Matt Bernard, who was deposed just days after USWS was acquired by another corporation, Plaintiffs attempted to elicit testimony concerning communications protected by the attorney-client privilege and/or work-product doctrine. Specifically, Plaintiffs asked Mr. Bernard questions about his communications with counsel, whether counsel was involved in terminations, and whether USWS relied on advice of counsel with respect to WARN Act compliance.[1] When USWS's counsel invoked attorney-client privilege, Plaintiffs' counsel persisted, so the parties contacted the Court for a status conference. During the status conference, USWS stipulated that it would not invoke reliance on the advice of counsel to support its good faith defense. In response, Plaintiffs filed the instant motion for summary judgment on the good faith defense, arguing that USWS has no other evidence to support its good faith affirmative defense.

## III.    ARGUMENT

First, USWS maintains the Court should deny the instant motion at this time because ruling on the motion prior to determining class certification would violate the one-way intervention rule, which is designed to prevent putative class members from sitting on the sidelines and waiting to join a putative class if the class receives favorable rulings, while at the same time, not being bound by unfavorable rulings. Second, USWS maintains that the Court should deny the instant motion because the good faith defense only applies *after* a finding of liability under the WARN Act. Third, USWS maintains the Court should deny the instant motion because USWS is not required to rely

---

[1] *See* Exhibit 1, Deposition of Matt Bernard at p. 67-69, 101-104.

on advice of counsel to support its good faith defense and in fact has evidence to support its good

faith defense, separate from the advice of counsel.

A.    **The Motion for Summary Judgment is Procedurally Improper and Violates the One-Way Intervention Rule**

Like with the motion for partial summary judgment premised on the sufficiency of

Defendant's notice (*see* R. Doc. 70), the Court should deny the instant motion for partial summary

judgment, or defer ruling on it until after class certification, because ruling on the instant motion

prior to class certification would violate the one-way intervention rule. Federal Rule of Civil

Procedure 23 requires that class certification be sought "[a]t an early practicable time after a person

sues or is sued as a class representative." FED. R. CIV. P. 23(c)(1)(A). Accordingly, and as the U.S.

Supreme Court has explained, motions for class certification must precede motions for summary

judgment because delaying class certification encourages putative plaintiffs to "await

developments in the trial or even final judgment on the merits in order to determine whether

participation would be favorable to their interests." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538,

547 (1974). Thus, "[i]f the evidence at the trial made their prospective position as actual class

members appear weak, or if a judgment precluded the possibility of a favorable determination,

such putative members of the class who chose not to intervene or join as parties would not be

bound by the judgment." *Id.* "This situation—the potential for so-called 'one-way intervention'—

aroused considerable criticism upon the ground that it was unfair to allow members of a class to

benefit from a favorable judgment without subjecting themselves to the binding effect of an

unfavorable one." *Id.*

"To meet the point that one-way intervention was unfair to the defendant, the Advisory

Committee on the Federal Rules concluded that class members should be brought in prior to the

determination of defendant's liability, thus making the estoppel mutual." *Katz v. Carte Blanche*

*Corp.*, 496 F.2d 747, 759 (3d Cir. 1974) (citations omitted); *see also* FED. R. CIV. P. 23 (2003 Advisory Committee Notes) ("[T]he purpose of the 2003 Amendments was not to restore the practice of one-way intervention that was rejected by the 1966 revision.").

Accordingly, courts within the Fifth Circuit have delayed ruling on or have denied substantive motions, including a motion for partial summary judgment, prior to determination of class certification. *See Free v. Allstate Indem. Co.*, 541 F. Supp. 3d 767, 771, 773 (E.D. Tex. 2021) (setting aside a favorable ruling on plaintiffs' motion for summary judgment "after examining the applicable case law, [and] agree[ing] with [the defendant] that allowing [the plaintiffs'] partial summary judgment ruling to stand would likely create a one-way intervention problem because potential plaintiffs unknown to [the defendant] at the time partial summary judgment was granted would be able to take advantage of the favorable ruling"); *Lopez v. Progressive Cty. Mut. Ins. Co.*, No. 19-380, 2020 WL 4738952, at *3 (W.D. Tex. Aug. 14, 2020) ("The Court will not issue a ruling on the summary judgment motion until the certification question has been decided."). For example, in *Lopez*, a court in the Western District of Texas held a motion for partial summary judgment in abeyance until after a ruling on class certification. 2020 WL 4738952, at *3. Here too, the Court should delay ruling on the instant motion for partial summary judgment (or deny the motion without prejudice) until the Court has ruled on the anticipated motion for class certification.

