UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SCOTT EASOM, ADRIAN HOWARD, and JOHN NAU, on behalf of themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>V.<br><br>US WELL SERVICES, LLC<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION NO. 4:20-CV-02995<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANT'S GOOD FAITH AFFIRMATIVE DEFENSE**

COMES NOW, Plaintiffs Scott Easom, Adrian Howard, and John Nau (collectively "Plaintiffs"), by and through their attorneys of record, and respectfully submits this Reply to Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment on Defendant's Good Faith Affirmative Defense.

**I.   SUMMARY OF THE ARGUMENT**

This Court should GRANT Plaintiffs' motion for partial summary judgment related to the affirmative defense of good faith. Defendant has failed to provide any temporal evidence to support its affirmative defense of good faith. Defendant erroneously claims to provide evidence of its good faith efforts to comply with the WARN Act in the form of a self-serving declaration in an attempt to create a question of material fact that would preclude the granting of the present motion. Defendant's attempt to overcome summary judgment, with a declaration that was drafted nearly three years after the events that give rise to this litigation, should fail. Furthermore, despite

1

Defendant's assertions to the contrary, the timing of the motion is neither premature nor procedurally flawed.

First, Defendant's erroneous assertion that Mr. Broussard's alleged knowledge of the WARN Act is sufficient to prove that it acted in good faith, is unavailing. There is *no contemporaneous evidence* that Defendant's ever attempted to comply with the WARN Act. There is not one e-mail, or document generated prior, or simultaneous, to the mass lay off that discusses the WARN Act or Defendant's attempts to comply with that Act. If Mr. Broussard had done research on the WARN Act, as he states in his declaration, there is not one document that shows his findings were shared with anyone else involved in the termination decisions at issue.

In fact, of the 425 pages of internal documents and communications that have been disclosed by Defendant, the only document that even references the WARN Act is an e-mail that Dean Fullerton, Vice-President of Human Resources, sent to himself, dated September 28, 2020. Exhibit 1. This lone document, which refers to the COVID-19 pandemic as "an unforeseeable business circumstance" and *not* as a natural disaster under WARN, was obtained by Defendant six months after the layoffs in question, and weeks after Defendant was served with Plaintiffs' Complaint. Exhibit 2. At bottom, there is no evidence that the Defendant considered the WARN Act when making the termination decisions in question. There is no temporal evidence that shows that Defendant even knew that the WARN Act existed. Now, nearly three years after the fact, Defendant provides a single declaration to try and overcome this lack of evidence. What Mr. Broussard now claims he knew, absent more, does not provide sufficient evidence to prove that Defendant attempted in good faith to comply with the WARN Act during the relevant period between March and June of 2020.

Second, there is no evidence provided by the Defendant of any advance notice of

termination. Plaintiffs, and other similarly situated employees, were terminated immediately, without any advance notice. Unlike the cases that Defendant cites to support the good faith defense, as discussed more fully below, there was no advance notice or warning provided at all, prior to the termination letters that were given to the employees notifying them of their immediate termination. Therefore, the question of whether the good faith affirmative defense can be applied is ripe for consideration.

Finally, Defendant's argument that Plaintiffs' motion is procedurally improper also distorts the law. In all the cases Defendant cites, the motion for summary judgment was on the issue of liability, not an affirmative defense. Additionally, both the renewed class certification motion and the partial summary judgment motions, were filed in accordance with the scheduling order set forth by this Court. [Doc. No. 68].

For these reasons, Plaintiffs' motion for partial summary judgment related to Defendant's affirmative defense alleging good faith efforts to comply with the WARN Act should be GRANTED.

## II.   ARGUMENT AND AUTHORITIES

### A.   Evidence Supporting Claims of Good Faith

Defendant may not plead a claim or assert a defense for which it has no good faith *factual basis*. *See* Fed. R. Civ. P. 11(b). *Coffin v. Blessey Marine Servs.*, No. H-11-0214, 2011 U.S. Dist. LEXIS 60485, at *8 (S.D. Tex. June 6, 2011)(emphasis added). The good faith defense requires proof of the employer's subjective intent to comply with the Act, as well as evidence of objective reasonableness in the employer's application of the Act. *Castro v. Chi. Hous. Auth.,* 360 F.3d 721, 730 (7th Cir. 2004) (citing *Saxion v. Titan-C-Manufacturing, Inc.*, 86 F.3d 553, 561-62 (6th Cir. 1996); *Frymire v. Ampex Corp.*, 61 F.3d 757, 767-68 (10th Cir. 1995)). The employer bears the

burden of proof as to this mitigation defense. *Id.* Moreover, this defense must be narrowly construed. *Id.* (citing *Bankston v. State of Ill.*, 60 F.3d 1249, 1254 (7th Cir. 1995) ("An employer seeking to avoid imposition of liquidated damages under the FLSA 'bears a *substantial burden* in showing that it acted reasonably and in good faith.'") (internal citation omitted) (emphasis added in *Castro*). In the present case, as in *Castro*, "the WARN Act was nothing but an afterthought to the [Defendant] with respect to all of the terminations it was planning." *Id.* at 731.

