# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF TEXAS

## HOUSTON DIVISION

| | | |
|---|---|---|
| SCOTT EASOM, ADRIAN HOWARD, and JOHN NAU, on behalf of themselves and on behalf of all others similarly situated, | § § § § | |
| Plaintiffs, | § § § | |
| V. | § § § | CIVIL ACTION NO.:  4:20-CV-02995 |
| US WELL SERVICES, LLC | § § § § | |
| Defendant. | § § | |

## PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

COME NOW Plaintiffs, by and through their attorneys of record, and respectfully submit their Reply to Defendant's Opposition to Plaintiffs' Amended Motion for Class Certification.

By: */s/ Gabriel A. Assaad*
Gabriel A. Assaad
Texas Bar No. 24076189
gassaad@mcdonaldworley.com
Matthew S. Yezierski
Texas Bar No. 24076989
matt@mcdonaldworley.com
McDonald Worley, P.C.
1770 St. James Street, Suite 100
Houston, TX 77056
(713) 523-5500 – telephone

Galvin Kennedy
Texas Bar No. 00796870
Kennedy Law Firm, LLP
2925 Richmond Avenue, Ste. 1200
Houston, TX 77098
(713) 425-6445 - telephone
galvin@kennedyattorney.com

**ATTORNEYS FOR PLAINTIFFS**

<u>**TABLE OF CONTENTS**</u>

I.     **INTRODUCTION** ........................................................................................................ 1

II.    **ARGUMENTS AND AUTHORITIES**......................................................................... 3

    A.    **Defendant's concessions regarding class certification narrow the issues to be addressed by the Court.** ........................................................................................... 3

    B.    **Class Representatives**........................................................................................... 4

    C.    **Timing of Terminations (30-Day vs. 90-Day)** ................................................... 6

    D.    **Single Site of Employment**................................................................................. 9

    E.    **Single site of employment is a common question of law/fact that is certifiable.**...... 12

    F.    **Status of Employees and Termination Details**.................................................... 14

        a.    ***Part-Time Employees are proper claimants once the WARN Act is triggered based on counting full-time employees terminated.***............................................................ 14

        b.    ***Terminated Employees rehired within 6 Months are part of the Class.*** ..................... 16

        c.    ***Employees who were Terminated for Cause or Voluntarily Retired.***........................... 17

        d.    ***Employees who signed a Release Agreement.***............................................................ 18

III.    **CONCLUSION** .......................................................................................................... 18

# **TABLE OF AUTHORITIES**

**Cases**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,*
    568 U.S. 455 (2013) ............................................................................... 14

*Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.,*
    15 F.3d 1275 (5th Cir. 1994) ................................................................ 12

*Davis v. Signal Int'l Tex. GP, L.L.C.,*
    728 F.3d 482 (5th Cir. 2013) ......................................................... 9, 12, 13

*Finnan v. L.F. Rothschild & Co.,*
    726 F. Supp. 460 (S.D.N.Y. 1989) ......................................................... 1

*Gautier v. Tams Mgmt., Inc.,*
    No. 5:20-CV-00165, 2022 WL 3162177 (S.D.W. Va. Aug. 8, 2022) ...................................... 14

*General Tel. Co. v. Falcon,*
    457 U.S. 147, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ........................................ 5

*Gomez v. Am. Garment Finishers Corp.,*
    200 F.R.D. 579 (W.D. Tex. 2000) ........................................................... 1

*Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing (USA) Corp.,*
    252 F.3d 296 (4th Cir. 2001) ........................................................... 16, 17

*Hernandez v. Nacogdoches Cnty.,*
    Civil Action No. 9:08-CV-119, 2008 U.S. Dist. LEXIS 143358 (E.D. Tex. Sep. 10, 2008) ..... 5

*Int'l Ass'n of Machinists & Aero. Workers v. Compania Mexicana De Aviacion,*
    199 F.3d 796 (5th Cir. 2000) ................................................................ 18

*Int'l Union, United Mine Workers v. Jim Walter Res., Inc.,*
    6 F.3d 722 (11th Cir. 1993) .................................................................. 9

*Leeper v. All. Res. Partners, L.P.,*
    356 F. Supp. 3d 761  (S.D. Ill. 2018), *aff'd sub nom.  Leeper v. Hamilton Cnty. Coal, LLC*, 939 F.3d 866 (7th Cir. 2019) ................................................................ 17

*Meadows v. Latshaw Drilling Co., L.L.C.,*
    866 F.3d 307 (5th Cir. 2017) ............................................................. 9, 10

*Mercer v. Patterson-Uti Drilling Co., L.L.C.,*
  717 F. App'x 400 (5th Cir. 2017) ................................................................................. 12, 13

*Mullen v. Treasure Chest Casino, LLC,*
  186 F.3d 620, 625 (5th Cir. 1999) ...................................................................................... 5

*Phason v. Meridian Rail Corp.,*
  479 F.3d 527 (7th Cir.2007) ............................................................................................ 17

*Piron v. Gen. Dynamics Info. Tech., Inc.,*
  No. 3:19CV709, 2022 WL 363958 (E.D. Va. Feb. 7, 2022) ........................................... 13

*Rangel v. Cardell Cabinetry, LLC,*
  2014 U.S. Dist. LEXIS 190210 (W.D. Tex. Jan. 22, 2014) .............................................. 3

