UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SCOTT EASOM, ADRIAN HOWARD, and JOHN NAU, on behalf of themselves and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>V.<br><br>US WELL SERVICES, LLC,<br><br>  Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION NO.: <u>4:20-CV-02995</u><br>§<br>§<br>§<br>§<br>§<br>§ |

**JOINT MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

Plaintiffs Scott Easom, Adrian Howard, and John Nau, individually and on behalf of all others similarly situated ("Plaintiffs"), and Defendant, US Well Services, LLC ("USWS" or "Defendant") (collectively the "Parties") file this Joint Motion for Final Approval of Class Action Settlement. In support thereof, the Parties respectfully show the Court as follows:

**I. INTRODUCTION**

On September 19, 2024, this Court issued an Order preliminarily approving the Class Action Settlement reached between the Parties (the "Preliminary Approval Order"). (*See* Doc. 135). As the Parties originally reported, the Settlement was the result of significant investigation and motion practice and created a maximum gross settlement amount of $1,600,000.00. The terms of the proposed settlement are set forth in the proposed Settlement Agreement and Release of Claims ("Settlement") attached as Exhibit 1.

Pursuant to the Preliminary Approval Order, the Parties arranged for the court-authorized notices to be sent to the respective class members through a third-party administrator, ILYM Group, Inc. Class Action Administration ("ILYM" or "Claims Administrator"). The Parties are pleased to announce that 240 out of 282 potential class

members (85.1%) opted to participate in the Settlement, according to the final report prepared by ILYM. *See* Exhibit 2, Administrator's Report. As the Court is aware from prior cases, 85.1% is an exceptionally high claims rate. This achievement is likely due to (1) the higher average claim value ($3,160) and that class members are, by definition, former employees of Defendant and less concerned about pursuing a claim against a current employer.

Moreover, no objections to the Settlement were submitted. Because this Court's original findings of facts and conclusions of law in the Preliminary Approval Order remain valid, and there are no other obstacles to approving the Settlement, the Parties jointly request that the Court issue an Order of Final Approval of their Settlement and dismiss the claims pursuant to the terms of the Settlement.

## II.     PROCEDURAL HISTORY AND BACKGROUND

In and around March of 2020, without prior notice, USWS laid off many of its employees, including Plaintiffs. These layoffs were a result of numerous factors, including dropping oil prices, reduced profitability, and loss of fracking contracts. On August 26, 2020, Plaintiffs filed this lawsuit alleging violations of the Worker Adjustment and Retraining Notification Act ("WARN Act") on behalf of themselves and all others that are similarly situated. [Doc. 1]. Plaintiffs filed their First Amended Complaint on October 14, 2020. [Doc. 10]. Defendant filed an Answer on November 3, 2020. [Doc. 20].

After summary judgment motion practice and an appeal to the Fifth Circuit related to the "natural disaster" exemption in the WARN Act, Plaintiffs moved for class certification under Fed. R. Civ. P. Rule 23(a) and Rule 23(b)(3) on October 28, 2022. [Doc. 73]. On September 26, 2023, over Defendant's objections, this Court granted Plaintiffs' motion and certified the following class:

> All US Well Services employees based out of the production facilities in Bryan, Texas, San Angelo, Texas, and Pleasanton, Texas, who were terminated between March 5, 2020, and April 4, 2020, excluding employees who: (1) were rehired by US Well Services within a six-month period from their date of

termination, (2) voluntarily terminated their employment, or (3) were discharged for cause.

[Doc. 101]. The parties now seek the Court's approval related to the negotiated settlement pertaining to that class of employees.

