# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **SCOTT EASOM, ADRIAN HOWARD, and JOHN NAU, on behalf of themselves and on behalf of all others similarly situated,** | § § § § § | |
| **Plaintiffs,** | § § § § | |
| **V.** | § § § | **CIVIL ACTION NO.: <u>4:20-CV-02995</u>** |
| **US WELL SERVICES, LLC** | § § § § | |
| **Defendant.** | § § | |

<u>**DECLARATION OF GALVIN B. KENNEDY**</u>

Pursuant to 28 U.S.C. §1746, the undersigned declares as follows:

1.      My name is Galvin Kennedy, and I am a partner the Kennedy Law Firm, LLP, one of two firms serving as counsel to named Plaintiffs Scott Easom, Adrian Howard, and John Nau and to the class action members in the above-captioned action ("Plaintiffs"). I am also one of the three lawyers primarily responsible for the prosecution of Plaintiffs' claims on behalf of the certified class action. I make these statements based on personal knowledge and would so testify if called as a witness at trial. I swear that the statements herein are true and correct.

2.      This Declaration is submitted in support of the Parties' Joint Motion for Final Settlement Approval.

3.      I am a member in good standing of the bar of the State of Texas, as well as the U.S. District Courts in Texas, Colorado, Eastern District of Michigan, Northern District of Illinois, and the Fifth Circuit Court of Appeals.

4.      Attached hereto as Exhibit A is a true and correct copy of my curriculum vitae.

**Class Counsel Background and Experience**

5.      During my 28 years of practicing law, I have served as an attorney in many complex collective and class actions. I have been approved as class counsel for plaintiffs in more than 80 wage and hour class and/or collective actions, including in the following cases:

- Civil Action No. 4:21-cv-00318; *Culpepper v. C2 Logistics, LLC, et al.*; United States District Court for the Southern District of Texas, Houston Division. (Court certified national FLSA collective action and Rule 23 Kansas state wage law class action on behalf of wind turbine workers who were denied proper wages).

- Civil Action No. 3:13-cv-04960-VC; *Lyle E. Galeener v. Source Refrigeration & HVAC, Inc., et al.*; in the United States District Court for the Northern District of California; San Francisco Division (the Court certified for Settlement purposes a quantum meruit state-law class consisting of all current and former Source employees who are or were employed in Covered in different states at any during time during the covered Period) (settled for $10,000,000).

- Civil Action No. 3:14-cv-00160; *Joy Corcione, et al. v. Methodist Hospital d/b/a Houston Methodist et al.*, in the United States District Court for the Southern District of Texas (Judge Rosenthal certified a collective action across three hospitals with more than 4,300 nurses) (confidential settlement).

- Civil Action No. 4:10-cv-00986; *John Glass, et al. v. Konica Minolta Business Solutions*; In the United States District Court for the Southern District of Texas, Houston Division (Judge Lake) (national class certified as to over 2,000 service repair technicians; settled for $4,350,000).

- Civil Action No. 0:14-cv-61927-WPD; *Adonay Encarnacion v. J.W. Lee., D/B/A Scarlett's Cabaret, et al*; in the United States District of Florida; Fort Lauderdale Division. (Settled for $6,000,000 on behalf of large group of dancers at a night club).

- Case No. 12-cv-2987-WJM-MJW; *Buck Howard, et al. v. J&A Services, Inc., et al.*; In the United States District Court for the District of Colorado (Judge Martinez) (certified a national class of over 300 oil/gas flow testers allegedly misclassified as independent contractors; settled for $2,000,000).

- Case No. 3:11-cv-02743-O; *Erica Jones, et al v. JGC Dallas LLC, et al*; In the United States District Court for the Northern District of Texas, Dallas Division (Judge Reed O'Connor) (certified collective action on behalf of exotic dancers working at 8 different clubs in two states; settled for $2.3 million).

6.      My curriculum vitae also identifies other cases across the country where federal courts have approved of me as class counsel. *See* Exhibit A.

7.      In addition to being an active litigator, I have been involved in many educational and legal groups, including the American Association for Justice; National Employment Lawyers Association; the American Bar Association, employment law division; the Texas Trial Lawyers Association; the Houston Bar Association - Labor and Employment Section.

8.      I have also written and presented CLE papers on wage and hour topics at local and state legal seminars.

9.      I am AV rated (the highest achievable rating) by my peers through Martindale Hubble.

10.     I have been Board Certified in Personal Injury Trial Law by the Texas Board of Legal Specialization since 2004. Fewer than 2% of attorneys licensed in Texas achieve this honor which is based on number of trials, recommendations from judges and a full-day of testing regarding the applicant's knowledge of procedural, substantive and evidentiary legal subjects. I was recertified by the Board in 2009, 2014, 2019, and 2024.

11.     I have also received several accolades, including being selected as "Super Lawyer" for nine years by Texas Lawyer, being recognized as one of Houston's Top Lawyers by H. Texas Magazine, and being selected as one of the top 100 trial lawyers by The National Trial Lawyers organization.

12.     My co-lead counsel Gabriel A. Assaad, of McDonald Worley, P.C., and I actively and successfully litigated this suit on behalf of the Plaintiffs.

13.     Mr. Assaad has practiced law for 23 years. He received his J.D. from Vanderbilt University Law School in 2001. *See* Exhibit B, Curriculum Vitae of Gabriel A. Assaad.

14.     Collectively, the Kennedy Law Firm, L.L.P. and McDonald Worley, P.C. have extensive experience in litigating complex cases including wage and hour actions, product

liability/mass tort cases, and other class and collective actions, and Multi-District Litigation. That experience was indispensable in dealing with the myriad legal, factual, and class management issues attendant to a hotly contested class action and was critical to the ultimate resolution of this case and the favorable outcome obtained for the Plaintiffs and class members.

**Johnson Factors**

15.     In the following paragraphs, I address the factors discussed in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974) ("the *Johnson* factors") as they relate to this case.

16.     **The time and labor required.** Co-lead counsel Assaad and I began investigating the claims against Defendant around August 2020 after interviewing plaintiffs Scott Easom, Adrian Howard, and John Nau and researching the relevant law. We filed the Complaint on August 26, 2020. From that point forward, McDonald Worley, P.C., and Kennedy Law Firm, LLP, jointly devoted substantial time and labor into litigating this case. The total time from the filing of this case to its current resolution has required more than four (4) years of hard-fought litigation.

17.     Very little came easily in this case, as the parties hotly disputed the viability of the various claims and defenses raised in this WARN Act class action. Issues of first impression were addressed via summary judgment and had to be appealed to the Fifth Circuit, and ultimately sent back down to this court for further litigation after the appeal. This resulted in substantial attorney time spent on briefing the appellate court, oral argument before the Fifth Circuit, numerous depositions, answering written discovery, reviewing voluminous time and payroll records, preparing expert reports, and drafting legal briefs on a myriad of hard-fought legal issues, which include, but are not limited to, WARN Act and Rule 23 class certification, summary judgment briefs on whether COVID is a natural disaster under the WARN Act, summary judgment briefing

on good faith defense and the applicability of the unforeseen business circumstances defense, several motions on various discovery issues and multiple hearings before this court on these motions.

18.     In short, the Kennedy Law Firm, L.L.P. and McDonald Worley, P.C. devoted over four years of work and substantial resources to protect the rights and advance the claims of our clients regarding issues that were novel and by no means a forgone conclusion. This *Johnson* factor supports the fee request.

19.     Both firms have kept contemporaneous billing records of the time they spent working on this case and upon request can submit such records to the court for inspection en camera. Defendant is unopposed to the fee request.

20.     My co-counsel, Gabriel A. Assaad, has billed more than 370 hours actively litigating this matter. His associate attorney and legal staff have likewise spent hundreds of hours assisting in this case and communicating with the class members. His associate attorney, Matthew S. Yezierski, also substantially contributed to the case in the form of legal research, brief writing, data analysis, and other vital aspects related to the advancement of the litigation. Mr. Assaad bills his hourly paying clients at a rate of $700. per hour. In total, McDonald Worley, P.C. has billed $428,057.50 to this matter.