The instant motion for partial summary judgment is procedurally flawed and runs afoul of the one-way intervention rule.[2] The Court should deny the motion for partial summary judgment, or defer ruling on it until after class certification, because putative Plaintiffs should not be

---

[2] That USWS filed an early motion for summary judgment does not violate the one-way intervention rule, which inures to the benefit of a defendant in a class action by ensuring that all putative class-members are bound by a substantive ruling, regardless of whether the ruling is favorable or unfavorable. In fact, USWS contemplated filing another early motion for summary judgment, arguing that the jurisdictional threshold was not satisfied because at least 50 employees were not terminated at certain individual sites of employment.

PD.40690177.2

permitted to stand on the sidelines and reap the benefits of a potential favorable ruling, while simultaneously avoiding the detriment of a potential unfavorable ruling.

**B.     The Good Faith Defense Applies Only After a Determination of Liability Under the WARN Act**

The Court should deny the instant motion for summary judgment because the good faith defense applies to reduce an employer's liability only *after* there has been a determination that the employer is liable under the WARN Act. *See* 29 U.S.C. § 2104(a)(4). Pursuant to its terms, the good faith defense applies, "[i]f an employer *which has violated [the WARN Act]* proves to the satisfaction of the court *that the act or omission that violated [the WARN Act]* was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of this chapter." *Id.* (emphasis added). It is a precondition to a finding of good faith that there be a violation of the WARN Act. As such, it is not proper to decide a motion for summary judgment on the applicability of the good faith defense prior to a determination that an employer is liable under the WARN Act.

Other courts have denied similar motions for summary judgment on the good faith defense because it is not a proper basis for summary judgment. *See Alberts v. Nash Finch Co.*, 245 F.R.D. 399, 408 (D. Minn. 2007) (denying motion for summary judgment on good faith defense because "the 'good faith' defense applies only after a violation of the WARN Act has been established; it is not a basis for granting summary judgment to the employer."). Here, too, the Court should deny the instant motion for summary judgment as premature because there has been no finding of liability.

**C.     USWS Is Not Required to Rely on the Advice of Counsel to Invoke the Good Faith Defense**

USWS is not prohibited from invoking the good faith defense simply because it asserts attorney-client privilege. Another court has expressly rejected this argument. In *Law v. American*

*Capital Strategies, Ltd.*, the plaintiffs sought summary judgment on the good faith affirmative defense, premised on the notion that the company would not disclose "whatever discussions it may have had with counsel about the timing and substance of notice under the WARN Act" and because they maintained the company could not rely on any of the exceptions to the 60–day notice requirement. No. CIV. 3:05-0836, 2007 WL 221671, at *17 (M.D. Tenn. Jan. 26, 2007). However, the court rejected the argument, noting that "the assessment of [the company's] subjective belief and whether its actions were objectively reasonable is a question of fact which must be resolved at trial." *Id.* The court also noted that "While [the company] will have the burden of proving its good faith defense at trial, at the summary judgment stage it does not have the burden of showing that there are no genuine issues of material fact on this issue or the burden of showing that it is entitled to judgment as a matter of law. That is Plaintiffs' burden at this stage of the proceedings." *Id.* Here, too, USWS is not prohibited from invoking the good faith defense simply because it will not disclose whatever discussions it may have had with counsel.

By arguing that USWS cannot support its good faith defense because it has waived reliance on the advice of counsel, Plaintiffs overlook the fact that USWS is not required to rely on the advice of counsel to invoke the good faith defense. Instead, the applicability of the good faith defense turns on a totality of the circumstances surrounding the layoff and is left to the sound discretion of the district court. As such, evidence about the employer's reasonable belief about the applicability of the WARN Act, the employer's efforts to provide notice to employees (even if such notice was not technically compliant with the requirements for WARN notice), and the employer's general efforts to comply with the WARN Act can all support the good faith defense.