Defendant has provided absolutely no contemporaneous evidence that proves any efforts were considered or undertaken to comply with the WARN Act. There is not one e-mail, document, or other substantive piece of objective evidence that Defendant even contemplated the WARN Act during the time that it was deciding to lay off Plaintiffs and other employees. *See Weekes-Walker v. Macon Cnty. Greyhound Park, Inc.*, 877 F. Supp. 2d 1192, 1211 (M.D. Ala. 2012) ("[Defendant] has failed to meet its summary judgment burden with respect to the good faith defense. First, [Defendant] has submitted <u>no temporally relevant evidence of its subjective intent to comply with the WARN Act. Affidavits prepared for ongoing WARN Act litigation reek of self-service and cannot suffice for the subjective component of this narrowly construed defense</u>. *See Frymire*, 61 F.3d at 768-69 (considering evidence from time of WARN Act violation and finding subjective component satisfied); *See also Washington v. Aircap Indus., Inc.*, 860 F. Supp. 307, 318 (D.S.C. 1994) (considering evidence of employer's meeting with counsel at time of WARN Act violation but nevertheless rejecting good faith defense because of employer's 'cavalier' treatment of the situation.") (emphasis added).

Like the Defendant in *Weekes-Walker*, Defendant here has provided nothing more than a self-serving declaration, drafted nearly three years after the events at issue, and has offered no concurrent evidence that proves Defendant engages in the effort required to raise a good faith

4

affirmative defense. On the contrary, the documents that were previously produced by Defendant refute the validity of the declaration provided by Mr. Broussard. For example, on March 6, 2020, Defendant laid off 43 employees in Texas "amid the continual market deterioration as well as some realignment of out workforce by geography." Exhibit 3. Subsequently, on March 9, 2020, Defendant was notified via e-mail from one of its customers that: "Due to market conditions, we are shutting down ops on ALL crews for 30 days." Exhibit 4. Later, on March 11 and 12, Defendant was discussing the extent of more potential layoffs. Exhibit 5. All of these communications preceded March 13, 2020, the day that President Trump issued the national emergency declaration and Governor Abbot issued the disaster proclamation in Texas. Defendant already knew that they were "looking at as many as 200-300 employees losing their jobs as soon as the middle of next week." Exhibit 6. The March 13, 2020 e-mail from Dean Fullerton was in response to an e-mail chain that began on March 12, prior to the Presidential announcement, which referred to "the downturn in oil prices and the general economic recession…" but makes no mention of COVID-19, the WARN Act, or any alleged natural disaster. *Id.*

This synchronous evidence points to Defendant's economic concerns, includes conversations that were occurring prior to any government declaration related to COVID, makes no mention of COVID or its impact on the Defendant, and does not reference any thought or consideration given to WARN Act notice requirements. Even the documents attached to Mr. Broussard's declaration do not support claims of good faith related to compliance with the WARN Act. Neither exhibit mentions the WARN Act at all. Furthermore, the first exhibit was created on March 6, 2020, a week before any government declaration related to a "national emergency" and does not mention COVID-19, nor does it make any reference to the potential for a future mass layoff affecting hundreds of employees. The second exhibit is dated March 19, 2020, which is

*after* the named Plaintiffs, and many other employees, were already terminated.

Equally concerning is the lack of specificity in the declaration in question, which does not convey any evidence as to what efforts Mr. Broussard took to ascertain whether Defendant's actions were in violation of the WARN Act. Mr. Broussard makes a vague and ambiguous assertion that he "reviewed the language of the WARN Act online…" The declaration does not point to a single article that was reviewed, website that was visited, or inquiry that was made to determine the applicability of the WARN Act to the mass layoff in March of 2020. *See Castro*, 360 F.3d 731 ("Without the production of one scintilla of physical evidence, since Moriarty maintained and produced no papers, no memoranda, and no files related to his research, we have no way to determine whether he conducted extensive research into the issue or merely made a cursory glance at the statutes and case law.").

As for the objective efforts of Defendant, the failure to provide adequate advance notice and the complete lack of evidence that Defendant considered the welfare of its employees should preclude Defendant from prevailing on its good faith affirmative defense. *See Weekes-Walker*, 877 F. Supp. 2d at 1211 ("[Defendant] has failed to demonstrate that it satisfies the objective component of the good faith defense. Assuming that [Defendant] had a subjective intent to comply with the Act, its complete failure to provide any kind of notice before, at the time of, or after the February or August 2010 plant closings, even when it became obvious that notice would be required, likely precludes [Defendant] from obtaining any reduction in damages based upon the good faith defense."). Here, there is no evidence of intent to comply with the WARN Act, even after the fact as provided in the regulations, and Defendant's concern was the survival of the company, not the welfare of the employees. *See* Exhibit 6 ("we are moving toward 'survival mode' very quickly…").