*Roquet v. Arthur Anderson LLP,*
  No. 02 C 2689, 2002 WL 1900768 (N.D. Ill. Aug. 16, 2002) .................................. 14, 15

*Shepherd v. ASI, Ltd.,*
  295 F.R.D. 289 (S.D. Ind. 2013) .................................................................................. 15, 17

*Sisney v. Trinidad Drilling, LP,*
  231 F. Supp. 3d 233 (W.D. Tex. 2017) ........................................................................... 10

*Stirman v. Exxon Corp.,*
  280 F.3d 554 (5th Cir. 2002) .............................................................................................. 5

*United Food and Commercial Workers Union Local No. 72 v. Giant Markets, Inc.,*
  878 F. Supp. 700 (M.D. Pa. 1995) .................................................................................. 10

*Viator v. Delchamps Inc.,*
  109 F.3d 1124, (5th Cir. 1997) ........................................................................................... 9

*Williams v. Phillips Petroleum Co.,*
  23 F.3d 930 (5th Cir. 1994) .............................................................................................. 18

**Statutes**

29 U.S.C. § 2101(a)(3)......................................................................................... 14
29 U.S.C. § 2101(a)(6)................................................................................... 16, 17
29 U.S.C. § 2101(a)(6)(A) ............................................................................. 16, 17
29 U.S.C. § 2101(a)(6)(B) .................................................................................... 16
29 U.S.C. § 2104(a)(1).......................................................................................... 15
29 U.S.C. § 2104(a)(5)............................................................................................ 1
29 U.S.C. § 2104(a)(7)..................................................................................... 1, 15

**Other Authorities**

Worker Adjustment and Retraining Notification,
   54 FR 16042-01 (April 20, 1989)................................................................ 6, 7, 9

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................... 3
Fed. R. Civ. Pro. 23(c)(1)(C) .............................................................................. 14

**Regulations**

20 C.F.R. § 639.3(i)(3)............................................................................................ 9
20 C.F.R. 639.6(b) ................................................................................................ 15

<u>**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO**</u>
<u>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**</u>

## I.     <u>INTRODUCTION</u>

Defendant has taken a straightforward legal question and tried to make it far more complex and convoluted than necessary in an effort to continue avoiding responsibility for its actions. Defendant violated the WARN Act by failing to provide the 60-day advance notice that was required when it conducted "mass layoffs." As this Court noted in its Memorandum and Opinion related to the "natural disaster" interlocutory appeal: "US Well Services does not contest that it is a covered employer, that the named plaintiffs were affected employees, or that the named plaintiffs were terminated as part of a mass layoff."[1] The WARN Act, by definition, applies to a *class* of employees. For the WARN Act to apply, a specified number of employees must be affected in a similar fashion. WARN Act claims are particularly amenable to class action litigation because the statute contemplates the appropriateness and effectiveness of a class action and provides that an "aggrieved employee" may pursue the remedies provided in the Act on his own behalf and for "other persons similarly situated." 29 U.S.C. § 2104(a)(5) and 2104(a)(7); *Gomez v. Am. Garment Finishers Corp.*, 200 F.R.D. 579 (W.D. Tex. 2000) (citing *Finnan v. L.F. Rothschild & Co.*, 726 F. Supp. 460 (S.D.N.Y. 1989) (finding WARN Act cases particularly amenable to class litigation)).

Broadly speaking, Defendant's Response focuses not so much on whether a class should be certified, but on the scope of the class. Starting with that premise, Defendant's background facts focusing on its difficulty during the downturn in the economy which put it into a "survival mode" are not relevant to the court's certification analysis. They also do not tell the full story.[2]

---

[1] *See* Doc. 38 – Memorandum Opinion and Order on Summary Judgment, Denying Reconsideration, and Certifying for Interlocutory Appeal at p. 9, Fn 1.
[2] For example, in the period of this purported "survival mode" Defendant still paid its retained executives massive multi-million dollars compensation packages, paid severance packages to the few executives who left, found money

Defendant primarily argues that the single "site of employment" should be limited to two or three of the Texas worksites because the class representatives did not work in Defendant's Northeast region. Defendant either uses a loose definition of "work" or misstates the facts. Easom in fact worked in multiple areas in the Northeast region. Defendant also argues it did not terminate enough employees in each of the separate Northeast work locations (West Virginia, Pennsylvania and Ohio) to trigger the WARN Act. However, this region operated as a single "site of employment" based on Defendant's own testimony, organizational charts, sharing of equipment, and routine transfer of employees between these sites, including Easom himself. More importantly, the dispute over whether the Northeast region forms a "single site of employment" is one of the common issues of fact and law to be certified. Courts have ruled that the "single site of employment" issue should be litigated on its merits, rather than leveraged as a tool to deny class certification at this stage of the proceeding. And the Supreme Court has held that, "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).

Defendant also seems to imply that Plaintiffs have provided inaccurate information or calculations based on the employee data that Defendant provided in September of 2022. A closer inspection of the data that was provided will reveal that Defendant included data outside of the relevant time period in order to skew the numbers. Defendant provided data for 1,133 employees. Of those, 166 employees were not employed at USWS during the relevant time period between

---

to pay *bonuses* to the management team on top of their normal compensation, collected $10,000,000 in free PPP forgiven loans (gifts) from tax payers, procured an additional $25 million loan under a separate Covid corporate handout, and managed to raise $35 million to settle a separate lawsuit with one of its vendors. The CFO/CEO testified that he never once even considered using these tens of millions of additional funds to pay its terminated workforce. As the Court can see, there will be a dispute regarding the financial condition of the company; however, none of that is relevant as this time as the Court weighs the certification facts and factors.