### III.   SUMMARY OF THE SETTLEMENT

#### a.   Monetary Relief to the Class Members.

The parties have agreed to a common fund settlement contingent upon the Court's approval. Each Rule 23 class member who has timely filed a claim form is eligible to receive a pro rata share of the $1,600,000.00 settlement fund, after deductions for Class Counsel's attorneys' fees, service awards, class administrative costs, and case expenses. To ensure appropriate notification and participation, the Settlement provided for outreach to the Rule 23 class members. The notice plan comports with the best practices regarding notice and claim administration to make participation as easy as possible for the Rule 23 class members. The Rule 23 Class Members had previously been provided notice of the lawsuit and an opportunity to opt-out of the litigation if they desired. Not one class member chose to opt out. For purposes of the settlement notice, a class administrator provided an original notice via U.S. Mail (first class) and e-mail, followed by a second mailing after 30 days for anyone who had not submitted a claim form in response to the original notice. For claim members whose claim packets were returned due to a bad address, the administrator sent a new notice to the forwarding address. *See* Exhibit 2, Administrator's Report.

#### b.   Plan of Allocation.

The Settlement Agreement includes a proposed plan of allocation based on a formula that is fair to each class member based on the WARN Act damages described in the statute and as reflected in the payroll records that were previously provided by USWS. The parties have agreed that the formulas and methods that were used to calculate each class member's damages by Plaintiffs' counsel will govern the pro rata distribution of the net settlement funds to the

class members. The notice packet mailed and emailed to each class member identified each member's respective net amount of the settlement.

   c. **Release Provisions.**

All Rule 23 class members will be bound by the final approval order, the judgment, and the releases set forth in the notice. The class members will be providing a release of "all claims for alleged violations of the WARN Act, known or unknown, in connection with the terminations that occurred during the Class Period, as defined by this Court." Additionally, the three named Plaintiffs will each execute full and complete releases of all claims from the beginning of time through the date of settlement.

   d. **Service Awards.**

The Settlement explicitly provides for service awards to Plaintiffs Scott Easom, John Nau, and Adrian Howard in the amount of $5,000.00, which is intended to recognize the time and effort each of them spent on behalf of the class, assisting Class Counsel with the prosecution of the case, responding to discovery, appearing for depositions, and working towards the eventual settlement of their claims. Those actions, and the consequent value those efforts have conferred upon the Class Members, and the additional exposure and risk they incurred by taking a leadership role in the litigation merit such an award. The notice to all 282 class members disclosed these proposed service awards.

   e. **Attorneys' Fees and Costs.**

Class Counsel hereby requests Attorneys' Fees equaling 40% of the Maximum Settlement Amount, *i.e.*, $640,000.00, and Costs and Expenses in the amount of $45,668.00. The reasonableness of the fees and costs requested are addressed in detail below and in the attached Declaration of lead counsel, Galvin Kennedy. *See* Exhibit 3, Decl. of Galvin Kennedy. This declaration also addresses all of the *Johnson* factors pursuant to *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).

4

## IV. ARGUMENTS AND AUTHORITY

Rule 23, which governs class actions, was revised in 2018 to provide clarity on the procedure federal courts should follow when deciding to approve a settlement of a class action. *See* Fed. R. Civ. P. 23(e). The decision to approve a class action settlement is left to the district court's sound discretion. *See Newby v. Enron Corp.*, 394 F.3d 296, 300 (5th Cir. 2004). The court may authorize notice of the settlement to the class if the parties can demonstrate that the Court will likely be able to (1) approve the settlement as fair, reasonable and adequate based on various factors addressed below, and (2) certify the class for purposes of judgment on appeal. *See* Fed. R. Civ. P. 23(e); *see also In re Deepwater Horizon*, 739 F.3d 790, 820 (5th Cir. 2014) (citing *Newby*, 394 F.3d at 301 (5th Cir. 2004)).

### a. The settlement is fair, reasonable, and adequate under Rule 23(e)(2).

#### i. 23(e)(2)(A) - The Class Representative and Class Counsel have adequately represented the class.

Two sections of Rule 23 require a review of the adequacy of Class Counsel and the Class Representative, Fed. R. Civ. P. 23(a)(4) and 23(e)(2). The inquiry for both is the same. The Rule requires plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." *Id*. The adequacy requirement mandates a showing that the lead plaintiffs' claims are not contrary to those of the class members and that the attorneys seeking to be appointed class counsel are qualified to handle the case. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997); *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002). This Court has already found that the Class Representatives and Class Counsel have adequately represented the Class. *See* Doc. 101, p. 16 - Court Order on Certification; *see also* Doc. 135 (9/19/24) Court Order Preliminarily Approving Settlement. No conditions have changed since the original order was issued that would modify this finding.