21.     As the lead attorney at my firm working on this matter, I also had several assistants and paralegals assist from time to time as the workload demanded. The following chart summarizes the time and rates for each attorney who worked on this matter:

| Staff | Time Keeper | Bill Rate | Sum of time | Sum of total billed |
|---|---|---|---|---|
| Galvin Kennedy | Partner 28 years attorney | $550 | 399.5 | $219,725. |
| Gabriel Assaad | Partner 23 years as attorney | $550 | 372.7 | $204,985. |
| Matthew Yezierski | Associate 14 years as attorney | $500 | 367.4 | $183,700. |
| **Grand Total** | | | **1139.6** | **$608,410.** |

22.    My hourly rate for complex class litigation such as this is $550. I have or will have worked nearly 400 hours actively litigating this matter, including an estimated 20 hours of additional time that will be spent on this matter after filing the Motion for Final approval on the following issues: preparing for arguing at the final fairness hearing set for December 20, 2024 before Judge Rosenthal; attending the hearing; communicating with class members regarding the court's ruling; interacting with the claims administration company to help implement the settlement; responding to phone calls and email communication from the 282 class members regarding the settlement; and all other post-hearing issues. In total, I will have billed $219,725. to this matter. My rate of $550 per hour in the instant case should be deemed reasonable for an attorney with my experience (28 years) and for the level of complexity of the issues in this case.

23.    The hourly rates listed above per attorney are commensurate with the average rates charged by labor and employment law attorneys with similar years of experience and practicing in the Southern District of Texas. *See* Exhibit C, Excerpt from Texas Employment Lawyers Association 2023 Attorneys' Fees Hourly Rates Yearbook. The entire 237 page report is available for public viewing at: https://www.mytela.org/?pg=Fee_Yearbook.

24.    Per the report:

"This collection is drawn from court rulings, jury verdicts, arbitrations, and actual rates billed. Unlike summaries of anonymous surveys, it names the lawyers and cites sources. To compare quantity of experience, it is grouped by ten-year classes—like a yearbook groups classes from seniors to freshmen. It is organized by geographic regions corresponding with the four federal districts in Texas. It accounts for inflation to the end of 2022 via the U.S. Bureau of Labor Statistics' data for legal services. It is limited to labor and employment law work in Texas."

*Id.* at p. 2.

25.     For example, out of 36 attorneys surveyed who were licensed in the 1990s like Mr. Kennedy, the average hourly rate was $708, and the median hourly rate was $660, after adjusting for inflation. *See Id.*, at p. 83. For attorneys licensed in the 2000s like Mr. Assaad, the average hourly rate was $659, and the median hourly rate was $568 after adjusting for inflation. *Id.* at p. 102. For attorneys licensed in the 2010s like Mr. Yezierski, the average hourly rate was $546, and the median hourly rate was $435 after adjusting for inflation. *See Id.*, at p. 120.

26.     Moreover, the time billed in the chart above does not capture all the attorney and staff time actually spent on the case. My associate attorneys and I routinely have meetings that last from 10 to 30 minutes that are not recorded or included in the above billing. Likewise, my staff regularly spends time on cases including this one that are omitted from the chart above. This includes time spent gathering information and documents from the 282 class members, analyzing and summarizing depositions and documents produced by Defendant, creating first drafts of discovery and motions, legal research, building damage models, and similar activities that are not merely clerical in nature. I estimate that the actual time spent on this case is at least 10% (roughly $60,000) higher than what is reflected in the chart above due to these omissions.

27.     Combined, Mr. Assaad's firm and my firm have spent more than 1,139 hours litigating this case for a total lodestar of $608,410. We are requesting that the Court affirm its preliminary approval of $640,000 in attorney's fees, which is only slightly higher than the actual

lodestar in this case. The requested fee results in a **multiplier of 1.05**, which is well within the range of reasonable multipliers in this Circuit for the work performed, the results obtained, and the time spent on this matter. The Motion which this declaration supports cites the relevant authority. As the Court can see from the other *Johnson* factors, including the outstanding recovery for the Plaintiffs in this case and the risk incurred in working on this case under a contingency agreement, the requested fee is justified.

28.    The expenses incurred are also customary and reasonable for a case of this complexity and duration. The $45,668 in expenses and are broken down into the following categories:

| Category | MW Law Firm | Kennedy Firm | Total |
|---|---|---|---|
| Travel/hotel/meals (New Orleans Fifth Cir. Hearing and Depositions) | $7,137.55 | $3,016.35 | $10,153.90 |
| Court Filings Fees | $939.63 | $- | $939.63 |
| Mediation 1 and 2 | $6,028.00 | $2,700.00 | $8,728.00 |
| Court reporter and depositions, expert witness fees, research, converting PDF data to Excel, etc. | $21,888.84 | $1,500.00 | $23,388.84 |
| Mailing/process service/binding service for Fifth Circuit/First post-cert class notice | $1,811.85 | $645.78 | $2,457.63 |
| **TOTAL** | $37,805.87 | | **$45,668.00** |

29.    **The novelty and difficulty of the questions presented by the case**. The nature of this case, involving both Rule 23 class claims and WARN Act violations, presented a particular challenge. Defendants vigorously and repeatedly attacked the viability of the Complaint via motions to dismiss, summary judgment, etc. There was an intense battle over certification of the class actions, and the time, expense, and legal uncertainties involved with respect to taking the

case to trial and defending any outcome on appeal to the Fifth Circuit was an ever-present risk factor which had to be considered and prepared for throughout the litigation.

Among other things, Plaintiffs' counsel engaged in extensive dispositive motion practice, demonstrated zealous advocacy for the rights of the Class Members by appealing a dispositive issue to the Fifth Circuit on an issue of first impression (i.e., whether a pandemic like COVID constitutes a "natural disaster" under the WARN Act), drafted numerous motions for summary judgment and responded to motions filed by USWS, kept in constant contact with the Class Representatives, invested funds in litigation costs to properly develop the case without any assurance of payment, responded to individual discovery, attended depositions of the Class Representatives and deposed several individuals employed at the executive level of USWS in both Houston and New Orleans, including a 30(b)(6) corporate representative deposition that required judicial guidance on two separate occasions, sorted and analyzed tens of thousands of documents including payroll records for the entire class, developed a robust damage model from complicated records, and performed all other work necessary to achieve recovery for their clients. This factor supports the Fee Request.

30.    **The skill requisite to perform the legal service properly**. This case falls on the complicated end of the legal spectrum because it involved an issues of first impression even for an individual plaintiff (the meaning of "natural disaster" under the WARN Act) and how to properly identify the contours of a "single site of employment" for purpose of triggering coverage under the WARN Act in the first place. Layered on top of these substantive issues are the myriad and complex matters related to certification of a Rule 23 class action. These legal issues required a more advanced legal skill set to deal with claims of hundreds of workers that were laid off. Extensive legal experience, financial resources, and qualified staff support are required to

successfully litigate a case such as this. Even putting together a damage model for 282 class members based on what is recoverable under the WARN Act required a higher legal expertise. Not all firms have the ability to competently manage and vigorously prosecute the claims of such a large group of employees against a determined and well-funded defendant. This factor supports the Fee Request.

31.    **The preclusion of other employment by the attorneys due to acceptance of the case**. By accepting work on this case, Kennedy Law Firm, LLP and McDonald Worley, P.C. had to turn down work on other cases. Almost all of the resources of both the firms of class counsel have been engaged in this litigation. Class Counsel are limited in the number of cases to which they can allocate firm resources and devote their time. In this case, there was a substantial time commitment required and Class Counsel were precluded from working on other cases and pursuing other available opportunities due to their dedication of time and effort to the successful prosecution of this litigation. Moreover, both firms performed their work on this case on a contingent basis, receiving no compensation along the way for our efforts. This *Johnson* factor also supports the Fee Request.