An employer's good faith belief about the applicability of the WARN Act (even if incorrect) can support a finding of good faith. For example, in *Frymire v. Ampex Corp.*, the Tenth

Circuit applied the good faith defense when an employer determined that its anticipated layoff would not trigger the WARN Act because its two plants constituted a single site of employment and would not be laying off the statutorily required 1/3 of the workforce. 61 F.3d 757, 768 (10th Cir. 1995). However, the district court subsequently decided that each plant *was* a separate site of employment, and that the 1/3 threshold *was* satisfied as to one of the plants (such that the WARN Act was triggered and violated as to that separate site of employment). After the finding of liability, the Tenth Circuit concluded the good faith defense should apply because the company's determination about the single site of employment, "even if wrong—was at least 'reasonable.'" *Id.*

Given the evidence presented about the single site, and the fact that the determination of single sites has proven to be an elusive concept, the Court in *Frymire* "readily acknowledge[d] that reasonable minds could come to an entirely different conclusion" about the single site determination and the triggering of the WARN Act. *Id.* The Court therefore applied the good faith defense because it was difficult to prove that the employer "did not act *at least reasonably* in believing that it was complying with the requirements of WARN." *Id.* (emphasis added). Similarly, in *Alberts v. Nash Finch Co.*, a district court noted an employer "appears to have a strong argument that it acted in good faith" because it reasonably, and in good faith, did not believe any of the stores it was closing employed enough full-time workers to trigger the WARN Act's notice requirement. 245 F.R.D. 399, 408 (D. Minn. 2007).

An employer's efforts to provide employees with notice of the layoff, even if such notice was not compliant with the requirements of WARN notice, can also support the good faith defense. For example, in *United Auto. Aerospace & Agricultural Implement Workers of America, Local 1077 v. Shadyside Stamping Corp.*, the court applied the good faith defense even though "the various notices provided by [the company] may not have complied with the requirements set forth

PD.40690177.2

in the regulations, 29 C.F.R. § 639.7," because "they did include much of the required information." 947 F.2d 946, 1991 WL 230841 at *3 (6th Cir. 1991). In applying the good faith defense, the court in *Shadyside Stamping* also considered that "[d]uring the period in question, [the company's] circumstances were rapidly evolving. It was facing unforeseen developments, such as the cancellation of [a major contract], and attempting to replace work it had recently lost. In this situation, the lack of scientific precision in the layoff notices does not vitiate good faith." *Id.* Ultimately, the court upheld the good faith defense because it concluded the employer "knew of the Act, attempted to comply with the Act, and had reasonable grounds for believing it had complied with the Act. *Id.*

Likewise, in *Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Department Stores, Inc.*, the district court applied the good faith defense to reduce an employer's damages owed to two employees who did not receive written notice but who were clearly made aware of the impending closing. 790 F. Supp. 663, 673 (E.D. La. 1992), *amended*, (E.D. La. May 4, 1992), *and aff'd in part, rev'd in part*, 15 F.3d 1275 (5th Cir. 1994). The district court reasoned that, "[d]espite the fact that neither employee received personal notice, both were aware, before the fact, of the intended closure of the Canal Street store and knew that they would be laid off." *Id.* at 673. Although the "[f]ailure to provide notice to these two employees was a violation of the Act and would ordinarily allow them to recover damages for 60 days from the date of their actual discharge," the Court concluded the company was in good faith as to those employees and reduced the damages owed to them such that they were treated in the same manner as if they had received the same notice as that received by those co-workers who were discharged at the same time. *Id.*

An employer's effort to provide employees with notice of the layoff was also relevant to the determination of good faith in *Oil, Chemical & Atomic Workers International Union v.*