6

On May 11, 2020, Mr. Broussard provided a statement as part of the Q1 Earnings Call for Defendant.  Exhibit 7.  In that call, Mr. Broussard started by pointing out that Defendant "began developing our response plan in late February…"  *Id.* at 2.  This was well before any of the proclamations by President Trump and Governor Abbot that Mr. Broussard mentions in his declaration.  In that meeting he went on to tout Defendant's efforts to preserve the company stating:

> "In anticipation of challenging times ahead, we quickly and aggressively cut costs and moved to enhance liquidity.  Since mid-March, <u>we reduced headcount by over 55%, bringing total headcount to fewer than 425 active employees from nearly 1,000 employees at the end of February</u>.  We restructured our management team, eliminating layers overhead between our senior executive and field operation teams.  Additionally, for remaining employees, we made across-the-board cuts to compensation and benefits starting with a 20% reduction in salary for senior management and our Board."

*Id.* at 3(emphasis added).  This further illustrates that Defendant's concern was company survival and not the welfare of the terminated employees.

The good faith reduction is intended for circumstances where the employer technically violates the law but shows that it did everything possible to ensure that its employees received sufficient notice that they would be laid off.  *Castro*, 360 F.3d 731 (internal citation omitted).  In its motion in opposition to Plaintiffs' Motion for Partial Summary Judgment, Defendant cites to three cases to buoy the proposition that an employer's efforts to provide notice and comply with the act can support the good faith defense.  However, Defendant's reliance on those cases is misplaced and their holdings are clearly distinguishable from the facts of the present case.

For example, Defendant refers to *UAW Local 1077 v. Shadyside Stamping Corp.* wherein a district court held that a Defendant "knew of the Act, attempted to comply with the Act, and had reasonable grounds for believing it had complied with the Act."  947 F.2d 946 (6th Cir. 1991).  However, that case can be distinguished here for the same reasons it was distinguished in *Castro*:

> "In *UAW Local 1077 v. Shadyside Stamping Corp.*, 1991 U.S. Dist. LEXIS 19993,

7

1991 WL 340191 (S.D. Ohio 1991), *aff'd without opinion*, 947 F.2d 946 (6th Cir. 1991), the employer advised the union in writing in late September 1988 that it expected layoffs from February 1, 1989, to April 30, 1989, due to the cancellation of a large contract. A second letter to the union in early January 1989 confirmed the layoffs would take place as previously advised. On February 3, 1989, 31 employees were laid off, and on February 27 another 15 employees were laid off. A third letter to the union on March 15 warned of more layoffs on April 3. On that date, 66 employees were laid off. On April 10, the employer provided advance notice of another layoff of 50 employees to take place on June 9. Reviewing this evidence, the court concluded that, while the employer technically violated the Act, 'there can be no question that the employer proceeded in good faith in its attempt to properly notify the employees of future layoffs.' 1991 U.S. Dist. LEXIS 19993, [WL] at *9. The same cannot be said here."

*Castro v. Chi. Hous. Auth.*, 360 F.3d 721, 732 (7th Cir. 2004).

Similarly, Defendant's reliance on *Oil, Chemical and Atomic Workers International Union v. American Home Products Corp.*, 790 F. Supp. 1441, 1452-53 (N.D. Ind. 1992), is likewise inappropriate and easily distinguished. *See Castro*, 360 F.3d at 732 ("[t]he court permitted a good faith reduction where the employer *gave notice in November* that the plant would be completely shut down by the last quarter of the following year. The notice included a tentative schedule identifying the quarter in which the employer expected to terminate each job grouping.") (emphasis added). Defendant in the present case did not give notice prior to the terminations.

Defendant's also cite *Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Department Stores, Inc.* wherein two employees had not received written notice but had been clearly made aware of the impending closing. 790 F. Supp. 663 ((E.D. La. 1992), *amended*, (E.D. La. May 4, 1992), *and aff'd in part, rev'd in part*, 15 F.3d 1275 (5th Cir. 1994). That case differs immensely from the case at bar because the defendant in *Carpenters* had provided notice to most of the affected employees and had only failed to provide notice to two employees which the court deemed "nothing more than an unintentional oversight." *Id.* at 673. There is nothing remotely similar in the present case where Defendant provided no advance notice to any of the hundreds of

8

employees that were terminated during the relevant period in 2020.