March and July of 2020 and another 18 were employed at a location in Vernal, UT, which is not being considered as part of this litigation, and in fact, according to deposition testimony, was not even in operation in 2020.[3]

Further, Defendant misstates the law on several issues in the opposition, as discussed more fully below, and the erroneous arguments based on Defendant's misunderstanding of the WARN Act, must fail. Likewise, Defendant's merit-based arguments which are premature and not relevant at the class certification stage, must also fail. Therefore, the Court should grant Plaintiffs' motion and certify the following Rule 23 class:

> All USWS employees employed in Texas and the Northeast who were entitled to and did not receive 60 days' advance written notice of termination, and whose employment was terminated between March 5 and June 3, 2020, as a result of the "mass layoff" as defined by the Workers Adjustment and Retraining Notification Act of 1988.

## II.  ARGUMENTS AND AUTHORITIES

### A.  Defendant's concessions regarding class certification narrow the issues to be addressed by the Court.

To certify a class, the law requires "numerosity, commonality, typicality, and adequacy of representation."  Doc. 73, pp. 3 - 4 (citing *Rangel v. Cardell Cabinetry, LLC*, 2014 U.S. Dist. LEXIS 190210 (W.D. Tex. Jan. 22, 2014); *See also* Fed. R. Civ. P. 23(a). Defendant does not take issue with the numerosity or adequacy of counsel prongs.  Plaintiff responds to Defendant's arguments regarding commonality and typicality below.  Defendant likewise made no arguments that certification should be denied because of any deficiencies related to the requirements of Rule 23(b)(3).  *See* Doc. 73, pp. 21-25 (Plaintiffs' Class Certification Motion discussing Rule 23(b)). Therefore, Plaintiffs rest on the legal and factual support raised in their original motion supporting

---

[3] Exhibit 1 – Depo. Transcript of Dean Fullerton (Vice-President of Human Resources) at 39:24-40:16.

class certification. Defendant's omission was not mere oversight, as the thrust of its entire Response is not against certification generally, but against class scope specifically.

**B. <u>Class Representatives</u>**

Contrary to Defendant's assertions concerning the ability of the named plaintiffs to serve as representatives of the putative class, there are numerous issues of law and fact common to the class, and Plaintiffs' claims are typical of the class's claims.

Defendant argues plaintiffs cannot adequately represent the workers outside of Bryan, TX and San Angelo, TX because plaintiffs "worked only at the USWS facilities in Bryan, TX and San Angelo, TX." *See* Doc. 91, p. 13. Defendant is either providing patently false information to the Court or, to give it the benefit of the doubt, it is using a loose definition of the word "work."

It is true that Plaintiff David Scott Easom was "<u>based</u>" in Bryan, TX, an amorphous and ultimately meaningless term when it comes to actual day-to-day performance of work locations. However, Mr. Easom testified, and it is undisputed, that he actually worked for Defendant in Bryan, TX; San Angelo, TX; Jane Lew, WV; and Williamsport, PA during his tenure at USWS.[4] Plaintiffs' Counsel identified Easom and the others as qualified class representatives precisely because they worked in multiple locations. Defendant couches its argument on this point as one of "adequacy of representation," even though it sounds as a typicality or commonality argument. Regardless, Easom's work history in WV and PA, in addition to the other areas makes him adequate, and his claims are both typical and common of other workers in the northeast region.

The law does not require that the putative class be identically situated or that the circumstances of their terminations be precisely duplicated in order for the named plaintiffs to

---

[4] Exhibit 2 – Depo. Transcript of Scott Easom at 13:5-6 (Hired to work in Bryan, TX); 20:16-24 (Hired in Bryan, TX then, after 6 months, was transferred to San Angelo, TX for most of the rest of his time); 31:4-18 (worked in Pennsylvania); 65:5-11 (worked in the Jane Lew yard).

serve as class representatives. The commonality requirement is "not demanding," and is met when the resolution of at least one issue will affect all, or substantially all, of the putative class members. *Hernandez v. Nacogdoches Cnty.*, Civil Action No. 9:08-CV-119, 2008 U.S. Dist. LEXIS 143358, at *4 (E.D. Tex. Sep. 10, 2008) (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999)). The test will focus on the similarity between the legal and remedial remedies of the proposed class representative, and those of the rest of the class. *Hernandez*, at *4 (citing *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)).

So long as the proposed representative is a member of the class with the same interests and has suffered generally the same type of injury, the representative's claims need not be identical to the claims of the rest of the putative class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 156, 102 S. Ct. 2364, 2370, 72 L. Ed. 2d 740 (1982). Despite Defendant's attempt to narrow the class to the specific locations Plaintiffs "worked" and exact day they were terminated, the law requires that questions of law and fact related to the claims and defenses must be common, not identical, between the putative class and the proposed representative. These criteria are met by the named plaintiffs.