      **ii.**    **23(e)(2)(B) - The proposal was negotiated at arm's length.**

While the Parties were in the process of preparing pretrial motions pursuant to the Court's Scheduling Order, they reached an agreement to settle the case, in part based on the continued efforts of the agreed mediator, Mr. Lemons, who has extensive experience mediating class action lawsuits. The Parties attended mediation on June 3, 2024. Class Counsel attended the mediation, as did USWS counsel, and a company representative. All three Class Representatives, who were employed in distant locations on that date, were nonetheless available at a moment's notice by phone. While the parties did not resolve the matter during mediation, they continued to negotiate thereafter, and reached a final agreement, the terms of which are contained in the Settlement attached as Exhibit 1. The Settlement is the result of an arms' length negotiation with both sides vigorously advocating their respective positions. This Court has already found this factor has been satisfied when it issued its order preliminarily approving the Settlement. *See* Doc. 135 (9/19/24) Court Order Preliminarily Approving Settlement. No conditions have changed since the original order was issued that would modify this finding.

      **iii.**    **23(e)(2)(C) - The relief provided for the class is adequate**.

The parties have considered the appropriate factors in reaching this agreement.

      *1.  23(e)(2)(C)(i) - The costs, risks and delay of trial and appeal.*

The Settlement is also fair and reasonable because substantial obstacles exist if litigation continues, and the settlement offers substantial and immediate relief. The Parties disagree about the merits of Plaintiffs' claims, the viability of USWS's offered defenses, and the proper calculation of damages. In particular, Plaintiffs contend that the facts outlined in the Second Amended Complaint and the discovery obtained make it clear that USWS violated the WARN Act by failing to provide any notice, and certainly provided no advance notice, to the class members prior to conducting a mass layoff. USWS, however, alleges that notice was

provided and was provided as early as practicable, based in part on the circumstances impacting the fracking industry at the time of the employee terminations. USWS therefore argued that the "unforeseen business circumstances" exemption to the WARN Act applied and further claimed that USWS acted in good faith to comply with the statutory requirements related to advance notice. The Parties have hotly contested these, and other related issues, in multiple pleadings, hearings, and during the entire pendency of the litigation, and continued to do so even at mediation.

The Settlement is also fair and reasonable because this case threatened to become even more complex, expensive, and lengthy. If the lawsuit continues, both Parties have advised that extensive briefing would become necessary based on two recent Supreme Court decisions. Plaintiffs would file briefing related to their right to a trial by jury in a WARN Act case and Defendant would assert questions related to the causation standard as a result of the recent decision to do away with *Chevron* deference. Further, no matter which party prevailed in these monumental issues, and regardless of which party prevailed on the merits, another appeal to the Fifth Circuit would very likely have resulted. Under such a scenario, Plaintiffs would not see any recovery from this case, if any, for years to come. The Settlement brings immediate benefit to the Plaintiffs, provides closure for the defendant, and preserves the resources of the judiciary.

> **2. 23(e)(2)(C)(ii) - The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.**

USWS was previously required by this Court to provide Class Counsel with the last known e-mail and residential address for each class member. Class Counsel, pursuant to this Court's decision, provided notice to the class members and the Court allowed for a 90-day opt-out period. None of the 282 Class Members chose to opt out of the litigation.

To process this Settlement, a court-approved Class Administrator (ILYM) was retained to take responsibility for sending the Notice of Settlement and an Opt-Out Request form ("Notice Packet") via U.S. Mail (first class) and e-mail. Class members were allowed to return the claim form via electronic delivery using DocuSign or a similar company providing electronic signature or by returning the claim form via regular U.S. Mail. For any Notice Packets returned as undeliverable, a new Notice Packet was sent to the forwarding address. If no such forwarding address was provided, the Class Administrator performed a standard skip trace to identify the most current address, and mailed a new Notice Packet to that address, if any. *See* Exhibit 2, Administrator's Report. The Notice Period was sixty (60) days from the date of the first mailing, which placed the claim form deadline on December 2, 2024.