32.    **The customary fee.** The 40% fee requested here comports with the customary fees approved in similar cases. Plaintiff executed a contingency fee agreement to pay counsel 40% of the gross recovery plus costs. Therefore, Plaintiffs' counsel request that the Court approve 40% of the gross settlement sum of One Million Six Hundred Thousand ($1,600,000.) to Plaintiffs' counsel in attorney's fees. This comes to a total fee of $640,000 to pay both law firms. As explained above, the requested fee is only slightly above Plaintiffs counsels' lodestar. I have practied law in Texas for 28 years and focused the majority of my time on wage and hour and other employment class action litigation. I speak regularly with other members of the plaintiffs bar and

10

I'm familiar with the customary rate charged by other class action attorneys in this district. While some charge slightly lower, virtually all of them charge 40%, if not even a higher rate for cases such as this one that went up on appeal to the Fifth Circuit. Cases involving appeals are almost separate cases in themselves which is why most attorney client contracts including a 5% higher fee if case are appealed. We are not charging or requesting a higher fee for the appeal, which further justifies the fee requested.

33.     **Whether the fee is fixed or contingent.** Because the two firms' fees are entirely contingent, we worked on this case without receiving any compensation for our efforts for over four years. The contingent nature of the fee is precisely what allows workers like the Plaintiffs in this case to have access to top tier legal counsel. Combined the two firms also invested $45,668 in litigation expenses pursuing the claims without any assurance that any fees or expenses would be recovered. Some law firms charge interest on such expenses as carrying costs passed on to their clients. We are not requesting any such interest charged be paid by the class. Accordingly, this factor supports the Fee Request.

34.     **The amount involved and the results obtained**. The amount involved and the substantial recovery obtained here support the Fee Request. The $1,600,000 settlement represents a significant recovery for the class members. The Settlement Fund will be distributed to the class members based upon a detailed formula that accounts for the individual pay rate. A detailed list of the amounts due to each Rule 23 Class Member are attached as Exhibits to the Settlement Agreement. This amount represents approximately 30% of the maximum amount the class members might have recovered on their best day in court assuming (1) they prevailed on liability and (2) this Court did not reduce the damages based on Defendant's defense of good faith

compliance. Given the substantial recovery for the class members, this *Johnson* factor supports the fee request.

35.     The high participation rate in the settlement is also relevant to the "results obtained" analysis. Among the WARN Act class members, there is a 85.1% participation rate. *See* the Administrator's Report of Cassandra Polites attached as an exhibit to the Joint Motion for Final Settlement Approval. Among the Rule 23 class members, none of them opted out of the class and none of them objected to the settlement.  This high participation rate, and the correspondingly high amount of the settlement funds that will be paid out to the class members, justifies the fee being based upon the gross settlement amount.

36.     **The experience, reputation and ability of the attorneys**. Messrs. Assaad and Yezierski, and their staff were actively involved in every aspect of the case from its inception to its conclusion. Mr. Assaad is a respected trial lawyer in the Houston legal community and his experience was set forth in paragraphs 12 and 13 above. Mr. Yezierski is a respected trial lawyer in the Houston legal community who works in multiple areas of litigation including FLSA claims, medical malpractice litigation, product liability, and others. Mr. Yezierski is a senior associate at McDonald Worley, PC assigned to this case. He has extensive experience serving as counsel in collective and class action litigation around the country. Mr. Yezierski received his law degree from the University of Houston Law Center in 2011. Prior to joining McDonald Worley, he worked as an associate for Oberti Sullivan LLP, Bruckner Burch, PLLC, and the Johnson Law Group. He has worked on dozens of wage and hour cases around the country. He is a member in good standing of the State Bars of Texas. He drafted several of the legal briefs including those related to the appeal, class certification, and summary judgment, presented the representatives for their

depositions, performed legal research, provided extensive data analysis to determine the class members for certification, and in general assisted substantially in all aspects of the case.

37.     In addition to the duties discussed above, Mr. Yezierski was also the primary point of contact with the lead plaintiffs, Scott Easom, Adrian Howard, and John Nau. The McDonald Worley Staff includes four senior paralegals (Dana Randazzo, Christy Mulholland, Gayle Holcomb, and Tanya Embry) each with over 10 years of legal experience, and four other staff members (Latricia Rounds, Natasha Frederick, Adam Fultz, and Johnny Rosado), each with 2-5 years of civil litigation experience in employment law, personal injury, and medical malpractice.

38.     My experience is explained in detail above and on the attached curriculum vitae. *See* Exhibit A, Kennedy Curriculum Vitae. Briefly, I am highly experienced in class, collective action, and complex litigation, and have successfully prosecuted and settled numerous class and collective actions around the country. I have been approved as class and collective action counsel by Judge Rosenthal on numerous occasions. I employed this prior experience and knowledge to successfully litigate and resolve this complex litigation.

39.     After filing this lawsuit, I assigned a paralegal (Prakash Gupta) to be the main point person for assembling documents, analyzing production, mass communication with the class members, and all other related work.  Mr. Gupta has more than 10 years working in the legal industry.

40.     Class counsel notes that the quality of representation by the lawyers on both sides of this litigation was high. Indeed, Defendant was represented by skilled litigators and class action defense attorneys who spared no effort in the defense of their client. Simply put, without the experience, skill, and determination displayed by all counsel involved, the settlement simply would not have been obtained. This *Johnson* factor strongly supports the Fee Request.

41.     **The undesirability of the case**. The Fee Request is further supported by the fact that taking on this litigation was undesirable. Here, the prospect of long, expensive litigation against a well-funded and formidable defendant was clear from the start, with the risk of no recovery that comes with contingent fee representation. The uncertain legal landscape with respect to this complex litigation and the WARN Act statute created further uncertainty and risk, especially with respect to the issue of first impression regarding natural disaster including a pandemic or not. This *Johnson* factor supports the Fee Request.

42.     **The nature and length of the professional relationship with the client.** This factor is not squarely relevant to the court's analysis. "[R]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation." *Uselton v. Commercial Lovelace Motor Freight, Inc., 9 F.3d 849, 854 (10th Cir. 1993).* However, Plaintiffs' counsel maintained a relationship with plaintiffs Scott Easom, Adrian Howard, and John Nau during the entirety of the litigation, keeping them apprised of developments in the case, involving them in case strategy, obtaining documents and discovery from them in response to Defendant's multiple sets of written discovery requests to them, and ultimately obtaining their approval for the settlement at mediation. Within the context of this lengthy case, this factor supports the Fee Request.

43.     **Awards in similar cases.** This factor also supports the Fee Request, as discussed above under in paragraph, titled "The Customary Fee." Plaintiffs executed a contingency fee agreement to pay counsel 40% of the gross recovery plus litigation expenses. Such fees are justified as a matter of contract, but especially in this case where counsel worked diligently for such an extended amount of time on a contingency basis in a contentiously litigated case. Plaintiffs request that the Court take judicial notice of the docket which reflects the quantity and quality of work done by Plaintiffs' counsel. The fee requested is well within the usual range of percentages

14

awarded in similar cases. See *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (identifying customary contingency rate of 35-40%). When the facts warrant approval of a 40% fee, this Court and other Texas courts have approved such a fee.[1] Class Counsel accepted this lawsuit on a contingency fee basis and achieved a positive result on behalf of the Plaintiffs and the class members which supports the agreed-upon fee award. Moreover, it is proper to award attorneys' fees in a common fund settlement based on a percentage because "it is more predictable, encourages settlement, and reduces incentives to protract litigation." *Union Asset Mgmt. Holding A.G. v. Dell, Inc*., 669 F.3d 632, 644, n.34 (5th Cir. 2012) (citations omitted) (also, noting that the fifth circuit has never reversed a district court's decision to use the percentage method.).

44.     Class counsel's work is not completed today. The two firms will continue to invest time and incur costs over the next few months as they continue to communicate with Class Members regarding the settlement, as we prepare for and attend the hearing on final settlement approval, and as we monitor the implementation of the settlement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated the 16th day of December 2024.