8

*American Home Production Corp.* There, the employer provided technically deficient WARN notice that failed to specify the anticipated separation date. 790 F. Supp. 1441, 1452 (N.D. Ind. 1992). However, the court applied the good faith defense to reduce the employer's liability because "there was no secret" about the plant closing and there was ambiguity about the precise requirements of WARN notice. In applying the good faith defense, the court also considered the company's general "efforts to comply with the WARN Act." *Id.*

As illustrated through these cases, USWS is not required to rely on the advice of counsel to support its good faith affirmative defense. Instead, courts look to a variety of factors when assessing whether an employer subjectively intended to comply with the WARN Act and whether the employer's actions were objectively reasonable. As such, the fact that USWS has stipulated it will not rely on the advice of counsel to support its affirmative defense is not determinative of USWS's ability to invoke the good faith defense in 29 U.S.C. § 2104(a)(4).

### D.   USWS Has Evidence of Its Good Faith, Other Than the Advice of Counsel, Such That There Is a Dispute of Fact

Plaintiffs' "no evidence" summary judgment motion should be denied because USWS *can* present evidence to support its good faith defense, other than the advice of counsel. Specifically, USWS can point to: (1) its CEO's genuine and reasonable belief that the WARN Act's natural disaster exception applied, such that it was not required to give notice under 29 U.S.C. § 2102(b)(2)(B), (2) its efforts to keep employees apprised of the rapidly developing and deteriorating situation, (3) the circumstances surrounding the layoff.

Attached to this Opposition is the affidavit of Joel Broussard, the President and Chief Executive Officer of USWS at the time of the layoffs.[3] Mr. Broussard was identified as a person

---

[3] *See* Exhibit 2.

with knowledge of "USWS operations and the unforeseen consequences of COVID-19 and collapsing oil prices during the period alleged in the Complaint/Amended Complaint and the resulting employment decisions made by USWS" in USWS's Rule 26 disclosures.[4] Mr. Broussard confirms that he was familiar with the WARN Act because of prior layoffs where USWS sent notice to affected employees pursuant to the WARN Act.[5] Mr. Broussard avers that he reviewed the provisions of the WARN Act and believed that WARN notice was not required if the layoffs were due to a natural disaster.[6] In light of the March 13, 2020 pronouncements of President Trump and Governor Abbot, whereby the President declared a national emergency because of the COVID-19 pandemic and the Governor issued a disaster Proclamation for all Texas counties, Mr. Broussard believed that COVID-19 constituted a natural disaster and that the natural disaster exception to the WARN Act applied.[7] Moreover, at the time of the March 2020 layoffs, the company was rapidly plummeting as the price of oil sharply declined and went into the negative for the first time ever. USWS's subjective belief that the natural disaster exception applied is further evidenced by the company's early motion for summary judgment, invoking that very defense. *See* R. Doc. 21.

Mr. Broussard's belief that the WARN Act's natural disaster exception applied "even if wrong—was at least 'reasonable.'" *Frymire*, 61 F.3d at 768. Reasonable minds could differ about the application of the WARN Act's natural disaster exception to the unprecedented climate in the immediate aftermath of COVID-19. Indeed, this Court and others have concluded that COVID-19 *was* a natural disaster under the WARN Act's exception and that no notice was required if the

---

[4] *See* R. Doc. 78-1.

[5] *See* Declaration of Joel Broussard at ¶ 4.

[6] *See* Declaration of Joel Broussard at ¶ 6.

[7] *See* Declaration of Joel Broussard at ¶¶ 5-6.

PD.40690177.2

layoff was "due to" that natural disaster. *See, Easom v. US Well Servs., Inc.,* 527 F. Supp. 3d 898 (S.D. Tex. 2021); *In re Art Van Furniture, LLC,* 638 B.R. 523 (Bankr. D. Del. 2022) Although the United States Fifth Circuit disagreed with this Court's interpretation, the lack of consensus among the courts clearly shows that "reasonable minds could come to an entirely different conclusion." *Id.*