Finally, a correct reading of *Frymire v. Ampex Corp.*, does not support the conclusion offered by Defendant for two important reasons. 61 F.3d 757, 768 (10th Cir. 1995). First, the *Frymire* decision was based on the premise that "evidence that the employer subjectively intended to comply with the Act 'can include proof that the employer worked with legal counsel to determine whether the company was in compliance with the WARN, as well as more general evidence that the company had its employees' welfare in mind.'" *Id.* However, in the present case, Defendant has explicitly waived any claim that it relied on the advice of counsel in formulating its opinion as it relates to the WARN Act. And Defendant has failed to produce any temporal evidence that it even considered the welfare of its employees at the time of the terminations. Rather, all evidence, including the arguments put forth by Defendant in their briefs to this Court and the Fifth Circuit Court of Appeals, points to the fact that Defendant was primarily concerned with preventing the company from failing.

Secondly, the *Frymire* court considered the reasonable belief of the company as it pertained to the "single site of employment" definition. *Id.* However, Defendant's assertions in the present case are not reasonable. Defendant looks a decision of this Court and the decision of a bankruptcy court in Delaware to support their argument that it had a reasonable belief that notice would not be required under the natural disaster exception to the WARN Act. [Doc. No. 89 at 10-11] (citing *Easom v. US Well Servs., Inc.*, 527 F. Supp. 3d 898 (S.D. Tex. 2021); *In re Art Van Furniture, LLC*, 638 B.R. 523 (Bankr. D. Del. 2022). Both of those decisions have since been overturned. *See Easom v. US Well Servs.*, 37 F.4th 238 (5th Cir. 2022); *Stewart v. Giuliano (In re Start Man Furniture, LLC)*, No. 20-10553 (CTG), 2022 U.S. Dist. LEXIS 224187 (D. Del. Dec. 13, 2022).

Furthermore, the significant weight of contravening evidence also belies Defendant's

attempt to claim that its actions were reasonable. Over 1,200 companies in the state of Texas alone complied with the requirements of the WARN Act and provided appropriate notice to the state dislocated worker unit, the Texas Workforce Commission, in 2020. Exhibit 8. That these companies were able to understand the statute and comprehend that COVID-19 was not a natural disaster under the WARN Act is clear evidence that Defendant's *post hoc* claims, are not sufficient to support their claim that "reasonable minds could come to an entirely different conclusion."

### B.     Timing of Good Faith Affirmative Defense

Defendant alleges that Plaintiffs' motion on this affirmative defense is premature. [Doc. No. 89]. Defendant relies on two theories to support this flawed assertion. First, Defendant's position is based on its perception of the status of the present litigation. Defendant is correct that it can raise the affirmative defense of good faith if it is found liable for violating the WARN Act. Where Defendant errs is in its assumption that this precludes Plaintiffs from obtaining a decision in their favor negating this affirmative defense.

Second, Defendant alleges that this motion is procedurally inappropriate based on the one-way interventions rule. As Plaintiffs have previously pointed out, Defendant does not point to a single case where this rule was applied to affirmative defenses. The case law related to this rule is predicated on motions for summary judgment pertaining to the liability of the Defendant in question. Additionally, Defendant ignores the simple fact that Plaintiffs' motions, the partial summary judgment motions, and the class certification motion, were each filed in accordance with the scheduling order set forth by this Court. It strains credulity to assert that Plaintiffs should be barred from obtaining a ruling on a motion that was filed pursuant to this Court's orders.

### III. CONCLUSION

For the above stated reasons, Defendant's Opposition to Plaintiffs' Motion for Summary Judgment should fail and Plaintiffs' Motion for Partial Summary Judgment on Defendant's Affirmative Defense of Good Faith should be GRANTED.

Respectfully submitted,

By: */s/ Gabriel A. Assaad*
Gabriel A. Assaad
Texas Bar No. 24076189
gassaad@mcdonaldworley.com
Matthew S. Yezierski
Texas Bar No. 24076989
matt@mcdonaldworley.com
MCDONALD WORLEY, P.C.
1770 St. James Street, Suite 100
Houston, TX 77056
(713) 523-5500 – telephone

Galvin Kennedy
KENNEDY LAW FIRM, LLP
2925 Richmond Avenue, Ste. 1200
Houston, TX 77098
(713) 425-6445 - telephone
galvin@kennedyattorney.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

  I certify that a copy of the foregoing instrument has been served on all counsel of record via e-file notification on December 29, 2022.

  David M. Korn
  Mark Fijman
  Clerc Cooper
  PHELPS DUNBAR LLP
  Canal Place, 365 Canal Street
  New Orleans, Louisiana 70130-6534
  Telephone: (504) 566-1311
  Email: david.korn@phelps.com
     mark.fijman@phelps.com
     clerc.cooper@phelps.com

                  */s/ Gabriel A. Assaad*
                  Gabriel A. Assaad