If the Court concludes that Easom's work in the Northeast region does not qualify him to serve as the class representative for other workers in that region, Plaintiffs are prepared to add Terry Hazelton as an additional class representative for that region. Mr. Hazelton unequivocally was based, worked, and was terminated in the Northeast region (Jane Lew, WV), and submitted a declaration supporting class certification. *See* Doc. 73-4. With the Court's discretion, Mr. Hazelton could easily be added to the lawsuit as a plaintiff and would be willing and able to serve as a representative for the Northeast locations. He so testified in his declaration. *Id.* In the alternative, if this Court excludes the Northeast locations for lack of a representative, Mr. Hazelton

would be willing and able to file a new lawsuit in the appropriate jurisdiction, after which, either he, or Defendant, could seek to have the case transferred to this Court and consolidated with the present litigation in the future. This second scenario would be suboptimal because procedurally the case would probably end up before this court anyway.

C. **Timing of Terminations (30-Day vs. 90-Day)**

"Section 3(d) of WARN provides that if, *within a 90-day period*, separate employment losses occur, each of which involves fewer than the number of workers necessary to trigger coverage, but which together add up to the minimum numbers necessary to trigger coverage, WARN notice must be given unless the employer can demonstrate that the individual actions arose from separate and distinct causes." Worker Adjustment and Retraining Notification, 54 FR 16042-01 (April 20, 1989) (emphasis added). Defendant correctly cites the 90-day rule in its opposition briefing before ignoring it in order to argue for a shorter time frame. Doc. 91 at 29 (citing 54 FR 16042). Defendant mistakenly asserts that because there were separate actions that added up to the minimum requirement to trigger the WARN Act in a 30-day period, the 90-day period does not apply. If Defendant had taken a closer look at the Federal Register that it cited, it would have seen a clear example provided by the Department of Labor ("DOL") that is germane here and directly refutes Defendant's position. Here is the example discussed by the DOL:

Day 1 -- Company has 180 employees;
Day 2 -- Company terminates 30 employees (now 150 employees);
Day 31 -- Company terminates 29 employees (now 121 employees);
Day 60 -- Company terminates 6 employees (now 115 employees);
Day 90 -- Company terminates 5 employees (now 110 employees).

54 FR 16042.

Based on Defendant's flawed assertion in their opposition brief, the only employees in this example that would be entitled to WARN Act notice and would therefore be part of a WARN Act

class action, would be those terminated on Day 2 and Day 31 because the combination of those two groups "met the threshold to trigger the WARN Act in a 30-day period." *See* Doc 91 at 25-26. However, the DOL, the agency that is statutorily granted the authority to interpret and provide clarity to the WARN Act, disagrees and unambiguously states: "Assuming that no notice was given, *the company is liable to all 70 employees* because the mass layoff threshold has been reached through separate actions which did not occur for separate and distinct causes within a 90-day period. All employees terminated within the 90-day period have suffered a mass layoff and all are entitled to 60 days' notice before the date of their termination." 54 FR 16042 (emphasis added).

Applying this logic to the USWS terminations at issue in the 90-day period between March 5, 2020 and June 3, 2020, it becomes unmistakable that each of the separate actions do not individually trigger the WARN Act notice requirements, but in the 90-day aggregate, the mass layoff threshold has been reached through separate actions which did not occur for separate and distinct reasons.

### SAN ANGELO, TX[5]

| DATE | FT TERM |
|---|---|
| 3/5/2020 | 17 |
| 3/6/2020 | 2 |
| 3/19/2020 | 31 |
| 3/27/2020 | 29 |
| 3/30/2020 | 1 |
| 4/1/2020 | 1 |
| 4/3/2020 | 11 |
| 4/16/2020 | 2 |
| 4/17/2020 | 2 |
| 4/18/2020 | 1 |
| 4/25/2020 | 1 |
| 4/29/2020 | 2 |

---

[5] The number of employees terminated on each of the dates listed in this chart is limited to the full-time ("FT") employees who were involuntarily terminated on the given dates and does not include: (1) part-time employees; (2) employees that were terminated for cause; or (3) employees who voluntarily retired, as each of those groups are not to be included in "mass layoff" calculations pursuant to the WARN Act. 29 U.S.C. § 2101(a)(3).

| 5/1/2020 | 5 |
|----------|-----|
| **TOTAL** | **105** |

In this chart for the San Angelo, TX "district," which started with 200 full-time employees on March 1, 2020, no single employment loss is sufficient *on its own* to trigger the WARN Act because the 50 employee and 33% requirements are not met. Defendant thus argues, incorrectly, that once that minimum threshold is met, any subsequent terminations must be cut from the class. By that flawed logic, since San Angelo reached 50 terminations and exceeded 33% as of March 27, 2020 (79 terminations is 39.5% of 200), then all subsequent terminations, even though they were predicated on the same facts and were likewise denied the required notice, are not part of the WARN Act class.

The DOL example in the Federal Register clearly points to a different outcome. There, all 70 of the hypothetical employees are entitled to WARN notice and should be part of any class. Here, all 105 employee terminations are part of the same "mass layoff" and they should each be part of the certified class in this litigation. Defendant seeks to avoid liability and deny responsibility for the employees that were terminated, without notice, after the minimum requirements are met in order to reduce its financial liability.[6] This is part of USWS "survival mode" mentality wherein the Defendant's financial position takes priority over the welfare of its employees, or former employees, and is more important than properly applying the law. Avoiding this type of injustice for working class Americans is precisely why the WARN Act 90-day rule was implemented. The same logical analysis can be applied to the other locations and their respective terminations.[7]

---

[6] *See* Doc 91 at 3 (seeking to limit the class to personnel terminated only on March 18, 2020); Doc 91 at 17-18 (seeking to limit the class to personnel terminated between March 5, 2020 and April 4, 2020).
[7] Exhibit 3 – Chart showing terminations for each USWS location by date.