Class members were given the option of (1) returning the claim form, (2) objecting to the Settlement, or (3) doing nothing. The consequences of each choice were explained in layperson common language. The Class Administrator provided weekly reports to counsel for both sides during the notice period including deficiencies of claims submitted. *See* Exhibit 2, Administrator's Report. The Class Administrator also prepared a report and declaration of the actions they took to process the notice and claim forms. *See* Exhibit 2, Administrator's Report.

   3. *23(e)(2)(C)(iii) - The terms of any proposed award of attorney's fees, including timing of payment.*

Class Counsel requests Attorneys' Fees equaling 40% of the Maximum Settlement Amount, i.e., $640,000. and Costs and Expenses in the amount of $45,668. The Class Counsel fee, cost and expense application are outlined in detail in the declaration of lead class counsel Galvin Kennedy. *See* Ex. 3, Decl. of Galvin Kennedy. Approved Attorneys' Fees and Expenses will be paid out 15 days after USWS has funded the Settlement, which is the same time the Class Members are scheduled to be paid.

The Settlement terms regarding attorneys' fees are also fair, reasonable, and adequate. Class Counsel has devoted over four years to working on this case and negotiated a settlement

8

that benefits a large group of Plaintiffs. Among other things, Plaintiffs engaged in extensive dispositive motion practice, prevailed on an interlocutory appeal, drafted numerous motions (summary judgment, discovery motions, certification, etc.), responded to the motions filed by USWS, kept in constant contact with the Class Representatives, invested funds in litigation costs to properly develop the case without any assurance of payment, responded to individual discovery, attended depositions of the Class Representatives and several individuals employed at the executive level of USWS, including a 30(b)(6) corporate representative deposition that required judicial guidance on two separate occasions, sorted and analyzed tens of thousands of documents including payroll records for the entire class, developed a robust damage model from complicated records, and performed all other work necessary to achieve recovery for their clients.

Plaintiffs executed a contingency fee agreement to pay counsel 40% of the gross recovery plus litigation expenses. Such fees 40% are justified as a matter of contract, but especially in this case where counsel worked diligently for such an extended amount of time on a contingency basis in a contentiously litigated case. Plaintiffs request that the Court take judicial notice of the docket which reflects the quantity and quality of work done by Plaintiffs' counsel. The fee requested is well within the usual range of percentages awarded in similar cases. *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (identifying customary contingency rate of 35-40%); *Quintanilla v. A & R Demolition, Inc.*, No. H-04-1965, 2008 WL 9410399, at *8 (S.D. Tex. May 7, 2008) (approving a settlement that awarded attorney's fees amounting to 40% of a common fund). Class Counsel accepted this lawsuit on a contingency fee basis and achieved a positive result on behalf of the Plaintiffs and the class members which supports the agreed-upon fee award. Moreover, it is proper to award attorneys' fees in a common fund settlement based on a percentage because "it is more predictable, encourages settlement, and reduces incentives to protract litigation." *Union Asset Mgmt. Holding A.G. v.*

9

*Dell, Inc.*, 669 F.3d 632, 644, n.34 (5th Cir. 2012) (citations omitted) (also, noting that the fifth circuit has never reversed a district court's decision to use the percentage method.).

For common fund class action settlements like this, it is appropriate for the Court to examine the Johnson factors which include:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2015 WL 338358, at *17 (S.D. Tex. Jan. 23, 2015) (J. Rosenthal) (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974). All the relevant *Johnson* factors are addressed in Kennedy's declaration filed herewith as Ex. 3. The declaration further performs a lodestar crosscheck which reveals a modest multiplier of 1.05. This multiplier of the lodestar fees incurred is well within the range of those previously approved in this Circuit.[1] The declaration also describes at length the categories of expenses that were incurred. The bulk of the $45,668 expenses covered (1) two mediation fees for top level mediators ($8,728); deposition and expert witness fees ($21,888); and flight/hotel costs for multiple trips to New Orleans for oral argument before the Fifth Circuit and depositions ($10,153).