*/s/ Galvin B. Kennedy*
Galvin B. Kennedy

---

[1] See, e.g., *Corcione v. Methodist Hospital, et al*., No 3:14-cv-160 (S.D. Tex. June 24, 2016) at Doc. 148 (Rosenthal, J.) (approving 40% contingency fee in FLSA collective action on behalf of nurses alleging unpaid meal breaks); *Green-Johnson v. Fircroft, et al.,* No. Civ. A. 4:12-cv-01307 (S.D. Tex., April 3, 2013) at Doc. 50 (Rosenthal, J.) (approving 40% contingency fee in an FLSA collective action); *Hanson et al v. Camin Cargo Control, Inc.,* No. Civ. A. 4:13-cv-00027 (S.D. Tex. 2015) at Doc. 116 (approving 40% contingency fee in an FLSA collective action); *Villarreal, et al. v. Source Refrigeration & HVAC, Inc*.; No. Civ. A. 1:12-cv-00243 (W.D.Tex., October 8, 2013) Doc. 71 (approving 40% contingency fee in FLSA collective action*); Covey, et al. v. Iron Cactus, et al.*; No. Civ. A. 1:12-cv-00111-SS (W.D. Tex. August 6, 2013) (same); *Barnard et al v. Intertek USA Inc*., No. Civ. A. 4:11-cv-02198 (S.D. Tex., Jan. 8, 2014); Doc. 184 (same); *Quintanilla v. A & R Demolition, Inc*., No. H-04-1965, 2008 WL 9410399, at *8 (S.D. Tex. May 7, 2008)(same).

# EXHIBIT - A
## TO THE DECLARATION
## OF GALVIN KENNEDY

**GALVIN B. KENNEDY**
Kennedy Law Firm, LLP
2925 Richmond Ave. Ste. 1200
Houston, Texas 77098
(713) 425-6445

---

## EDUCATION

Law School UNIVERSITY OF HOUSTON LAW CENTER
     Doctor of Jurisprudence, *Cum Laude*, May 1996 (High Honors)

     ➢ American Jurisprudence Award, Constitutional Law (Highest Grade)
     ➢ Civil Trial Advocacy (Highest Grade)
     ➢ Insurance Law (Highest Grade)
     ➢ Professional Malpractice (Highest Grade)
     ➢ Champion, Hippard Mock Trial Tournament 1994
     ➢ Best Speaker, Hippard Mock Trial Tournament 1994
     ➢ Best Speaker, Blakely Moot Court Tournament 1995
     ➢ Finalist, Blakely Moot Court Tournament 1995
     ➢ National Mock Trial Team, 1994-1996
     ➢ Houston Journal of International Law, Editor
     ➢ Order of the Barons, member
     ➢ Order of the Barristers, member
     ➢ Scholarship, Mexican Legal Study Program, Mexico City

Undergraduate NORTHERN ILLINOIS UNIVERSITY
     B.A., *Magna Cum Laude,* May 1992

     ➢ Debate Team Scholarship, 4 years (dozens of interscholastic speaker awards)
     ➢ President's Scholarship for Outstanding Seniors
     ➢ Mortar Board, National Honor Society

## Bar Admissions

- Texas
- U.S. District Court Southern District of Texas
- U.S. District Court Eastern District of Texas
- U.S. District Court Northern District of Texas
- U.S. District Court Western District of Texas
- U.S District Court District of Colorado
- U.S. District Court Northern District of Illinois
- U.S. District Court Eastern District of Michigan
- U.S. Court of Appeals 5th Circuit

## Published Cases

- Landry v. Swire Oilfield Services, LLC, 252 F. Supp. 3d 1079 (D.N.M. 2017)
- Zannikos v. Oil Inspections (U.S.A.), Inc., --- Fed.Appx. ----, 2015 WL 1379882 (5th Cir. 2015)
- Albanil v. Coast 2 Coast, Inc., 444 Fed. Appx. 788, 790 (5th Cir. 2011)

*EXHIBIT A*

- Long v. BDP Intern., Inc., 919 F. Supp. 2d 832 (S.D. Tex. 2013)
- TDIndustries, Inc. v. Rivera, 339 S.W.3d 749 (Tex. App.—Houston [1st Dist.] 2011, no pet.)
- Ortiz v. A.N.P., Inc., 768 F. Supp. 2d 896, 907 (S.D. Tex. 2011)
- Metro. Transit Auth. v. M.E.B., Eng'g, Inc., 201 S.W.3d 692 (Tex. 2006)
- Mosqueda v. G & H Diversified Mfg., Inc., 223 S.W.3d 571 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)
- Acceptance Indem. Ins. Co. v. Maltez, 619 F. Supp. 2d 289, 291 (S.D. Tex. 2008), aff'd, 08-20288, 2009 WL 2748201 (5th Cir. 2009)

## LEAD CLASS COUNSEL

Partial list of certified collective/class actions in which Mr. Kennedy served as class counsel:

1. Civil Action No. 1:15-cv-00150; *Jason Crouch v. Missouri Basin Well Services, Inc., et al.*; in the United States District Court for the District of North Dakota (Dispatchers misclassified under the FLSA.  The parties agreed and the Court adopted the stipulation for conditional certification)

2. Civil Action No. 4:13-cv-03375; *Jara Willis, et al. v. Robert A. Behar, North Cypress Medical Center Operating Company GP, L.L.C.*; in the United States District Court for the Southern District of Texas (Class certified as a hybrid FLSA collective and Rule 23 class action on behalf of 2,300 direct patient care employees)  (confidential settlement)

3. Civil Action No. 4:14-cv-01950; *Stephanie Toporcer, et al. v. Enterprise Operating Company d/b/a St. James Restaurant & Cabaret and Pete Garland*; in the United States District Court for the Southern District of Texas (Collective action lawsuit where exotic dancers were misclassified as independent contractors instead of employees) ($200,000 settlement)

4. Civil Action No. 1:13-cv-01363; *John Larkin v. The Scotts Company, LLC and EG Systems, Inc.*; in the United States District Court for the Southern District of New York (Collective and class action involving lawn care technician specialists a/k/a territory service representatives.  The parties agreed and the Court adopted the stipulation regarding notice to FLSA class members)

5. Civil Action No. 2:14-cv-00525-RB-GWB; *Jeremy Saenz v. Rod's Production Services, Inc.*, et al; in the United States District Court for the District of New Mexico (Judge Brack conditionally certifying class of 350 flow back workers in multiple states who were claim they were misclassified as independent contractors)

6. Civil Action No. 5:14-cv-593; *Jeremy Saenz v. Erick Flowback Services LLC, et al.*; in the United States District Court of Western District of Oklahoma (All current and former workers classified as independent contractors who performed contract work for EFS in Oklahoma, Texas, Pennsylvania, Ohio, Kansas, New Mexico, and West Virginia as flowhand operators or flow testers during the three-year period before the filing of (Plaintiff's) complaint up to the date this Court authorized notice)

7. Civil Action No. 3:15-cv-00136; *Christopher Coker v. Select Energy Services, LLC , et al.*; in the United States District Court Southern District of Texas; Galveston Division (Judge George C. Hanks, Jr. conditionally certifying dozens of others as employed by Select Energy as "flow testers" who were classified as independent contractors, and thus did not receive overtime compensation)

8. Civil Action No. 4:15-cv-01075; *Matthew Kreamer v. Grant Production Testing Services, Inc., et al.*; in the United States District Court for Middle District of Pennsylvania (The Court certified as both Rule 23 class and FLSA collective actions, all field employees who worked for Grant Production Testing Services, Inc. in Pennsylvania during any time between June 1, 2012 and July 15, 2015)

9. Civil Action No. 0:14-cv-61927-WPD; *Adonay Encarnacion v. J.W. Lee., D/B/A Scarlett's Cabaret, et al*; in the United States District of Florida; Fort Lauderdale Division. (Settled for $6,000,000 on behalf of large group of dancers at a gentleman's club).

10. Civil Action No. 3:13-cv-79; *Chris Elliott, et al. v. Schlumberger Technology Corporation, et al*; in the United States District Court of North Dakota, Southwestern Division (Judge Erickson certified conditional FLSA collective of hundreds of equipment operators, and operator trainees paid under the fluctuating workweek)

11. Civil Action No. 3:14-cv-00160; *Joy Corcione, et al. v. Methodist Hospital  D/B/A Houston Methodist et al.*, in the United States District Court for the Southern District of Texas (Judge Rosenthal certified a collective action across three hospitals with more than 4,300 nurses) (confidential settlement)

12. Case No. 1:13-cv-01363-AKH; *Larkin, et al. v. Scotts Lawn Maintenance;* In the United States District Court for the Southern District of New York (Judge Hellerstein certified a national class on behalf of more than 4,500 lawn technician service representatives) ($9,000,000 settlement pending final approval).