In addition to the genuine and reasonable belief of Mr. Bernard that the WARN Act's natural disaster exception did apply, USWS can point to the efforts it made to keep employees informed about its decisions during the tumultuous and uncertain time to support its good faith defense. On March 6, 2020 (prior to the date any of the Plaintiffs were laid off), USWS issued an organizational announcement to all employees, advising that the company had to lay off 43 employees, was cutting back on crew air travel, and would be "closely watching our headcount."[8] A Q&A attached to the March 6, 2020 announcement confirmed that "while [employees who were laid off] are eligible for rehire you should <u>NOT</u> assume that this is temporary as we have no way of knowing whether it is or is not."[9] The Q&A also answered the question "Will there be layoffs in the future?" by stating that "We will continue to monitor market conditions and evaluate additional changes as conditions dictate. Unfortunately, while we hope that no other changes become necessary, we cannot predict the future with certainty."[10]

Again on March 19, 2020, USWS issued an announcement to all employees regarding its "Workforce Reductions and Cost-Cutting Initiatives."[11] The March 19 announcement informed employees that USWS was in the process of reducing: "(1) Field and office workers via both

---

[8] *See* Exhibit A, attached to the affidavit of Joel Broussard (March 6, 2020 Notice).

[9] *See* Exhibit A, attached to the affidavit of Joel Broussard (March 6, 2020 Notice).

[10] *See* Exhibit A, attached to the affidavit of Joel Broussard (March 6, 2020 Notice).

[11] *See* Exhibit B, attached to the affidavit of Joel Broussard (March 19, 2020 Notice).

layoffs and furloughs where prudent, (2) Materials and overhead spending, (3) Salaries of [the CEO] as well as our CFO and CAO by 20%, (4) and Other areas including stipends for cell phones, vehicles, and fuel."[12] These documents, provided to all employees, combined with the actual termination letters employees received "include much of the required information" and are relevant to a determination of good faith. *See Shadyside Stamping* 1991 WL 230841 at *3.

Separate from whether USWS relied on the advice of counsel, the general knowledge of USWS's employees is relevant to a determination of good faith. Like the employer in *Oil, Chemical & Atomic Workers International Union v. American Home Production Corp.*, who did not provide technically sufficient WARN notice but whose employees were made aware of the plant closing, here too USWS's employees were fully aware of the possibility of additional layoffs. 790 F. Supp. at 1452. Moreover, the circumstances surrounding the layoff are also relevant to the determination of USWS's good faith. The Court should consider that "[d]uring the period in question, [USWS's] circumstances were rapidly evolving. It was facing unforeseen developments, such as the cancellation of [a major contract and the unprecedented effects of COVID-19]." *Shadyside Stamping Corp.*, 1991 WL 230841 at *3. Given these circumstances, even if USWS was required to give notice, and that notice was technically deficient, the "the lack of scientific precision in the layoff notices does not vitiate good faith." *Id.*

## IV.    CONCLUSION

The Court should deny the motion for partial summary judgment filed by Plaintiffs (R. Doc. 78) because it is procedurally improper and runs afoul of the one-way intervention rule. Moreover, the Court should deny the motion for partial summary judgment because it is premature to make a finding on the good faith defense prior to a determination of liability. In addition, the

---

[12] *See* Exhibit B, attached to the affidavit of Joel Broussard (March 19, 2020 Notice).

PD.40690177.2

Court should deny the motion for partial summary judgment because USWS *does have* evidence to support its good faith defense, separate from its reliance on the advice of counsel. For any, or all, of these reasons, the Court should deny Plaintiffs' motion for partial summary judgment.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:   */s/* David M. Korn
      DAVID M. KORN
      Texas Bar No. 24026161
      S.D. of Texas Federal ID No. 33987
      MARK FIJMAN
      Texas Bar No. 24112984
      S.D. of Texas Federal ID No. 3596495
      Canal Place, 365 Canal Street, Suite 2000
      New Orleans, Louisiana 70130-6534
      Telephone: 504-566-1311
      Telecopier: 504-568-9130
      Email: david.korn@phelps.com
           mark.fijman@phelps.com

**ATTORNEYS FOR DEFENDANT U.S. WELL SERVICES, LLC**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a copy of the foregoing instrument has been served on all counsel of record via e-file notification on December 22, 2022.

*/s/ David M. Korn*
DAVID M. KORN

13