It bears noting that while the number of employees that would be affected by the Defendant's proposed cut-off dates may appear minimal (13 in San Angelo, TX; 6 in Bryan, TX; and 10 in Pleasanton, TX – for a total of 29 employees in TX), these numbers do not reflect the total number of potential class members that would be affected by Defendant's misapplication of the law to the relevant facts in this case. As discussed more fully below, the part-time employees who are excluded from these graphs for purposes of *triggering* the WARN Act, are not excluded from the WARN Act class with damage claims. Regardless, whether the number is 20 or 200, each of these employees was entitled to notice and should be included in the class.

### D. <u>Single Site of Employment</u>

DOL regulations have clearly stated that "geographically separate sites may still be considered a single site of employment because of an inextricable operational connection." 54 FR 16042. In support of this definition, the Fifth Circuit has stated: "[t]he Labor Department has explicated that in considering exceptions to the general rule that separate sites are separate facilities, any sharing of staff between separate facilities must be regular rather than occasional." *Davis v. Signal Int'l Tex. GP, L.L.C.*, 728 F.3d 482 (5th Cir. 2013) (citing 20 C.F.R. § 639.3(i)(3); *Viator v. Delchamps Inc.*, 109 F.3d 1124, 1128 (5th Cir. 1997); *Int'l Union, United Mine Workers v. Jim Walter Res., Inc.*, 6 F.3d 722, 726 (11th Cir. 1993) ("[T]he essence of WARN [is] the day-to-day management and personnel.")).

Section 639.3(i)(3) allows the aggregation of geographically distinct facilities into a single site of employment for purposes of the WARN Act if: "1) the separate facilities are in 'reasonable geographic proximity' of one another; 2) they are 'used for the same purpose'; 3) and they 'share the same staff and equipment.'" *Meadows v. Latshaw Drilling Co., L.L.C.*, 866 F.3d 307, 312 (5th Cir. 2017) (citing *Viator*, 109 F.3d at 1127). Here, all three of the requirements to allow the

aggregation of facilities into two "single sites of employment" under the regulations are met. Doc. 73.

Defendant argues the distance between the individual "districts" is too great to be within "reasonable geographic proximity." Doc. 91, p. 20. However, what constitutes geographic reasonableness depends on the specific facts and circumstances of each case. *Sisney v. Trinidad Drilling, LP,* 231 F. Supp. 3d 233, 239 (W.D. Tex. 2017) (citing *United Food and Commercial Workers Union Local No. 72 v. Giant Markets, Inc.*, 878 F. Supp. 700 (M.D. Pa. 1995) (finding that the interrelatedness between locations was a question of fact.)). Here, Defendant considered the 256 miles separating the Pleasanton, TX and San Angelo, TX facilities as close enough to combine them into "one big Texas district" or operating unit controlled by personnel in San Angelo, TX.[8] The distances between the three facilities in Defendant's Northeast region (Jane Lew, WV; Uhrichsville, OH, and Williamsport, PA) likewise form a single site of employment because, under the facts here, they form a geographical triangle separated by comparable distances. *See* Doc. 91, p. 20 (Uhrichsville to Williamsport: 274; Williamsport to Jan Lew: 296; Jan Lew to Uhrichsville: 177). So, the distance factor taken alone supports treating the Northeast region as a single site of employment using Defendant's own pre-litigation analysis of its operations.

More importantly, the other factors in *Meadows* identified by the Fifth Circuit support treating the Northeast as a single site of employment. *See Meadows,* 866 F.3d at 312 (reasonable geographic proximity of one another, they are "used for the same purpose, and they share the same staff and equipment."). On this point, Defendant argues that "the vast geographic distances precluded sharing of equipment or personnel except in random exigencies." Doc. 91, p. 20. The testimony and documentary evidence contradict this conclusion. First, Defendant's organizational

---

[8] Exhibit 4 – E-mail from Dean Fullerton (Vice-President of HR) stating that "It is very likely that Pleasanton will be folded into San Angelo as *one big Texas district*…". (emphasis added)

charts created *prior to litigation* portray a different operational structure. They describe Defendant's Northeast operations as a single operational unit with numerous managers in multiple departments with responsibilities over all operations in the "Northeast" region as a whole. *See* Doc. 73-13, p. 2, 8, 10, 12, 19, and 20. Defendant's corporate representative and other high-level executives/managers confirmed the accuracy of these charts. For example, USWS Chief Financial Officer ("CFO") Kyle O'Neill, who became the Chief Executive Officer ("CEO") in May of 2022, testified that Defendant structured its "Northeast" operations under a single managerial umbrella for multiple departments including (1) Human Resources ("HR"); (2) Health, Safety, Environmental ("HSE"); (3) Fleet and Department of Transportation ("DOT"); (4) Engineering; and (5) even the Operations personnel who were "directly responsible for the employees and the equipment that was out in the field doing the actual work."[9] Indeed, the geographical proximity of the workforce, equipment and work locations of the Defendant's Northeast region lead to the company designating it as a single operating unit with managers overseeing all operations.