---

[1] *See, e.g., Forbush v. J.C. Penney Co.*, 98 F.3d 817, 824 (5th Cir.1996) (affirming district court's use of multiplier of two); *Vaughn v. Am. Honda Motor Co.*, 627 F.Supp.2d 738, 751 (E.D.Tex.2007) (applying a multiplier of 2.26); *Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830, 869 (E.D.La.2007) ("[T]he Court finds that a lodestar multiplier range of 2.5 to 3.5 would be appropriate and reasonable in this case."); *In re Combustion, Inc.*, 968 F.Supp. 1116, 1113 (W.D.La.1997) ("Multipliers ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied."); *Garza v. Sporting Goods Props., Inc.,* 1996 WL 56247, at *33 (W.D.Tex. Feb. 6, 1996) ("The range of multipliers in large and complicated class actions have ranged from 2.26 to 4.5."); *Di Giacomo v. Plains All Am. Pipeline*, No. CV-99-4137, 2001 WL 34633373, at *10–11 (S.D. Tex. Dec. 19, 2001) (approving a 5.3 multiplier in a securities class action).

> 4. *23(e)(2)(C)(iv) – any agreement required to be identified under Rule 23(e)(3).*

There are no separate agreements outside of the actual Settlement. The Parties must file a statement identifying any agreement made in connection with the proposed Settlement. Other than the Settlement itself, the parties have no other separate agreement regarding the Settlement. All of the terms of the Parties' settlement are contained in the Settlement itself, which is attached hereto as Exhibit 1.

> iv. **23(e)(2)(D) - The Settlement treats class members equitably relative to each other.**

The Settlement is also fair because it calls for a fair distribution to the Class Members of a substantial settlement fund. Each class member would receive a proportionate share of the net settlement amount after attorneys' fees, case expenses, costs for administering notice, and a modest service award to Scott Easom, Adrian Howard, and John Nau of $5,000 each for their role in serving as the Class Representatives. The distribution among Class Members is based on the payroll records kept by USWS, which were used to calculate the amount of damages due to each Class Member based on the pay and benefits damages enumerated in the statute. The same formula is used to determine the amount of the settlement fund to be paid to each Class Member, including the Class Representatives.

### b. The Settlement resolves a bona fide dispute.

Here, the Parties negotiated the proposed Settlement in good faith and at arm's-length. There is and can be no suggestion of fraud or collusion in the negotiation of this settlement. As noted above, investigation and formal discovery has allowed Class Counsel – who are experienced collective and class action attorneys – to assess the strengths and weaknesses of the claims against USWS. The motions filed in this case reveal that the dispute between the Parties was indeed bona fide. The Parties relied upon an experienced mediator, Bill Lemons, to assist them in resolving their dispute.

### i. The Settlement is a fair and reasonable resolution of the dispute.

If Plaintiff's allegations were ultimately proven and judged to be correct, USWS would be faced with the prospect of a monetary judgment in favor of Plaintiff and the class members under the WARN Act, as well as the potential obligation to pay litigation fees and costs Class Counsel incurred in this action. If USWS's arguments were correct, then Plaintiffs would not have made a recovery at all. The Parties have been represented by able, experienced counsel throughout this litigation. Each side aggressively litigated its positions, as outlined in the historical review of the case above.

This Motion discusses at length above the costs, risks and delays of trial and appeal outlining the legal and factual contentions raised by each side. In short, both sides had arguments to make favoring their positions that could have resulted in wins and/or losses by either side. In the end, the Settlement allows for payment of a maximum amount of $1,600,000 from USWS to the employees who were terminated without advance notice. While Class Counsel is confident in Plaintiffs' claims, the amount of the relief obtained under these general facts speaks volumes for the fairness of the Settlement. The Maximum Settlement Amount represents approximately 30% of the total amount of WARN Act damages owed to the Class members based on the damage model created by Class Counsel. Therefore, the Settlement amount is indicative of a fair and reasonable resolution of the dispute.