13. Civil Action No. 3:13-cv-04960-VC; *Lyle E. Galeener v. Source Refrigeration & HVAC, Inc., et al.*; in the United States District Court for the Northern District of California; San Francisco Division (the Court certify for Settlement  purposes a quantum meruit state-law class consisting of all current and former Source employees who are or were employed in Covered in different states at any during time during the covered Period; case settled for $10,000,000)

14. Civil Action No. 1:15-cv-00282-RP; *Rory Dyson v. Stuart Petroleum Testers, Inc., et al.*; in the United States District Court Western District of Texas; Houston Division (Conditionally certifying All current and Former hourly paid workers classified as independent contractors who performed work for Defendants associated with monitoring and maintaining oil and gas wells throughout the United States during the three-year period before the date the Court authorizes notice)

15. Case No. 3:11-cv-02743-O; *Erica Jones, et al v. JGC Dallas LLC, et al*; In the United States District Court for the Northern District of Texas, Dallas Division (Judge Reed O'Connor)(certified collective action on behalf of 4,000 exotic dancers working at 8 different clubs in two states; case settled for $2,300,000)

16. Case No. 1:14-cv-00121; *Ryan May, et al. v. E & J Well Service, Inc., et al.*; In the United States District Court for Colorado (Judge Brooke Jackson); 2014 WL 2922655 (certifying national class of oil and gas workers misclassified as independent contractors)

17. Case No. 3:13-cv-00455; *Mario Valenzuela, et al. v. Fisher Commercial Construction, Inc., et al.*; In the United States District Court for the Southern District of Texas, Galveston Division (Magistrate Judge Froeschner) (certifying national class of commercial construction workers whose were denied overtime pay)

18. Civil Action No. 4:10-cv-00986; *John Glass, et al. v. Konica Minolta Business Solutions*; In the United States District Court for the Southern District of Texas, Houston Division (Judge Lake)(national class certified as to over 2,000 service repair technicians)(settled for $4.35 million)

19. Civil Action No. 4:13-cv-02179; *Paulita Coronado, et al. v. D N.W. Houston, Inc. d/b/a Gold Cup, et al*; In the United States District Court for the Southern District of Texas, Houston Division, (Judge Rosenthal)(certified class of over 2,000 workers misclassified as independent contractors)

20. Case No. 1:13-cv-00223-LY; *Emma Sanders, et al. v. Extreme Cuisine III, LLC d/b/a Piranha Killer Sushi, et al*; In the United States District Court for the Western District of Texas, Austin Division, (Judge Yeakel) (certifying class of wait staff throughout Texas who worked at chain of five high end sushi restaurants)

21. Case No. 3:14-cv-00019; *David Lopez, et al. v. Total Waste Management Alliance, Inc.*; In the United States District Court for the Southern District of Texas, Galveston Division, (Judge Froeschner) (certifying class of waste management workers state wide who were paid a day rate)

22. Arbitration 14 160 01482 12; *Baer, et al v. TruGreen Limited, et al;* American Arbitration Association (Arbitrator Alfred Feliu certified hundreds of technicians and lawn specialists)

23. Case No. 6:13-cv-00180-WSS; *Jackson v. Examination Management Services, Inc.*; In the United States District Court for the Western District of Texas (Judge Walter S. Smith)(national collective action certified as to remote underwriters who created systematic summaries of medical records)

24. Case No. 7:12-cv-00375; *Vargas et al v. Bramble Restaurants, LTD. d/b/a Dennys et al;* In the United States District Court for the Southern District of Texas (Judge Ricardo H. Hinojosa) (Texas class of 3 restaurants certified; class covered over 600 servers)

25. Case No. 3:13-cv-00158; *Schlink v. Crowley Marine Services, Inc.;* In the United States District Court for the Southern District of Texas (Judge Gregg Costa certified collective action of more than 40 tankerman)

26. Case No. 4:13-cv-01441; *Wright et al v. WT3 LLC et al;* In the United States District Court for the Southern District of Texas (Judge Melinda Harmon certified collective action of more than 300 field technicians)

27. Case No. 3:12-cv-00374; *Epps et al v. Great White Pressure Control LLC;* In the United States District Court for the Southern District of Texas (Judge Gregg Costa certified collective action of more than 300 pump operators who worked in the oil industry)

28. Case No. 12-cv-2987-WJM-MJW; *Buck Howard, et al. v. J&A Services, Inc.*, et al.; In the United States District Court for the District of Colorado (Judge Martinez)(certified a national class of over 300 oil/gas flow testers allegedly misclassified as independent contractors)

29. Case No. 3:13-cv-0211; *Condiff v. Genesis Energy, LLC, et al.* (Judge Costa certified a class of over 140 tankerman in a national collective action lawsuit)

30. Case No. 4:13-cv-0027; *Hanson, et al. v. Camin Cargo;* In the United States District Court for the Southern District of Texas, Houston Division (Judge Smith certified a class of hundreds of oil and gas inspectors, including approximately half of whom had signed arbitration agreements)

31. Case No. 4:12-cv-01307: *Green-Johnson v. Fircroft, Inc. et al;* In the United States District Court for the Southern District of Texas, Houston Division (Judge Rosenthal certified a class who performed seismic sourcing work whose primary duties were to prepare documentation associated with drilling projects)

32. Case No. 11-2186 c/w 12-359; *Dale Robert White, et al. v. Dish Network Service, LLC and Integrated Electronic Technologies*; In the United States District Court Eastern District of Louisiana (Judge Susie Morgan)(Judge Morgan certified a class of over 400 DISH cable installers in three states)

33. Civil Action No. H-12-1446; *Kimberly Long, et al. v. BDP International, Inc. et al.*; In the United States District Court for the Southern District of Texas, Houston Division (Judge N. Atlas certified collective action on behalf of more than 200 logistic coordinators claiming off the clock time worked)

34. Civil Action Civil Action No. 1:12-cv-00243; *Holly A. Villarreal, et al. v. Source Refrigeration & HVAC, Inc.;* In the United States District Court for the Southern District of Texas, Houston Division (Judge Sparks)(certified collective action of more than 500 industrial refrigeration repair technicians in eleven states)

35. Civil Action No. 6:11-cv-00255; *Jeanette Wallace, et al. v Examination Management Services, Inc.;* In the United States District Court for the Western District of Texas, Waco Division (Judge W. Smith)(national collective action certified as to virtual case workers ordering medical records from home)

36. Civil Action No. 4:11-cv-712; *Cherie Turner, et al. v. NTFN, Inc. and Nationwide Home Lending;* In the United States District Court for the Eastern District of Texas, Sherman Division (Judge Bush)(multi-state collective action certified as to loan officers)

37. Civil Action No. 4:11-cv-02198; *Robert Barnard, et al. v. Intertek, et al.;* In the United States District Court for the Southern District of Texas, Houston Division (Judge Lake) (national class certified adversely as to oil and gas inspectors; later expanded to dispatchers)

38. Civil action No. 3:11-CV-02110; *Michael Shackelford, et al. v. Time Warner NY Cable LLC, et al.;* In the United States District Court for the Northern District of Texas, Dallas Division (Judge Solis)(Texas class certified adversely as to cable TV installers)

39. Civil Action No. 4:08-cv-00486 *Alvaro Albanil, et al. v. Coast 2 Coast*; In the United States District Court for the Southern District of Texas, Houston Division (Judge Miller)(national class certified adversely as to cement workers)

40. Civil Action No. 4:06-cv-01721; *Casandra Fuentes, et al. v. Target Corporation*; In the United States District Court for the Southern District of Texas, Houston Division (Judge Gilmore) (multi-state class certified with hundreds of janitors)

41. Civil Action No. 4:08-cv-01692; *Tomas Ruiz, et al. v. GVMS, Inc., GVHC, Inc., GV Marine Services, etc.*; In the United States District Court for the Southern District of Texas, Houston Division (Judge Rosenthal)(Multistate class certified with hundreds of metal workers)

42. Civil Action No. 4:08-cv-00212; *Brett Smith, et al. v. CBS Mechanical Inc.*; In the United States District Court for the Eastern District of Texas, Sherman Division (Judge Schneider)(Texas class certified of technical field workers)