Likewise, Dean Fullerton (Vice-President of Human Resources) testified that Defendant designated a single HR manager (Sarah Sopko) who was responsible for covering "the Northeast," which included Ohio, Pennsylvania, and West Virginia.[10] Defendant's 30(b)(6) corporate representative, Josh Shapiro, testified Defendant had "three districts whose district managers assigned work to employees," namely, Pleasanton, TX; San Angelo, TX; and Jane Lew, WV.[11]

As for the sharing of personnel, CFO/CEO O'Neill made it clear that workers from OH, WV, and PA would be assigned "from one location to another."[12] Consistent with this testimony regarding sharing employees across the Northeast site of employment, Plaintiff Easom himself

---

[9] Exhibit 5 – Depo. Transcript of Kyle O'Neill (Chief Financial Officer) at 14:22 – 29:4.
[10] Exhibit 1 – Depo. Transcript of Dean Fullerton (Vice-President of Human Resources) at 50:24-51:6.
[11] Exhibit 6 – Depo. Transcript of 30(b)(6) Corporate Representative - Josh Shapiro at 99:16-100:21.
[12] Exhibit 5 – Depo. Transcript of Kyle O'Neill (Chief Financial Officer) at 28:8-22.

testified that Defendant assigned him to at least four different locations (Bryan, TX; San Angelo, TX; Jane Lew, WV; and Williamsport, PA) during his time with USWS.[13]  Even though Defendant constantly moved Easom from one site to another, including an entire year in San Angelo, TX, Easom's nominal "home base" was never changed from Bryan, TX. These transfers of Easom and other putative class members across the Northeast triangle underscore the flimsy concept of distinct districts argued by Defendant.

CFO/CEO O'Neill also testified about the sharing of *equipment* in the Northeast region locations concluding that, "all of our equipment has wheels on it, so it's very easy to rotate, and everything's interchangeable. So, you know, as things break down, we can rotate equipment from one location to another."[14] And he further testified that the locations in the Northeast region share "equipment and labor resources between those states because they're geographically close."[15]

## E.  Single site of employment is a common question of law/fact that is certifiable.

Finally, and perhaps most importantly, the question of whether the Northeast locations should be treated as a single site of employment is "a mixed question of fact and law."  *See Mercer v. Patterson-Uti Drilling Co., L.L.C.,* 717 F. App'x 400, 403 (5th Cir. 2017) (citing *Davis v. Signal Int'l Tex. GP, L.L.C.,* 728 F.3d 482, 485 (5th Cir. 2013)); *Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.,* 15 F.3d 1275, 1289 (5th Cir. 1994).  Defendant has not moved for summary judgment on this issue, but that would be the practical effect of concluding now that the Northeast region is not a single site of employment.  Because this issue is in part a fact question, and its conclusion will be based on the merits, it is premature and not appropriate to rule on this matter at the class certification stage.

---

[13] Exhibit 2 – Depo. Transcript of Scott Easom at 13:5-6; 20:16-24; 31:4-18; 65:5-11.
[14] Exhibit 5 – Depo. Transcript of Kyle O'Neill (CFO and later CEO) at 27:9 – 28:7.
[15] *Id.*

Notably, every case Defendant cited in support of its position on the single site of employment issue was heard after a final judgment or summary judgment decision was entered.[16] Not one of the cases was at the class certification stage, as is the present case.

Because this case is at the certification state, the Court should certify the class to include the employees terminated in the Northeast region and identify as one of the common questions of fact and law that predominates under Rule 23(b)(3) whether that region forms a "single site of employment." In other words, the existence of a legal and factual dispute on this issue is precisely what renders it appropriate for class certification, and improper for de facto summary judgment.

The terminations at each district separately will not trigger the WARN Act. Defendant emphatically makes this point. Together, they will trigger the WARN Act. The class wins or loses on this issue, and it is common to all of them. Hence, this issue predominates over all others.

Many courts have certified this precise issue rather than render an effective ruling on the merits via a denial of class certification. For example, in *Piron v. Gen. Dynamics Info. Tech., Inc.*, No. 3:19CV709, 2022 WL 363958, at *6 (E.D. Va. Feb. 7, 2022), the court certified a WARN Act class citing as one common issue whether remote workers at multiple locations formed a single site of employment.[17] The *Piron* court declined "to *engage in a full merits-based analysis of whether Plaintiffs can prove a "single site of employment" at this stage in the litigation . . . And,*

---

[16] Defendant cites the following cases in support of its single site of employment argument: *Sisney v. Trinidad Drilling, LP,* 231 F. Supp. 3d 233 (W.D. Tex. 2017) (ruling on Defendant's motion for summary judgment); *Davis v. Signal Intern. Texas GP, LLC,* 728 F.3d 482 (5th Cir. 2013) (appeal of final decision against Defendant – Affirmed); *Mercer v. Patterson-UTI Drilling Co.*, 717 Fed. Appx. 400 (5th Cir. 2017) (appeal of summary judgment decision against Plaintiffs – Affirmed); *Meadows v. Latshaw Drilling Co., LLC,* 2016 U.S. Dist. LEXIS 70327 (N.D. Tex. May 31, 2016), aff'd, 866 F.3d 307 (5th Cir. 2017) (Defendant moved for summary judgement).