### ii. The requested attorney's fees are fair and reasonable.

This motion thoroughly addresses the reasonableness of the requested attorney's fees and costs and the timing of the payment above, and in the declaration submitted by lead Class Counsel, Galvin Kennedy. The Settlement Agreement is also fair because it provides for a reasonable incentive award to the Class Representatives, Scott Easom, Adrian Howard, and John Nau. The agreement calls for incentive awards of $5,000 to the Class Representatives who were instrumental in developing the facts and legal theories in this case since the inception.

Class Representatives provided documents to Class Counsel that helped develop the case, communicated on a regular basis with Class Counsel regarding case developments and review of records, attended depositions, and in general served the interest of the Class Members. They expended a considerable amount of time from their personal and professional lives to help their co-workers vindicate their rights under the WARN Act. Class Representatives also took on the risk of serving as the faces of the litigation with their names provided as the primary litigants, thereby running a risk of being shunned by prospective future employers. Likewise, in exchange for their incentive awards, Class Representatives are executing a General Release of all claims, whereas the Class Members are releasing only claims related to the WARN Act and the terminations that occurred during the time certified by this Court. The modest incentive awards amount to less than 0.33% of the gross settlement.

## IV. CONCLUSION

For the foregoing reasons, the Parties respectfully request that this Court issue an Order in the form submitted by the Parties that provide the following relief:

1. Final Approval of the Class Settlement Agreement;

2. Appoint the named Plaintiffs Scott Easom, Adrian Howard, and John Nau as the Class Representative for the Settlement Class;

3. Appoint Galvin Kennedy, Gabriel Assaad, Matthew Yezierski as Class Counsel for the Settlement Class;

4. Dismissing all claims as identified in the Settlement; and

5. Grant the Parties such other relief to which they may be justly entitled.

A proposed order is attached for the court's consideration.

| | |
|---|---|
| SIGNED: December 16, 2024 | Respectfully submitted, |
| | By: */s/Matthew S. Yezierski* |
| | Matthew S. Yezierski |
| | Texas Bar No. 24076989 |
| | matt@mcdonaldworley.com |
| | Gabriel A. Assaad |
| | Texas Bar No. 24076189 |
| | gassaad@mcdonaldworley.com |
| | **MCDONALD WORLEY, P.C.** |
| | 1770 St. James Street, Suite 100 |
| | Houston, TX 77056 |
| | (713) 523-5500 – telephone |
| | (713) 523-5501 – facsimile |
| | |
| | Galvin Kennedy |
| | Texas Bar No. 00796870 |
| | galvin@kennedyattorney.com |
| | **KENNEDY LAW FIRM, LLP** |
| | 2925 Richmond Avenue, Ste. 1200 |
| | Houston, TX 77098 |
| | (713) 425-6445 - telephone |
| | |
| | **LEAD ATTORNEYS FOR PLAINTIFFS AND CLASS MEMBERS** |
| AND | |
| | *By: /s/ David M. Korn* |
| | David M. KornN |
| | Texas Bar No. 24026161 |
| | Mark Fijman |
| | Texas Bar No. 24112984 |
| | **PHELPS DUNBAR LLP** |
| | Canal Place |
| | 365 Canal Street, Suite 2000 |
| | New Orleans, Louisiana 70130 |
| | Telephone: 504-566-1311 |
| | Telecopier: 504-568-9130 |
| | Email: david.korn@phelps.com |
| | Email: mark.fijman@phelps.com |
| | |
| | **ATTORNEYS FOR DEFENDANT** |

**CERTIFICATE OF CONFERENCE**

This is a joint motion and, as such, the parties agree to the relief requested herein.

/s/Matthew S. Yezierski
Matthew S. Yezierski

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document has been served upon counsel of record via the Court's CM/ECF System December 16, 2024.

/s/Matthew S. Yezierski
Matthew S. Yezierski