43. Civil action No. H-12-1003; *Hector Cabrera, et al. v. A&A Cable Contractors, Inc*., et al.;  In the United States District Court for the Southern District of Texas, Houston Division (Judge Solis)(Texas class certified)

44. Civil Action No. 1:12-cv-00111 *Aaron Covey, et al. v. Iron Cactus*, et al.; In the United States District Court for the Western District of Texas, Austin Division (Judge Sparks)(Texas class of 5 restaurants certified; notice mailed to over 900 servers)

45. Civil Action No. 4:05-cv-03924; *Javier Garcia, et al. v. Maintenance, Inc.*; In the United States District Court for the Southern District of Texas, Houston Division (Judge Gilmore)(multi-state class certified adversely)

46. Civil Action No. 1:12-CV-77; *Samantha Patrick, et al. v. Madison Restaurants of Texas, Inc., et al.;* In the United States District Court for the Eastern District of Texas, Beaumont Division (Judge Clark) (Texas class certified)

47. Civil Action No. 4:05-cv-03620; *Cynthia Guerrero, et al. v. Habla Communications, Inc.*; In the United States District Court for the Southern District of Texas, Houston Division (Judge Hittner) (Texas class certified as to hundreds of employees working at call center)

48. Civil Action No. 4:11-cv-01007; *Samuel Puac, et al. v. Qin Dynasty*; In the United States District Court for the Southern District of Texas, Houston Division (Judge Hughes)(Houston class certified)

49. Civil Action No. 4:11-cv-01160 *Jorge Viveros, et al. v. Nit Noi, et al.*; In the United States District Court for the Southern District of Texas, Houston Division (Judge Hughes) (Houston class certified)

50. Civil Action No. 4:09-cv-03981 *Ricardo Vargas v. The Richardson Trident Co.* In the United States District Court for the Southern District of Texas, Houston Division (Judge Harmon) (multi-state class certified adversely)

51. Civil Action No. 08-511*; Liliana Mendoza, et al. v. BK 6341, Burger King, et al.*; In the United States District Court for the Southern District of Texas, Houston Division (Judge Miller)(Texas class certified)

52. Civil Action No. 4:05-cv-01240; *Gregoria Lopez, et al. v. Churrascos and Cordua Restaurants*; In the United States District Court for the Southern District of Texas, Houston Division (Judge Lake)(Texas class certified via arbitration)

53. Civil Action No. 1:13-cv-01219; *Randall Lee et al v. Dish Network LLC et al*; In the United States District Court for the District of New Mexico (Judge Molzen)(New Mexico class certified)

54. Civil Action No. 1:13-cv-00223; *Emma Sanders et al v. Xtreme Cuisine, LLC et al*; In the United States District Court for the Western District of Texas, Austin Division (Judge Yeakel)(Texas class certified)

## PUBLICATIONS

- Contributing author to the American Bar Association FLSA Midwinter Report for 2017, 2018, 2019, 2020.

- Kennedy, Galvin. "Failure to Pay Overtime Under the Fair Labor Standards Act: The Most Valuable Claim You Are Not Making." Presented at Texas Trial Lawyers Association Annual Conference. December 2012.

- Kennedy, Galvin. "Failure to Pay Overtime Under the Fair Labor Standards Act: The Most Valuable Claim You Are Not Making." Presented before Houston Trial Lawyers Association. February 9, 2012.

- Kennedy, Galvin. "Failure to Pay Overtime Under the Fair Labor Standards Act: Slave Wage Earners Get their Revenge." Presented before Mexican American Bar Association of Houston. March 13, 2006.

- Kennedy, Galvin. "Failure to Pay Overtime Under the Fair Labor Standards Act: Slave Wage Earners Get their Revenge." Barnes Law Seminar. November 9, 2005.

## EMPLOYMENT

<u>Legal</u>    Kennedy Law Firm, LLP
**President**: Founder of Firm. Represents thousands of clients in a variety of matters ranging from employment class action, catastrophic personal injury, wrongful death claims, and mass torts including victims of sexual abuse while minors by the clergy and Boy Scouts of America.
(January 2020 – Present)

Kennedy Hodges, LLP
**President**: Founder of Firm. Represents thousands of clients in a variety of matters ranging from employment class action and catastrophic personal injury and wrongful death claims.
(January 2002 – December 2019)

The Kennedy Law Firm, Houston, Texas
**Owner**: Founder and owner of the Firm. Successfully tried 10-day business dispute arbitration, imposing worldwide non-compete.
(December 2000 – January 2002)

Greenberg, Peden, Siegmyer & Oshman, P.C. Houston, Texas
**Attorney:** Litigation associate responsible for drafting motions, discovery, pleadings, deposing witnesses, legal research, trial preparations with focus on class action litigation, securities fraud, employment litigation and personal injury.
(September 1996 – December 2000)

<u>Non-Legal</u>    Sampietro, Academias de Idiomas, Barcelona, Spain
**English Instructor**: Taught English as a foreign language to students of all ages and all levels of proficiency. (1992 – 1993)

**MISCELLANEOUS ACHIEVEMENTS**

Board Certified - Personal Injury Trial Law
Texas Board of Legal Specialization (2004; recertified every five years in 2009, 2015 and 2019)

AV Rated by peers through Martindale Hubble.

Million Dollar Advocates Forum, Member.

Selected as "Super Lawyer" for five+ years by Texas Lawyer and Texas Monthly Magazine.

Texas Association of Civil Trial and Appellate Specialists and Texas Trial Lawyer Association.

Voted one of Houston's Top Lawyers by H Texas Magazine, July 2005.

Bilingual – English and Spanish.

# EXHIBIT - B
## TO THE DECLARATION
## OF GALVIN KENNEDY

# Gabriel A. Assaad

1770 Saint James Place , Suite 100
Houston, TX 77056
(713) 523-5500
gassaad@mcdonaldworley.com

---

## BACKGROUND

I obtained a B.S. in Mechanical Engineering from the University of Florida in 1996. After a couple years as an engineering consultant, I decided to obtain my law degree Vanderbilt Law School and graduated in 2001. Since that time, I have used my engineering and science background to pursue complex product liability claims on behalf of plaintiffs. As an engineer, I was uniquely qualified both to communicate effectively with experts, and even more importantly, to effectively conduct depositions of science experts.

In the context of Multi-District Litigation, I have focused on expert discovery and depositions. Since I have been involved in MDLs, I have conducted over 100 depositions with approximately 40 of those being experts. In my career, I have extensive deposition experience with over 500 depositions, both fact and expert witnesses, conducted in many different types of cases such as personal injury, product liability, medical malpractice, wage and hour, and class actions.

In addition, to my deposition and discovery experience, I have argued in front of the Fifth Circuit Court of Appeals, Supreme Court of Virginia, and the District of Columbia Court of Appeals. I was also a member of the Appellate Team that obtained a reversal in the Eight Circuit Court of Appeals in the Bair Hugger MDL. A recent example of my success was in 2022 in which I argued an interlocutory appeal in the Fifth Circuit Court of Appeals with respect the WARN Act and whether COVID is considered a natural disaster under the act. The Court of Appeals agreed with me that under the statute, it was not, and hundreds of workers that were laid off without notice could pursue their WARN Act claims.

My education, background, and experience are unique in that it brings together law and science and the ability to benefit the hundreds, if not thousands, of plaintiffs in an MDL.

## <u>PROFESSIONAL EXPERIENCE</u>

**McDonald Worley,** Of Counsel: Houston, TX
November  2019 to present
I am responsible for the complex litigation group which includes product liability, class action, medical malpractice, class actions, and employment litigation cases.  This includes the management and training of a team of attorneys and staff to handle litigation.

**Kennedy Hodges, LLP,** Partner: Houston, TX
January 2012 to November 2019

Managing partner responsible for the mass tort litigation practice as well significant involvement in multidistrict litigation cases throughout the country.   This included the management of numerous attorneys and staff in the handling of thousands of cases in multiple litigations.

In addition, during this period, I was appointed to numerous Plaintiff Steering Committees including Science and Discovery Committee in Bair Hugger litigation, the Science Committee in the Xarelto litigation, the Discovery Committee in Taxotere PSC, and the Plaintiff Steering Committee Member in the Smith & Nephew Hip Litigation.