[17] *See also, Etzelsberger v. Fisker Auto., Inc.*, 300 F.R.D. 378, 384 (C.D. Cal. 2013)(certifying WARN Act class on legal and factual issues of whether employer was even covered under the WARN Act, whether the terminations were related to plant closings or mass layoffs, and whether employer provided notice to terminated employees); *see also Shepherd v. ASI, Ltd.*, 295 F.R.D. 289, 296 (S.D. Ind. 2013)(certifying WARN Act class to include 60 off-site workers despite employer's protest that such workers were outside of the single site of employment)

*the issue should be litigated on its merits, rather than leveraged as a tool to deny class certification at this stage in the proceedings.* <u>Amgen</u>, 568 U.S. at 467." (*emphasis added*). As the Supreme Court held in *Amgen*, "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). Moreover, "Granting class certification will still allow the parties to dispute whether Plaintiffs can meet the 'single site of employment' requirement." *Gautier v. Tams Mgmt., Inc.*, No. 5:20-CV-00165, 2022 WL 3162177, at *2 (S.D.W. Va. Aug. 8, 2022). Lastly, this Court has broad discretion even after certification to modify the class based on how the facts further develop. *See* Fed. R. Civ. Pro. 23(c)(1)(C).

### F.   <u>Status of Employees and Termination Details.</u>

#### a.   <u>Part-Time Employees are proper claimants once the WARN Act is triggered based on counting full-time employees terminated.</u>

Defendant correctly asserts that part-time employees are excluded from the determination of whether the WARN Act is *triggered*. 29 U.S.C. § 2101(a)(3). Defendant incorrectly claims that part-time employees should be excluded from the class. On the contrary, the WARN Act explicitly sets out the manner in which part-time employees who were employed for less than six months prior to their termination should have their damages *reduced*, but they are not completely disregarded as Defendant would have this Court believe. While part-time employees are not counted for triggering WARN Act coverage, they are included as employees suffering an employment loss once coverage is triggered based on the count of full-time employees. *See, e.g., Roquet v. Arthur Anderson LLP*, No. 02 C 2689, 2002 WL 1900768, at *3 (N.D. Ill. Aug. 16, 2002) ("Based on the plain and unambiguous statutory language, part-time employees can experience an employment loss and are proper parties in a WARN Act suit.").

Specifically, section 2104(a)(7) states: "For purposes of this subsection, the term, "aggrieved employee" means an employee who has worked for the employer ordering the 'plant closing' or 'mass layoff' and who, as a result of the failure by the employer to comply with section 2102 of this title, did not receive timely notice either directly or through his or her representative as required by section 2102 of this title." This definition does <u>not</u> contain an exclusion of part-time workers. The *Roquet* court thoroughly analyzed the Act's language and concluded: "Therefore, the exclusion of part-time employees in some of the criteria under that WARN Act cannot be interpreted as excluding part-time employees as experiencing an employment loss when employment loss is specifically defined, and such definition does not exclude part-time employees." *Roquet,* at *3; *see also Shepherd v. ASI, Ltd.*, 295 F.R.D. 289, 295 (S.D. Ind. 2013) (Certifying WARN Act class to include part time employees because they are allowed to recover under the WARN Act even if they are not counted for triggering coverage). This conclusion is likewise supported by the DOL regulations: "While part-time employees are not counted in determining whether plant closing or mass layoff thresholds are reached, *such workers are due notice*." 20 C.F.R. 639.6(b) (emphasis added).

Furthermore, section 2104(a)(1) states: "Any employer who orders a 'plant closing' or 'mass layoff' in violation of section 2102 of this title shall be liable to *each aggrieved employee* who suffers an employment loss… (A) back pay for each day of violation… and (B) benefits under an employee benefit plan described in section 1002(3) of this title…" This section further clarifies: "Such liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for *more than one-half the number of days the employee was employed* by the employer. If the WARN Act were intended to only allow damages for individuals who were "full-time" employees and had worked for employer for over six months, this language would be superfluous

and unnecessary. Therefore, the clear intent of this section of the statute is to provide for damages in the form of compensation and benefits to all aggrieved employees, not just full-time employees as Defendant claims.

**b.  <u>Terminated Employees rehired within 6 Months are part of the Class.</u>**

29 U.S.C. § 2101(a)(6) defines an "employment loss" as (A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, <u>or</u> (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period. Because this clause is written in the disjunctive, any of the three criteria can apply to an individual. Employees that are "terminated" are separate and distinct from those that are "laid off." Therefore, an employee who was terminated under 2101(a)(6)(A) is not the same as one who is "laid off" under 2101(a)(6)(B).

In order to be excluded from the class, the employees that were subsequently rehired within six months of their release would have to have been "laid off" and not "terminated," distinct concepts under the Act. Those employees who were "terminated" and then happened to subsequently be rehired in less than 6 months, do not fit the "laid off" definition. Rather those employees were entitled to notice at the time of their "termination," and should be part of the class because there was no notice or expectation that they were being "laid off," and there was likewise no expectation that they would be recalled to employment.