In addition, my practice also included medical malpractice litigation and Fair Labor Standards Act Collective and Class Action litigation.

**Assaad Law, PLLC,** Owner:    Washington, D.C.
October 2008 to December 2014

Focused on products liability, medical malpractice, and legal malpractice litigation.

**Paulson & Nace,** Attorney:      Washington, D.C.
November 2003 to July 2008

Litigated numerous cases involving products liability, medical malpractice, personal injury, and legal malpractice cases.  I was also responsible for every aspect of litigation from client screening, discovery, depositions, motions practice, mediation and arbitration, and trial, and appellate practice including the drafting of numerous appellate briefs.

**Dickstein Shapiro LLP**, Associate: Washington, D.C.
August 2001 to October 2003; Summer of 2000

- o Litigated various matters for clients including intellectual property matters
- o Litigation includes all aspects of discovery, including the drafting and responding to interrogatories; taking and defending depositions; organizing and analyzing discovery documents; and summarizing and analyzing deposition transcripts
- o Draft and respond to various motions and briefs
- o Participated in a multimillion-dollar patent and trademark infringement suit involving high tech surveillance equipment
- o Patent prosecution of mechanical as well as semi-conductor patents

## EDUCATION

**Vanderbilt University Law School**, Nashville, TN
JD Received May 2001
Vanderbilt Trial Lawyers Association; Intellectual Property Society; Phi Delta Phi; Legal Aid Society; Moot Court Participant

**University of Florida**, Gainesville, FL
B.S. in Mechanical Engineering, May 1996
Dean's List; American Society of Mechanical Engineers; Society of Automotive Engineers

## PAST MDL AND FEDERAL EXPERIENCE

**MDL 2666: In re: Bair Hugger Forced Air Warming Products Liability Litigation**
- o The Bair Hugger litigation involves a forced air warming device used to warm patients during surgery. The Bair Hugger is manufactured by 3M Corporation. Plaintiffs in the Bair Hugger MDL assert numerous claims against 3M including design defect claims and failure to warn claims.
- o Member of the Plaintiff's Steering Committee
- o Co-chair of the Discovery Committee and the Science Committee
- o Member of the Trial Team

- o Member of the Appellate Team which reversed the District Court's order dismissing the entire MDL on Daubert grounds
- o Member of Settlement Committee

**MDL 2765: In Re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Products Liability Litigation**
- o Smith & Nephew BHR litigation involves metal-on-metal hip implants. This MDL contains issues of preemption of some of the claims. The case is currently in general causation discovery.
- o Member of Plaintiff's Steering Committee and Science Committee
- o Member of Trial Team
- o Member of Settlement Committee
- o Conducted over thirty deposition of which more than five were opposing party experts

**MDL 2885: In Re 3M Combat Arms Earplug Products Liability Litigation**
- o Member of Science Committee
- o Member of Law & Briefing Committee

I have ample experience with federal practice and procedure. Over the past twenty years, I have handled numerous cases in federal courts across the country which include product liability, Fair Labor Standards Act, WARN Act, and other federal actions. Given that experience, I am very familiar with federal practice, procedures. and many of the local rules of many courts. My litigation experience in the Bair Hugger MDL and the Smith & Nephew MDL has also provided me experience litigating and trying cases as part of an MDL.

In the MDLS that I have been actively involved in, my background in engineering was an asset with respect to discovery and depositions. My education and experience have given me the ability to read schematics and engineering drawings, to be able to work with experts to simplify engineering principals for a jury, and to be able to challenge the theories and opinions of the opposing science experts.

My previous MDL experience, my engineering background, and my extensive legal experience in products liability and medical malpractice cases has provided me with the experience and knowledge that can benefit leadership and the numerous plaintiffs in this litigation.

**Bair  Hugger MDL**

My mass tort litigation began with the Bair Hugger MDL that was consolidated in 2015.  However, my firm commenced the Bair Hugger litigation in 2013, and I spent the two years between filing and the MDL consolidation litigating these complex products liability cases.

When the JPML consolidated the Bair Hugger cases and assigned the MDL to the District of Minnesota, I remained very involved in all aspects of this case, including discovery, experts, and trials.  In Baur Hugger, I was responsible for the majority of fact and expert depositions which included five depositions of study authors, many fact depositions of 3M's current and former employees, two depositions of corporate representatives, numerous healthcare provider depositions, and expert depositions.  In addition, I defended numerous expert depositions.  I was also involved in the selection and vetting of the plaintiffs'' experts.

The Bair Hugger MDL consisted of millions of pages of documents in which I was involved in reviewing and compiling subsets for many of the depositions given the complex issues in the case.  In addition, I also was part of the team that was involved in the Bellwether selection process, reviewing Bellwether specific documents, and preparing the bellwether cases for trial.

Also, in the Bair Hugger MDL, I was responsible for briefing and arguing several of the *Daubert* motions on issues related to general causation (and thus applicable to all the cases in the MDL), as well as discovery motions and motions in *limine* for the first bellwether trial.

After the District Court dismissed the case after a reconsideration of Daubert, I was a member of the Appellate Team that prevailed in the Eight Circuit reversing the Court's order.

Finally, I am also part of the settlement committee and in discussion regarding possible settlement and future case selection for trial (if needed).  This process involves critical analysis of key issues ranging from product identification to statute of limitations and statutes of repose as well as an analysis of the MDL docket which I have managed for the MDL.

**Smith & Nephew MDL**

In the Smith & Nephew MDL litigation, I conducted 30(b)(6) depositions, key internal witnesses overseas relating to adverse event reporting company-wide, requiring knowledge of both the technical systems used and the regulatory requirements in tracking such reports. Furthermore, because of my engineering background, I was selected to be on the science committee to identify and select potential experts, as well as conduct expert depositions. As a result, I was involved in most of the expert deposition and was selected as a member of the trial team. Finally, I was also selected to be part of the settlement committee which ultimately resolved most of the cases in the MDL.

## TRIAL EXPERIENCE

I have over twenty years of experience as a trial lawyer and have personally tried numerous cases to verdict. The majority of the cases in which I have tried were complex medical malpractice cases. However, more recently, I have been involved in multiple MDL trials in both the Bair Hugger Litigation and Smith & Nephew Litigation.

## BAR ADMISSIONS

State Bars Admissions: Texas; District of Columbia; Commonwealth of Virginia

Federal Court of Appeals: United States Court of Appeals for the Third Circuit; United States Court of Appeals for the Fourth Circuit; United States Court of Appeals for the Fifth Circuit; United States Court of Appeals for the Sixth Circuit; United States Court of Appeals for the Seventh Circuit; United States Court of Appeals for the Eighth Circuit; United States Court of Appeals for the Ninth Circuit; United States Court of Appeals for the Tenth Circuit; United States Court of Appeals for the Eleventh Circuit

Federal District Court: United States District Court for the District of Columbia; United States District Court for the Eastern District of Virginia; United States District Court for the Western District of Virginia; Southern District of Texas, Western District of Texas; Northern District of Texas; District of Colorado

## **PROFESSIONAL ASSOCIATIONS**

American Association of Justice (member and litigation chair of the Bair Hugger Litigation group); Texas Trial Lawyers Association; DC Trial Lawyers Association; Houston Trial Lawyers Association; Attorney Information Exchange Group

## **AWARDS**

2022 Minnesota Trial Lawyer of the Year

# EXHIBIT - C
## TO THE DECLARATION OF GALVIN KENNEDY



SDTX† summary of rates for
labor and employment law work:

# 133 lawyers: $1,385.21 to $298.25

| Rate | Name / JD Year | Rate | Name / JD Year |
|---|---|---|---|
| $1,385.21* | Lauren Leyden (JD 2005) | $689.08* | Rhonda Wills (JD 1994) |
| $1,326.97* | R.D. Kohut (JD 2003) | $681.79* | Alan J. Marcuis (JD 1998) |
| $1,260.76* | Peter J. Mee (JD 2009) | $676.55* | J. Marshall Horton (JD 2003) |
| $1,249.94* | Donna M. Mezias (JD 1983) | $674.04* | Rex Burch (JD 1997) |
| $1,206.65* | Nathan J. Oleson (JD 1999) | $665.00* | Stephen Romero (JD 2004) |
| $1,206.65* | Esther G. Lander (JD 1997) | $659.04* | Teresa Valderrama (JD 1988) |
| $1,169.24* | Edward Holzwanger (JD 2001) | $656.38* | Zenobia Harris Bivens (JD 2008) |
| $1,154.14* | Bryan M. O'Keefe (JD 2011) | $656.38* | Gregg M. Rosenberg (JD 1985) |
| $1,154.14* | Michael A. Schulman (JD 2011) | $647.46* | Jennifer L. Dotson (JD 1993) |
| $1,151.11* | Sydney Jones (JD 2014) | $639.85* | Katharine D. David (JD 2004) |
| $1,120.08* | Brian Glenn Patterson (JD 2006) | $639.50* | Eric J. Cassidy (JD 2001) |
| $1,048.29* | Joseph M. Sellers (JD 1979) | $639.50* | M. Todd Slobin (JD 1997) |
| $1,007.22* | Wes Benter (JD 2018) | $633.58* | Stephanie K. Osteen (JD 1997) |
| $984.80* | Joshua K. Sekoski (JD 2012) | $623.20* | Laura L. Ho (JD 1994) |
| $982.39* | Jennifer M. Trulock (JD 1997) | $610.46* | Marlene C. Williams (JD 1997) |
| $948.43* | Sean Michael Becker (JD 1998) | $610.46* | J. Derek Braziel (JD 1995) |
| $957.75* | Courtney L. Stahl (JD 2013) | $603.72* | Martin A. Shellist (JD 1993) |
| $939.65* | John H. McDowell, Jr. (JD 1982) | $601.68* | Michael A. Correll (JD 2009) |
| $939.12* | Steven B. Harris (JD 1982) | $600.00* | William Hommel (JD 1986) |
| $921.38* | Kenneth E. Broughton (JD 1981) | $595.11* | Alfonso Kennard, Jr. (JD 2002) |
| $919.87* | Scott L. Friedman (JD 2013) | $595.11* | Anthony C. Wills (JD 1997) |
| $910.05* | Christine E. Webber (JD 1991) | $585.80* | Stewart Hoffer (JD 1994) |
| $899.24* | Katherine A. Brooker (JD 2012) | $582.58* | Lauren C. Fabela (JD 2008) |
| $892.81* | Shauna Clark (JD 1994) | $575.98* | Scott Newar (JD 1989) |
| $877.01* | Phillip B. Dye, Jr. (JD 1985) | $575.98* | Dennis Herlong (JD 1982) |
| $858.21* | Martina E. Vandenberg (JD 2000) | $575.98* | Barbara Gardner (JD 1981) |
| $858.21* | Agnieszka Fryszman (JD 1996) | $574.33* | Emery Gullickson Richards (JD 2014) |
| $844.12* | Jamila Mensah (JD 2006) | $572.64* | Carolyn A. Russell (JD 1998) |
| $835.17* | Ann Marie Arcadi (JD 1993) | $564.89* | Caitlin E. Gernert (JD 2014) |
| $829.13* | Joseph Y. Ahmad (JD 1987) | $563.79* | Mark J. Oberti (JD 1994) |
| $829.13* | John Zavitsanos (JD 1987) | $554.97* | Nickolas G. Spiliotis (JD 2001) |
| $789.31* | Matthew G. Nielsen (JD 2001) | $554.97* | Salar Ali Ahmed (JD 1998) |
| $787.66* | Gregory J. Ossi (JD 1997) | $552.94* | J. Mark Jodon (JD 1980) |
| $783.04* | Mark D. Temple (JD 1995) | $545.00* | Charles M. Rosson (JD 2010) |
| $770.79* | Scott McLaughlin (JD 1994) | $541.10* | Austin Anderson (JD 2003) |
| $766.56* | Oswald B. Cousins (JD 1994) | $541.10* | R. Russell Hollenbeck (JD 1994) |
| $757.54* | Jeffrey M. Anapolsky (JD 1999) | $541.10* | Douglas Welmaker (JD 1993) |
| $749.37* | Mark L. Johansen (JD 1986) | $541.10* | Thomas C. Wright (JD 1980) |
| $748.78* | William J. Moore (JD 2005) | $535.66* | Jim Staley (JD 1998) |
| $716.55* | Cristin M. Obsitnik ( JD 1997) | $524.13* | Fran Shuman (JD 2005) |
| $706.94* | Fazila Issa (JD 2004) | $518.38* | Charles A. Sturm (JD 1997) |
| $702.70* | M. Scott McDonald (JD 1987) | $512.62* | Allan H. Neighbors, IV (JD 2001) |

SDTX† summary of rates for
labor and employment law work:

# 133 lawyers: $1,385.21 to $298.25

| | | | |
|---|---|---|---|
| $692.45* | David Borgen (JD 1981) | $511.60* | Adam D. Boland (JD 2004) |
| $690.93* | Scott K. Davidson (JD 1998) | $500.00* | Clif Alexander (JD 2008) |
| $500.00* | Aaron Johnson (JD 2008) | $426.65* | Christopher Willett (JD 2009) |
| $500.00* | Lakshmi Ramakrishnan (JD 2002) | $426.23* | Britney J. P. Prince (JD 2015) |
| $500.00* | Thomas H. Padgett (JD 1989) | $425.47* | Michael J. Woodson (JD 2012) |
| $500.00* | Josef F. Buenker (JD 1989) | $421.01* | Drew N. Herrmann (JD 2014) |
| $497.07* | Daryl Sinkule (JD 2002) | $415.71* | E. Steve Smith (JD 2015) |
| $493.09* | George R. Gibson (JD 1995) | $400.81* | Angeles Garcia Cassin (JD 2013) |
| $492.29* | Christopher R. Williams (JD 2016) | $400.00* | Nick Lawson (JD 2012) |
| $492.29* | Victoria Mery (JD 2012) | $400.00* | James M. Dore (JD 2008) |
| $495.62* | Soña Ramirez (JD 2002) | $395.00* | Colleen Mulholland (JD 2015) |
| $488.62* | Liane Noble (JD 2011) | $397.43* | Amanda E. Brown (JD 2013) |
| $486.99* | Trang Tran (JD 1995) | $389.07* | Sara C. Longtain (JD 2007) |
| $486.28* | Mike Seely (JD 2007) | $387.72* | Scot Clinton (JD 2004) |
| $478.06* | Michael Reed (JD 2012) | $381.76* | Samantha D. Seaton (JD 2013) |
| $476.17* | Nehal S. Anand (JD 2009) | $377.42* | Caitlin Boehne (JD 2012) |
| $474.30* | Benjamin D. Williams (JD 2010) | $363.81* | Jay Forester  (JD 2013) |
| $469.83* | Curtis Waldo (JD 2010) | $357.90* | Brenna R. Lermon (JD 2014) |
| $459.93* | Andrew Dunlap (JD 2011) | $357.90* | Genevieve Estrada (JD 2013) |
| $441.84* | Matt Heller (JD 2016) | $355.54* | Michael Adams-Hurta (JD 2015) |
| $438.29* | Evan D. Lewis (JD 2019) | $351.92* | DeAndrea C. Washington (JD 2009) |
| $432.88* | Lindsay Itkin (JD 2010) | $331.38* | Vijay Pattisapu (JD 2011) |
| $431.99* | Alysson Ford Ouoba (JD 2011) | $328.19* | Dorian Vandenberg-Rodes (JD 2013) |
| $432.88* | Richard Schreiber (JD 2006) | $298.25* | Ben Michael (JD 2013) |
| $432.88* | Lauren Braddy (JD 2010) | | |

† Courts note the relevant community for fees is district-wide—not by city or division. *See,
e.g., Lewallen v. City of Beaumont*, 394 Fed. Appx. 38, 46 (5th Cir. 2010); *Treadway v.
Otero*, No. 2:19-CV-244 [Doc. 157] at p. 9 (S.D. Tex. Oct. 6, 2020) (citing cases and
concluding: "When it comes to parsing between divisions, it appears that it is the district,
rather than the division, that should govern the decision.").