This clear distinction between "termination" and "lay off" in the Act was thoroughly discussed by the Fourth Circuit. *See Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing (USA) Corp.*, 252 F.3d 296, 299 (4th Cir. 2001). The court aptly concluded that, "The WARN Act clearly contemplates that an employee may suffer multiple employment losses, necessitating separate notices," and that, "an employee can suffer an 'employment loss' for any or

all of an 'employment termination,' 'a layoff exceeding six months,' or 'a reduction in hours' of the magnitude and duration specified." *Id.* at 299; *see also, Leeper v. All. Res. Partners, L.P.*, 356 F. Supp. 3d 761, 768 (S.D. Ill. 2018), *aff'd sub nom. Leeper v. Hamilton Cnty. Coal, LLC*, 939 F.3d 866 (7th Cir. 2019) (holding that employees suffer an employment loss if they are "terminated," and the subsequent rehiring of employees "does not change that conclusion."); *see also, Shepherd v. ASI, Ltd.*, 295 F.R.D. 289, 292 (S.D. Ind. 2013)("Other than through outright termination, a worker suffers "employment loss" if she is laid off for more than six months . . ."); *see also*, *Phason v. Meridian Rail Corp.,* 479 F.3d 527 (7th Cir.2007) (holding that the Act applies to both temporary and permanent job losses, and employees terminated by one company and hired **a mere eight days later** by the company's purchaser nevertheless suffered an "employment loss" upon "termination."); *see also*, *Shepherd v. ASI, Ltd.*, 295 F.R.D. 289, 296 (S.D. Ind. 2013)(ruling that even if employees were eventually rehired after termination, they still suffered an "employment loss" under the Act).

The WARN Act contemplates employees having the opportunity to look for new work and job training, which would be unnecessary under a temporary layoff, but highly encouraged under a true termination. Coincidental rehiring after termination is not treated the same under the Act as recalling an employee back to work from a temporary layoff. Thus, those employees fall under the definition of 2101(a)(6)(A) and should be included in the class.[18]

### c. <u>Employees who were Terminated for Cause or Voluntarily Retired.</u>

Plaintiffs recognize that employees who were terminated for cause or voluntarily retired are not part of the WARN Act class. 29 U.S.C. 2101(a)(6). Due to the nature of the employment

---

[18] In the event the Court finds a fact issue on whether these workers were terminated or laid off, the default should be to certify a class to include these workers with the understanding that the parties can brief the court later after further factual developments regarding whether the departures were true terminations or layoffs.

actions related to these employees, they were not entitled to notice and are therefore properly excluded from the class. Contrary to the assertions of the Defendant, Plaintiffs have not included any such individual in the definition of the class, nor do Plaintiffs intend to seek damages for any such individual, assuming that Defendant's proffered reason for termination is accurate.

### d. **Employees who signed a Release Agreement.**

Defendant asserts that employees who signed release agreements in exchange for consideration should be excluded from the class. Doc. 91 at p. 8. However, despite numerous requests for Defendant to provide any evidence of these types of agreements, not a single agreement has been produced and there has certainly been no shred of evidence to support Defendant's allegation that any employee willingly signed such an agreement. In order for a release agreement to be proper under the WARN Act, the employee must sign it knowingly and voluntarily waiving their claim, the release must address the issue, and the employee must receive adequate consideration. *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935-36 (5th Cir. 1994). However, under 29 U.S.C. § 2104(a)(2)(B), payments "required by any legal obligation" cannot off-set WARN Act liability. *Int'l Ass'n of Machinists & Aero. Workers v. Compania Mexicana De Aviacion*, 199 F.3d 796, 798 (5th Cir. 2000). The better course of action is to include such employees in any class at this point and remove them if Defendant can satisfy its burden to show they fall under this limited exception.

### III. **CONCLUSION**

For all the foregoing reasons, Plaintiffs' motion to certify a class action under Rule 23 should be GRANTED over Defendant's opposition. Plaintiffs have met the Rule 23 requirements and the other questions raised by Defendant are either misapplications of the law or are premature

questions of fact that are not appropriate for consideration at the class certification stage.

Therefore, Plaintiffs respectfully request that this Court certify the following class:

> All USWS employees employed in Texas and the Northeast who were entitled to and did not receive 60 days' advance written notice of termination, and whose employment was terminated between March 5 and June 3, 2020, as a result of the "mass layoff" as defined by the Workers Adjustment and Retraining Notification Act of 1988.

Dated: February 3, 2023

Respectfully submitted,

By: */s/ Gabriel A. Assaad*
Gabriel A. Assaad
Texas Bar No. 24076189
gassaad@mcdonaldworley.com
Matthew S. Yezierski
Texas Bar No. 24076989
matt@mcdonaldworley.com
MCDONALD WORLEY, P.C.
1770 St. James Street, Suite 100
Houston, TX 77056
(713) 523-5500 – telephone

Galvin Kennedy
KENNEDY LAW FIRM, LLP
2925 Richmond Avenue, Ste. 1200
Houston, TX 77098
(713) 425-6445 - telephone
galvin@kennedyattorney.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing instrument has been served on all counsel of record via e-file notification on February 3, 2023.

David M. Korn
Mark Fijman
Clerc Cooper
PHELPS DUNBAR LLP
Canal Place, 365 Canal Street
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Email: david.korn@phelps.com
mark.fijman@phelps.com
clerc.cooper@phelps.com

*/s/ Galvin Kennedy*
Galvin Kennedy